THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| United States of America<br><br>      vs.<br><br>John Doe a/k/a Felix Sater<br><br>      vs.<br><br>Richard Roe a/k/a Frederick M. Oberlander | EDNY Docket<br>17-mc-1302 |

**Petition of Appellant Frederick M. Oberlander
For Miscellaneous Relief Including**

(1) Awarding Appellant "Next Friend" Status so he may be heard in vindication of the rights of the public and of the victims of felix sater, who have the plenary and indefeasible right to have been told of this proceeding but were, inexcusably, not;

(2) Requiring the government and Sater to provide a proper *Vaughn* index.

Richard E. Lerner, Esq.
**The Law Office of Richard E. Lerner**
122 West 27th Street, 10th Floor
New York, New York 10001
Tel. 917.584.4864
Fax. 347.824.2006
richardlerner@msn.com

# Contents

I. Introduction ................................................................................. 1

    A. **Threshold Problems of Taint** ............................................................. 1

        1. The government and Sater's *Vaughn* index, if not improved, will taint the proceeding with irreparable, structural Fifth Amendment Error. ................................................................. 5

        2. The government has already shown its willingness to taint this proceeding. Notice must be taken, and attention paid, for we are better than this. ................................................................. 7

    B. **Requested Emergent Relief** ............................................................. 9

        1. Appointment of a "next friend" to stand in for the public, the victims, or both and argue for maximum possible openness and confession. ................................................................. 9

        2. Requiring the government and Sater to produce a proper Vaughn index and then deferring resolution of the unsealing until all parties and intervenors have had an opportunity to meaningfully object by use of such index, including if possible by the prior unsealing of all material with respect to which no one has objected. ................................................................. 10

II. **Sealing Orders and Prior Restraints Are Not the Same, and a Failure to Take That Into Account May Cause Grievous Error** .................... 11

    C. **A Federal Court May not Restrict the Extra-Judicial Dissemination Of Information Obtained or Obtainable Without the Use of Court Process Simply Because That Information Has Been Submitted Into Court** ................................................................. 11

        1. The fundamental limit of equity jurisdiction. ........................... 11

        2. The First Amendment futility doctrine applies. ........................ 13

        3. The concomitant First Amendment limit of equity constitutionality ........................... **Error! Bookmark not defined.**

I.  **INTRODUCTION**

Appellant Richard Roe, whom I will hereafter refer to by his proper name, Frederick M. Oberlander, respectfully submits this prehearing supplement per the court's order to do so no later than 9.00 AM on June 19, 2017.

In respect of the court's limited time, I first set forth some simple issues the court must consider so that I may quickly focus on the much more significant one.

A.  **REGRETTABLY, NO ONE WHO REALLY UNDERSTANDS WHAT OCCURS IN THE EASTERN DISTRICT OF NEW YORK UNITED STATES ATTORNEY'S OFFICE WOULD TRUST THE INTEGRITY OF FEDERAL OR STATE CRIMINAL RECORDS.**

We appreciate the court's position in inheriting this situation and certainly do not and could not suggest it "owns" any part of the path by which we got here. But I cannot pretend we are writing on a blank slate.

As intervenors, and I before them, have noted, the sealing that has occurred throughout this case *before your honor's appointment as special master* never comported with the law. There were no be notices to the public before closure and no "findings on the record demonstrating the need" for it. See *U.S. v. Alcantara*, 396 F.3d 189, 192 (CA2 2005); see also *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13 (1986). Sater's criminal case and sentencing was under an "implied" blanket seal, or an illegal concealment, despite the fact that the Second circuit has held that under the *Press-Enterprise* factors, "the public and press have a qualified First Amendment right of access." Access to sentencing proceedings

are but one example. *See Alcantara, supra.* Yet, for Sater, no public notice or docketing was provided; no findings were made; indeed, no actual sealing order was even entered prior to the proceedings.

The purposes for which the Supreme Court and the Second Circuit have required these procedures are well illustrated by this case. In *Alcantara*, for example, the Second Circuit held that public access to sentencing proceedings "serves the important function of discouraging either the prosecutor or the court from engaging in arbitrary or wrongful conduct. The presence of the public operates to check any temptation that might be felt by either the prosecutor or the court to . . . seek or impose an arbitrary or disproportionate sentence." And yet what happened with Sater's sentence? Sater was not required to pay restitution; his victims were not identified, no *Fatico* hearing was held, and he sat there with impunity boasting of his use of his concealed conviction to facilitate nearly a billion dollars of bank fraud in, we now know, partnership with the current occupant of the White House.

As noted below, the court can help alleviate that misstep now by requiring, in accordance with the Crime Victims Rights Act, that the government notify Sater's victims of his $40 million pump-and-dump fraud that was the subject of the 98-cr-1101 prosecution of this open proceeding. But damage has already been done to the victims, to the congressional mandate regarding their protection and compensation, and to the public.

Nor is this unique. I am going to do something here to illustrate this that is perhaps unique in the history of American law, because it's the right thing to do. I'm going to demonstrate the culture of the USAO EDNY back twenty years ago

when it was investigating, then prosecuting, Sater and the others under the lead of United States Attorney Zachary Carter, who would soon be replaced by Loretta Lynch, who as Acting U.S. Attorney signed off on Sater's information only to falsely distanced herself from it at her Senate confirmation hearings, saying, in sum, that she had no involvement in the Sater matter.

This is a letter passed down to me by my late father, then Administrative Judge of the Supreme Court, Queens County (and later Presiding Justice of the Appellate Division, First Department Appellate Division). It is a U.S. Attorney asking a state court judge to falsify court records. I am not alone in this view.

> MAY-17-1996 01:20  FROM US DEPT OF JUSTICE  TO
>
> **U.S. Department of Justice**
>
> United States Attorney
> Eastern District of New York
>
> jfc
>
> United States Attorney's Office
> 225 Cadman Plaza East
> Brooklyn, New York 11201
>
> May 16, 1996
>
> The Honorable Alfred D. Lerner
> Administrative Judge
> Supreme Court of the State of New York,
>    Queens County
> 88-11 Sutphin Boulevard
> Jamaica, New York 11415
>
> Re: People of the State of New York v. J. Spiro Zervoulakos
>     No. 4699/86
>
> Dear Judge Lerner:
>
> Please be advised that the United States Attorney's Office for the Eastern District of New York joins in the application of the District Attorney's Office for the County of Queens, requesting (1) that a Certificate of Disposition dated November 2, 1995 be issued indicating a dismissal in the above-captioned case, (2) that the Computerized Records System reflect a disposition of dismissal as of November 2, 1995, and (3) that the file in this case be sealed.
>
> It is understood that this case will not be dismissed in fact, but that the records will be altered to make it appear that there has been a dismissal. In fact, this case will remain pending, and a record of that fact will be maintained under seal by the Court. In addition, it is our understanding that all records in the above-captioned case will be corrected at the conclusion of the investigation in which Mr. Zervoulakos is participating.
>
> Respectfully submitted,
>
> ZACHARY W. CARTER
> UNITED STATES ATTORNEY

A few years ago the chief justice of the Florida Supreme Court, on learning that prosecutors had asked judges to do the same throughout the state, called it a criminal falsification of judicial records. I don't know what my father did. It doesn't matter, for the point is, Carter felt free to ask. He is now New York City Corporation Counsel. Perhaps someone will ask him to explain. Sadly, I doubt it.

B.  **THRESHOLD PROBLEMS OF TAINT IN THIS PROCEEDING**

1.  **The government and Sater's *Vaughn* index, if not improved, will taint the proceeding with irreparable, structural Fifth Amendment Error.**

Intervenors Forbes Media and Richard Behar have well argued that, if the government or Sater oppose unsealing anything, they will have a procedurally unfair advantage, since they are in possession of the sealed documents and the intervenor is not, which can only be remedied by compelling them to produce a *Vaughn* index, to borrow a term from FOIA law, listing for each datum they would keep sealed what it is and why it must be withheld from public access.

Clearly, like a privilege log which simply says for each item, "attorney-client privilege or work product," such an index is of no use if it told intervenors, "Some part of that big 50-page document there should be withheld, we won't tell you which part, and we won't tell you why either, though we will graciously say that it might be for any of a half-dozen reasons, you get to guess which."

For example, in *Comptel v. FCC*, 2012 WL 6604528 (D.D.C. Dec. 19, 2012) (Lamberth, J.), the court ordered the FCC to file an amended *Vaughn* index because the one given "relied on conclusory assertions to justify withholding information," holding that a proper *Vaughn* index should indicate, with respect to *each* datum withheld, that any reasonably segregable information has been released," the court noting that with what the FCC handed in it "cannot even tell whether the entire contents of a given document have been redacted or whether only portions have been withheld" and "cannot determine what information remains redacted."

Here, while the alignment of the players is different from a FOIA case, the principles are the same. Obviously, Mr. Oberlander and present and prior counsels have unredacted versions of many of the documents the government and Sater would keep fully or partly under seal. For one thing, we wrote the appellant's briefs. Thus, while intervenors have a problem insofar as they don't know what they don't know, Mr. Oberlander does not share that problem with them. And if I may make an analogy, the due process ramifications should be clear:

The court has no doubt presided over or participated in enough discovery disputes that its familiarity with Rule 26 protective orders may be presumed. Briefly, opposing parties' dissemination of material obtained by the compelled production of disclosure may be restrained by court order upon a showing of "good cause." The First Amendment is implicated, but at a level below standard strict scrutiny, *Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984).* And the public enjoys little if any right of access to those materials until and unless they're submitted into court as evidence.

Yet it must be ridiculous to say that only one side of the dispute can argue for imposition of a protective order and only that side can tell the court what it wants made subject to it, not letting the other side be heard in objection even if it already has the material, perhaps because it is the target of the production demand.

Well, if it is clear that it would violate due process to impose protective orders after listening only to the argument of one side – when the First Amendment is only somewhat implicated – it must be all the more violative of due process not

to let the other side be heard when the question is one of public access, which raises severe First Amendment issues often, as here, at the level of strict scrutiny.

Simply, Mr. Oberlander has every due-process right to know what portions of the documents in his own appeal would be kept sealed from public view, and why, so that he may argue against it, even if *in camera* or closed courtroom, and to argue against that should be rather hard, since no matter what, sooner or later he will (along with the rest of the world) be shown what redactions the court allowed. – So what theory of due process allows him to be deprived of that information now, so that he may argue against its foundations (if any), when he is ineluctably going to get it later?

And, this does not at all address Mr. Oberlander's procedural and substantive First Amendment *speech* rights (First Amendment due process is thought sufficiently distinct from general due process to be lumped in with that amendment, not than the Fifth, whether or not coterminous with the public's. (I address this later.)

2. **The government has already shown its willingness to taint this proceeding. Notice must be taken, and attention paid,** *for we are better than this*.

As noted, we appreciate the court's position in inheriting this situation and do not and could not suggest it "owns" any part of the path by which we got here.

Nevertheless, the situation is clear: The failure to notify Sater's victims of the proceeding today (and for that matter of the proceeding last week) is an absolute violation of federal statutory law, the Crime Victims Rights Act. 18 U.S.C. § 3771.

The reality has long been known: In this case, and others, the EDNY USAO has shown it will disregard if not repudiate the law, even to the point of deceiving the United States Senate, to do favors for Sater in return for his cooperation.

Sater pled guilty to charges of running a racketeering operation the principal purpose of which was to defraud penny stock investors of as much as $80 million. Eventually, another 20 or so pled guilty, including one Gennady Klotsman, who was, with Sater and another person, Salvatore Lauria, one of the three ringleaders.

Klotsman's judgment and commitment order, available at 02-cr-1303, docket entry 9, required him to pay $40 million in restitution. The government even started taking it from his canteen money in prison. A dozen or so other participants in the scheme were ordered to pay tens of millions of dollars more. Many actually paid at least some of it.

But not Sater. So he (1) managed to run an organized criminal enterprise that reaped nearly $100 million of proceeds from crime without creating one victim (in which case, whom are those restitution orders and payments by the others in respect of), or (2) the government has no interest in this besides stonewalling.

Again, the law is absolutely clear in this matter: federally protected crime victims have the clear right to be treated with dignity and respect, to meet and confer with the government, *and to be told of all open court proceedings*. 18 U.S.C. § 3771. The moment this court decided to bifurcate this proceeding, that last right was triggered.

*Where are they?* What has the government done to notify them? And with all respect, your honor, the statute is equally clear that where, as we know is so here, the government fails to provide these rights*, it is the court's duty to ensure that it does*. 18 U.S.C. § 3771.

C.  **REQUESTED EMERGENT RELIEF**

1.  **Appointment of a "next friend" to stand in for the public, the victims, or both and argue for maximum possible openness and confession.**

We can't turn back the clock here, but we can do the next best thing. Thus, in all modesty (but even more so in all vehemence) Mr. Oberlander requests that this court grant him *pro tempore* "next friend" standing so he may be heard in advocacy for those who cannot be heard, the public and the victims.

We also request the court order the CVRA compliance officer of the USAO EDNY to appear at this proceeding and explain before the public and this court why it is that his office refuses to comply with the law. Surely if Judge Cogan can drag AUSA's out of the Northern District to "stand and deliver," this court can drag this CVRA officer from across the street.

2. **Requiring the government and Sater to produce a proper *Vaughn* index and then deferring resolution of the unsealing until all parties and intervenors have had an opportunity to meaningfully object by use of such index, including if possible by the prior unsealing of all material with respect to which no one has objected.**

I realize that the actual unsealing must be done by the panel itself, but whether or not that can be done for the uncontested documents in sufficient time for the rest of this request, elemental due process requires that all persons involved be told the page and line numbers the government and Sater would redact, *and the reasons for same*, with as much detail as possible.

Due process demands no less.

II. **SEALING ORDERS AND PRIOR RESTRAINTS ARE NOT THE SAME, AND A FAILURE TO TAKE THAT INTO ACCOUNT MAY CAUSE GRIEVOUS ERROR**

D. A F̲ederal C̲ourt M̲ay not R̲estrict the E̲xtra-J̲udicial D̲issemination O̲f I̲nformation O̲btained or O̲btainable W̲ithout the U̲se of C̲ourt P̲rocess S̲imply B̲ecause T̲hat I̲nformation H̲as B̲een S̲ubmitted I̲nto C̲ourt

1. **The fundamental limit of equity jurisdiction.**

Time and again the court of this, and other, circuits have been presented the same question: What if anything can be done to restrict the dissemination of information obtained without the use of court process if it has been submitted into court?

Time and again they have got it wrong and have had to be reminded by the Second Circuit that the answer is, *"Nothing."*

The supporting caselaw dates back nearly a century, but again in the interest of expedience we will be brief and cite the most recent version.

In in *Bridge CAT Scan Assoc. v. Technicare Corp.*, 710 F.2d 940 (2d Cir. 1983), counsel for plaintiffs filed a complaint containing a purportedly confidential customer list he had been given by a disgruntled former employee. The defendant, even before answering, sought a court order sealing the complaint and enjoining not only its dissemination but also the dissemination of the customer list itself, asserting that it had been stolen.

Despite the fact that there had been no answer and counterclaim for a tort with respect to which there could be such an injunctive remedy, nor plenary action, so the court's Article III jurisdiction had not been invoked and its equity jurisdiction (remedial authority) not triggered, the district court granted the injunction.

The Second Circuit vacated the order, not because it was unconstitutional, but because it was *void* for lack of equity authority to issue it. Repeating the holdings of *Koons*[1] and *Parker*,[2] the Second Circuit vacated an injunctive order. The Second Circuit again reminded all that in the absence of such counterclaim or plenary action, *supra*, while a court could (assuming all other requirements for such were met) seal the document in which such information had been submitted, no court had the authority to restrict the extra-judicial use of information obtained outside of court process just because it had been submitted into court, such an order being null and void *ab initio*.

This is the fundamental limit that applies here. *No federal court, despite its inherent or expressly granted authority to protect the "dignity" of its own process, may constrain the extra-judicial use of information obtained without its process simply because someone has submitted it into, or used it within, that court*. But in all this time, this being doctrine for nearly a century, no one ever stopped to consider something…

---

[1] *International Products Corp. v. Koons*, 325 F.2d 403 (2d Cir. 1963) (Friendly, J.).

[2] *Parker v. Columbia Broadcasting System, Inc.*, 320 F.2d 937 (2d Cir. 1963).

**2.     The First Amendment futility doctrine applies.**

Suppose counsel in *Bridge* had promptly, upon his victory, plastered that customer list all over the internet. Could the court maintain any seal it had placed on the complaint he had filed initially?

Obviously not. Just as a prior restraint cannot lie when the restraint to be imposed would be futile – that is, ineffective in preventing the great, certain harm presumed to be threatening – no seal can be maintained when it will be ineffective because the public provenance of the information under seal guarantees such futility.

Thus, no sealing order can last past the time one of the persons bound by it (or anyone else) releases the information into the public domain.

Necessarily that means (1) no seal can last past the time of such a dissemination; and (2) if the court is aware that someone, party or not, intends to make such a dissemination imminently, sealing would be equally futile.

Mr. Oberlander, who all have agreed obtained all that he knew outside of court process, will make such dissemination to the full extent that it is lawful for him to do so (and, of course, no more).

**3.     The concomitant First Amendment limit of equity constitutionality.**

Which brings us to the ultimate point. This is not merely a sealing issue and not merely a public access issue. Even though this court said on the record last week that it believed a sealing order would not prevent the dissemination of public material (and so presumably any private material available as well), just

preventing the linkage of that material to what is under seal, the inability to tell anyone who cares to listen what has been under seal here is and has been the ultimate constitutional insult of both Mr. Oberlander's rights of expression and the public's rights, at least that part of the public that is a "willing listener," to hear what he would say.

This is an interesting situation, I suggest, because the Second Circuit itself has said that when an attorney's speech in a trial (that is, where he is participating as an attorney) is to be gagged, full First Amendment protection applies, *United States v. Salameh*, 992 F.2d 445 (2d Cir. 1993) (to say nothing of the parties'). How then can any lesser standard apply to the public's right of access if such a closure also bars the attorney from saying what's going on?

The positions are irreconcilable, and of course that resolution which favors the rights of core, political speech and reception thereof must dominate.

This, of course, is in addition to the presence or not of an invidious prior restraint injunction issued by the panel on February 14, 2011, one which facially, if it remains vital, threatens the imprisonment of any party or privy who disseminates anything under seal, then we are all of us in trouble, as it must apply not only to Mr. Oberlander, and me, and the intervenors, but to the government and the court as well, as the United States is and has always been a party.

And that, with respect, is outrageous to a tectonic, historical degree.

## Conclusion

For all the foregoing reasons, it is respectfully submitted that all documents as to which there has been no objection to unsealing should be immediately unsealed, and, as to the remainder, the government and Sater must be ordered to set forth by page and line number the precise redactions, and reasons for redactions in public, and the government must be directed to notify Sater's victims, in accordance with the Crime Victims Rights Act, of all open proceedings.

Dated: June 19, 2017
      New York, New York

Respectfully submitted,

/s/ Richard E. Lerner, Esq.
Attorney for "Richard Roe" a/k/a Frederick M. Oberlander
**The Law Office of Richard E. Lerner**
122 West 27th Street, 10th Floor
New York, New York 10001
Tel. 917.584.4864
Fax. 347.824.2006
richardlerner@msn.com