```
1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   ------------------------------x
                                        17-MC-1302(PKC)
3   In Re:
                                        United States Courthouse
4   Unsealing Motion/Motion             Brooklyn, New York

5   by the Government for               June 19, 2017
                                        1:00 p.m.
6   courtroom closure


7
    ------------------------------x
8
          TRANSCRIPT OF CRIMINAL CAUSE FOR UNSEALING MOTION
9             BEFORE THE HONORABLE PAMELA K. CHEN
                 UNITED STATES DISTRICT JUDGE
10                    AS SPECIAL MASTER

11  APPEARANCES

12  For the Government:        BRIDGET M. ROHDE, ESQ.
                               Acting United States Attorney
13                             Eastern District of New York
                               271 Cadman Plaza East
14                             Brooklyn, New York 11201
                               BY:  EVAN NORRIS, ESQ.
15                                  TEMIDAYO AGANGA-WILLIAMS, ESQ.
                               Assistant United States Attorneys
16
    For Movant                 YALE MEDIA FREEDOM AND INFORMATION
17  Forbes Media               ACCESS CLINIC
    and Behar:                 P.O. Box 208215
18                             New Haven, CT 06510
                               BY:  JOHN LANGFORD, ESQ.
19
    For interested             RICHARD E. LERNER, ESQ.
20  party Richard Roe:         1375 Broadway, 3rd Floor
                               New York, NY 10018
21

22  For Movant                 HENRY R. KAUFMAN, P.C.
    WhoWhatWhy.org             60 E. 42nd Street
23  and WiseLawNY:             New York, NY 10165
                               BY:  HENRY KAUFMAN, ESQ.
24
    (Continued following page.)
25
```

1    (Appearance continued.)

2    For respondent          MOSES & SINGER, LLP
     John Doe:               405 Lexington Avenue, 12th Floor
3                            New York, NY 10174
                             BY:  ROBERT S. WOLF, ESQ.
4                                 ROBERT MCFARLANE, ESQ.

5

     Court Reporter:         Rivka Teich, CSR, RPR, RMR
6                            Phone:  718-613-2268
                             Email:  RivkaTeich@gmail.com
7

     Proceedings recorded by mechanical stenography.  Transcript
8    produced by computer-aided transcription.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS

1          (In open court.)

2          COURTROOM DEPUTY:  All Rise.

3          THE COURT:  Have a seat everyone.

4          COURTROOM DEPUTY:  In re unsealing motion, motion by

5   the Government for courtroom closure, docket 17-MC-1302.

6          Will the parties state their appearances.

7          MR. NORRIS:  For the Government, Evan Norris,

8   Temidayo Aganga-Williams, and with permission of the Court we

9   have an intern with us, David Steinbach; no parties have

10  objected.

11         THE COURT:  Certainly.  Welcome everyone.  Good

12  afternoon.

13         MR. WOLF:  Robert Wolf and Robert McFarlane

14  representing John Doe, also known as Felix.

15         THE COURT:  Good afternoon to you.

16         MR. LANGFORD:  Representing Richard Behar and Forbes

17  Media LLC.  And co-counsel Jay Brown sends his apologies for

18  not being here on Thursday and today.

19         THE COURT:  Who was the counsel?

20         MR. LANGFORD:  John Brown.

21         THE COURT:  Good afternoon Mr. Behar and also

22  Mr. Langford.

23         Good afternoon, Mr. Kaufman.  And you are?

24         MR. HENRY:  James Henry.

25         THE COURT:  Okay.

PROCEEDINGS

1          MR. LERNER:  Richard Lerner for Richard Roe.  And I

2   asked if I may dispense of the fiction and refer to the

3   parties by their real names.

4          THE COURT:  Let's stick with the fiction for now.  I

5   know that obviously it's been released in some form but

6   currently the caption reads -- I'll say the same to you,

7   Mr. Wolf -- John Doe and Richard Roe.  Let's just preserve

8   that for purposes of today's hearing.

9          MR. WOLF:  I'll say this, our apologies as well for

10  not appearing on Thursday before the Court.  Our confusion

11  with the bifurcated order and everything got pushed to Monday,

12  today.

13         THE COURT:  Understood, understood.  The scheduling

14  was a little bit last minute, so I understand that you might

15  have been confused.

16         So we're here, as everyone knows, for a hearing on

17  the motion of the respondent appellant, Richard Roe, the

18  Intervenors, Richard Behar, and Forbes Media LLC, and the

19  Amicis of DCReport.org, WhoWhatWhy.org, and WiseLawNY to

20  unseal certain documents that have been filed in the Second

21  Circuit.  Motions have been filed there, but all of those

22  motions are currently under seal as well.

23         As everybody knows, I've been appointed Special

24  Master by the Second Circuit panel that is hearing the motions

25  to make a report or give a report to the Second Circuit on

PROCEEDINGS

1   these pending motions.

2          For today's hearing the parties moving for unsealing

3   will go first with their arguments.  And because, as I said,

4   the motions themselves are still under seal I do not want any

5   party on either side to explicitly reference any argument or

6   factual assertion that is made in your currently pending

7   submission before the Circuit which is under seal.  Now,

8   matters that are public record or even arguments obviously

9   that could be contained in those filings can certainly be

10  referenced or made here or repeated today, but again, I don't

11  want you to connect anything that you say with any of your

12  pending motions or responses by the Government.  Now this

13  should be obvious, there should be no references today to the

14  identity or content of any sealed documents; i.e., the

15  documents that are at issue with respect to the motions to

16  unseal.  So no one should be referencing anything that they

17  know to be under seal in those documents or even what

18  documents are under seal.

19         That is an exception to what I just said about

20  public information, because that information is not public.  I

21  just want to make sure everyone understands.

22         I know there will be references perhaps to document

23  numbers or docket numbers, that is fine, that doesn't identify

24  what document is actually under seal.  I'm going to give you

25  an example of how there might be some distinction.  There has

PROCEEDINGS

1   been made public the fact that a presentence report is one of

2   the documents at issue, that was a subject of prior public

3   court decisions, as well as prior submissions that have been

4   made public on this docket, as well as other dockets relating

5   to this matter.  So you can reference the fact that the PSR,

6   as it's known, is the one of the documents at issue.  But

7   nothing about the content of the PSR itself should be referred

8   to unless and until we end up in a closed proceeding.  Because

9   that is a document that I believe does contain sensitive

10  information.  And the Government, as everyone knows, has made

11  an application to seal the courtroom.

12          At the point that it becomes necessary for them to

13  give a fuller explanation regarding its request that certain

14  documents remain under seal, as everyone is aware of, that on

15  the Intervenor, Amicus, respondent side.

16          MR. LERNER:  I believe that motion was filed this

17  morning.

18          THE COURT:  That's correct.

19          MR. LERNER:  Which does not comply with Richmond.

20          THE COURT:  The exception I would --

21          MR. LERNER:  Advance notice that the Court may

22  entertain a motion to seal.

23          THE COURT:  The exception to that I think would be

24  that obviously before last Thursday's hearing I noticed all

25  the parties that I had intended to close the proceedings

PROCEEDINGS

1    overall, because of my view that it would contain certain

2    information, or at least certain information would be

3    elicited, that would comply with the constitutional standards

4    for closure.  So that issue was thoroughly discussed at the

5    last hearing on Thursday.  I don't think any party can claim

6    that they had no notice that was a likely outcome.  The only

7    difference is a technical one, which is that the Government

8    wasn't the moving party but rather the Court had communicated

9    to everyone that I had intended at that time to close the

10   proceedings entirely.  But based on the hearing and the

11   submission by the moving parties, I, as you know, decided not

12   to close the entire proceedings but to start at least

13   initially with a public proceeding.  And then only at the time

14   that it becomes necessary, based on a finding that I have to

15   make, close the proceedings.  So I overrule the objection you

16   make, but I understand what you're saying.  I find that here

17   no parties are prejudiced at all.

18          MR. LERNER:  That's correct, no party is prejudiced,

19   but the notice, the requirement of notice is noticed to the

20   public.  It's the public who is prejudiced not having the

21   motion docketed and noticed with the reasons therefore on a

22   public docket safely in advance of this hearing for them to

23   come in and object.

24          THE COURT:  I disagree with that as well.  Because

25   in the docket entry that we posted on Thursday after the

PROCEEDINGS

1   Thursday hearing, I indicated that there was a possibility of

2   closure at the time that I find that the criteria are met.  So

3   even the public would have notice that this hearing while

4   being conducted initially in public could eventually end up in

5   a closed proceeding once I made a finding.  And obviously the

6   fact that I haven't yet made that finding is because I haven't

7   heard enough at this point in terms of argument from both

8   sides.  And also that's not the requirement that I already

9   make the findings, simply that the public knows that this

10  proceeding might be closed.  Again, I think the only

11  difference is the Government hasn't yet filed its motion, but

12  I find that to be a technical difference without any material

13  consequence.

14           Did you want to say anything?

15           MR. WOLF:  No, your Honor.

16           THE COURT:  Oh, okay.  All right.  So I hope we're

17  clear on what the ground rules are for today's argument.  But

18  if any party has any doubt, I suggest you ask for a sidebar so

19  you don't run afoul of any rule or require us to have to

20  redact anything or seal anything at that time.

21           Now, I want to address a couple of preliminary

22  issues before we start.  The first one has to do with the

23  direction I made at the last hearing on Thursday that all the

24  parties submit under seal proposed redacted versions on the

25  Government and John Doe's side of their unsealing response or

PROCEEDINGS

1    their response of the unsealing motions, and on the Intervenor

2    Amicus and respondent sides, their objections to the closure

3    of the courtroom.  And the Government and John Doe did submit

4    close to the deadline, which was noon on Friday, their

5    proposed redacted submissions.  And those were unsealed on

6    Friday after noon shortly after they were received and after I

7    had a chance to review them.  However, Mr. Roe and the Amici

8    did not file their proposed submissions until well-after the

9    deadline; Mr. Roe about 2:30 and the Amici theirs about 4:30.

10   Due to the types of the submissions we weren't able to

11   publicly file them until this morning.  There was nothing

12   problematic about the Amicis redactions, so those remain as

13   they were.  And obviously that document is available now in

14   the public docket.

15            However, with respect to Mr. Roe's original

16   response, which was that he did not believe that anything need

17   to be redacted, I did take issue with a sentence or two that I

18   felt needed to be redacted.  Because I think he touched upon

19   the content of some of the documents that are at issue here.

20   You'll see I made some redactions.  You can make whatever

21   objection you want to, but those were also posted as of today.

22            MR. LERNER:  May I object now?

23            THE COURT:  Yes.

24            MR. LERNER:  The sentences that your Honor redacted

25   are public information, was made public in briefs to the

Rivka Teich CSR, RPR, RMR
Official Court Reporter

PROCEEDINGS

1    Second Circuit.  So if I may -- and also on other dockets.

2              THE COURT:  But don't reference the information.

3              MR. LERNER:  I won't, I will just state I can

4    supplement and demonstrate where that information is public.

5    If I may, perhaps the Court will reconsider.

6              THE COURT:  That sounds fine.  To be honest, I acted

7    out of an abundance of caution.  I was not sure of the

8    provenance of that information, since it sounded like it might

9    have come from a non-public source.  I decided that I would

10   for now redact it in the interest of at least releasing your

11   letter before today's hearing, and then I'll give you an

12   opportunity to submit something under seal if necessary

13   exparte.  But I don't think that's necessary to justify why

14   those special references should also be made public.  Okay.

15   So for now we'll table that or defer it to later.  Can you

16   submit something by close of business today or by noon

17   tomorrow?

18             MR. LERNER:  Thank you.

19             THE COURT:  Since I know you're a little busy at the

20   moment.

21             All right, now the second issue has to do with the

22   Government's redacted letter, which as I mentioned a moment

23   ago was filed shortly after noon and then it was discovered

24   that there was a technical defect with the copy that was filed

25   originally by the Government.  This was actually brought to

PROCEEDINGS

1    the Court's attention by Mr. Langford's office who accessed

2    the document.

3           As soon as that was discovered the Government's

4    letter, the redacted letter, was sealed again and then a

5    corrected version was reposted by the clerk's office.  So I

6    want to confirm though because the clerk's office has advised

7    me that you, Mr. Langford, represented that you and your

8    client, although you had downloaded the electronic version of

9    the document, have since destroyed all electronic copies or

10   versions of the document that you and your client have; is

11   that correct?

12          MR. LANGFORD:  Yes, your Honor.  To the best of my

13   knowledge as soon as we, as soon as I recognized the problem I

14   conveyed to my clients that they should destroy the documents,

15   without conveying the technical difficult.  And my clients

16   both confirmed that they destroyed the documents.  I then

17   destroyed the documents, co-counsel destroyed the documents.

18   And the documents were initially uploaded to a shared drive

19   that the clinic uses that is secured.  They've been removed

20   from that shared drive to the best of my knowledge.  To the

21   extent that they are somewhere in the ether, which I don't

22   understand, by which I mean --

23          THE COURT:  The cloud.

24          MR. LANGFORD:  The cloud.  I believe they have been

25   removed from every place that we know how to remove them from

PROCEEDINGS

1    and have been entirely destroyed.

2            THE COURT:  And everyone who works with or for you

3    has been instructed not to download or save or use that

4    electronic version of the Government's letter?

5            MR. LANGFORD:  Yes, your Honor.

6            THE COURT:  Thank you very much, Mr. Langford.  One

7    last question, did you also confirm that nobody used that

8    document in that version before you instructed them to destroy

9    it and not use of whatever copy you had?

10           MR. LANGFORD:  I recognized it approximately two

11   minutes after I e-mailed the clients.  I e-mailed them a

12   second time at that point, so I did not specifically confirm

13   whether the client, whether they did not use the document.

14           MR. BEHAR:  I didn't read it.  I just destroyed it.

15           THE COURT:  With respect to the share drive, how

16   many people have access?

17           MR. LANGFORD:  Only members of the clinic have

18   access, that is realistically between 14 and 16 individuals,

19   perhaps one administrator.  They were deleted almost as soon

20   as they went on to the share drive.  So to the best of my

21   knowledge they don't exist on any of our systems.

22           THE COURT:  Do you have any ability to determine who

23   might have accessed the documents from your share drive before

24   it was deleted?  I know it seems like a very small pocket but

25   I just want to get a sense of whether or not I need to have

PROCEEDINGS

1    one more curative measure taken by you, which is to confirm

2    with everyone that they didn't download it.

3              MR. LANGFORD:  I can do that.  I believe we have

4    that capacity.  I just have to circle up with the

5    administrator who runs that system.

6              THE COURT:  Remember the court reporter has to catch

7    every word you're saying.  Speak a little slower and a little

8    louder.

9              If you will by the close of business tomorrow

10   confirm that you have talked to or communicated with everyone

11   who has access to the drive and confirm that they did not

12   download that version of the letter, or that if they did that

13   they destroyed it.

14             MR. LANGFORD:  Yes, your Honor.

15             THE COURT:  Thank you very much, Mr. Langford.

16             Turning to you, Mr. Lerner.  The records show that

17   you also accessed the Government's first redacted letter

18   shortly I think after it was posted.  Did you electronically

19   download or save that document?

20             MR. LERNER:  I didn't have any problem downloading

21   it.

22             THE COURT:  I'm going to ask you to destroy the

23   electronic version you have of the document.  And if you want

24   to re-access the one that was reposted thereafter, which is

25   corrected.

PROCEEDINGS

1              MR. OBERLANDER:  Your Honor --

2              THE COURT:  No, no, I want to hear from Mr. Lerner.

3              MR. LERNER:  I didn't know there was any problem

4    with the document.  And being that it was the public version,

5    I e-mailed it to reporters right after I downloaded it.  So I

6    imagine there are people in the audience who have it as well

7    and others.  But I had no problem.  I'm not sure what the

8    problem is with the document.

9              THE COURT:  Can you provide a list of everyone to

10   whom you e-mailed it.

11             MR. LERNER:  I believe I can.

12             THE COURT:  It should be in your e-mail transaction

13   file.

14             MR. LERNER:  Uh-huh.

15             THE COURT:  So similarly, by the close of business

16   today will you, one, confirm with me that you've destroyed the

17   electronic version that you downloaded.  And if your client,

18   Mr. Roe, got one, that he also destroyed it.  And then provide

19   a list of everyone that you sent it to as well.

20             MR. LERNER:  Sure.

21             MR. LANGFORD:  Just for clarification, your Honor,

22   you said close of business tomorrow with respect to me, and

23   close of business today for Mr. Lerner.

24             THE COURT:  I'm sorry, close of business tomorrow

25   for you too, Mr. Lerner.

Rivka Teich CSR, RPR, RMR
Official Court Reporter

15

PROCEEDINGS

1              In terms of turning to the Government, is there

2    anything else?  I don't know the preliminary measures that you

3    believe I should do with respect to this issue?

4              MR. NORRIS:  No, your Honor.  I thank the Court for

5    taking these measures and specifically thank Mr. Langford for

6    bringing it to the Government and the Court's attention.

7              THE COURT:  The other thing, Mr. Lerner, I'll do is

8    I'd like you to communicate to the individuals or entities to

9    whom you sent that letter that they are being instructed by me

10   through you to destroy the electronic versions that they have.

11   I know that you may not agree with it, I'm just asking you to

12   communicate that.

13             MR. LERNER:  I will do that.  But the Court does not

14   have jurisdiction over, but I will nonetheless so advise them.

15             THE COURT:  They can raise that issue, but I'm just

16   asking you to communicate the message.  Then also let me know

17   to whom you sent it, and then also that you sent them that

18   communication.

19             Okay, let's turn now -- let me ask you, Amicus,

20   Mr. Kaufman.

21             MR. KAUFMAN:  Yes, your Honor.

22             THE COURT:  I don't believe that you downloaded --

23             MR. KAUFMAN:  No, I didn't.

24             THE COURT:  -- the Government's redacted letter; is

25   that correct?

16

PROCEEDINGS

1              MR. KAUFMAN:  That's correct.

2              THE COURT:  You just printed it out?  At some point

3    did you access it?

4              MR. KAUFMAN:  I don't believe I did at all.  I was

5    busy with my own things; I wasn't focused on that.

6              MR. LERNER:  I think Mr. Kaufman, you may be one of

7    the individuals I e-mailed to and perhaps --

8              THE COURT:  Mr. Kaufman, if in fact you go back to

9    your office and find you received an e-mail copy of it I'll

10   ask you to destroy it as well and confirm by close of business

11   tomorrow that you've done that.

12             MR. KAUFMAN:  All right, your Honor.  I apologize

13   your Honor for the late filing of our redacted letter.  I can

14   give you my tale of woe.

15             THE COURT:  It's not necessary, we have a lot to

16   cover.

17             All right, I think I've covered all the parties who

18   might have gotten that letter.

19             What I need to do now is make a finding regarding

20   the redactions that I allowed all the parties to make.  So I

21   do find that allowing the parties to do this and then only

22   releasing the unredacted portions of everyone's submissions

23   meets the standards that apply here.  So I do find that those

24   redactions -- rather, I do find that there was a substantial

25   probability or there is a substantial probability of prejudice

PROCEEDINGS

1    or harm to a compelling interest of the Government and John

2    Doe that allowing these redactions will protect.  Specifically

3    some those compelling interests are the integrity of

4    Governmental investigations, the safety of individuals, and

5    also enabling law enforcement to secure future cooperation

6    from individuals.  I also find there are no reasonable

7    alternatives to these redactions that would adequately protect

8    those compelling interests.  I also find that the redactions

9    were quite nearly tailored, and in some cases only a few words

10   or a few sentences.  And that lastly that the redactions will

11   be effective in protecting the threat interest of the

12   Government and John Doe.

13            I make one additional note.  I said this throughout

14   the proceedings, I also view my role as a Special Master as

15   limiting my authority with respect to unsealing any

16   information that's currently sealed in the Circuit.  As I

17   mentioned before, I'm acting at the behest of the Second

18   Circuit to make some findings and recommendations to them, but

19   otherwise I haven't been given carte blanche to unseal

20   documents in this matter, or unseal documents that are filed

21   in the Circuit.  So that provides yet an additional reason

22   that I think the redactions are appropriate because it

23   preserves the sealing order of the Circuit as to which I have

24   no authority to undo.

25            MR. KAUFMAN:  Your Honor, for the Amici -- forgive

PROCEEDINGS

1   me for not standing up.  As you're aware I believe the Amici

2   have been active in attempting to get all of the motion papers

3   as opposed to the underlying documents unsealed.  You told us

4   before that you felt you didn't have the authority under the

5   reference from the Second Circuit.  We took some kind of an

6   appeal or whatever, and the Circuit has never expressed itself

7   on the issue.  Can I -- is this an appropriate time for me to

8   move your Honor to advise the Second Circuit of your view --

9               THE COURT:  Yes, I think --

10              MR. KAUFMAN:  -- in regards to the motion papers?

11              THE COURT:  -- I think I explained that at the

12  Thursday hearing.  That one of the topics you can address is

13  your pending motion to unseal all of the motion papers at the

14  Circuit.  I do think that it's within my role to make some

15  recommendation on that issue.  I think in response, maybe to

16  Mr. Langford's question or someone's, I said you should

17  include that as part of your argument today, that you think

18  for various reasons that those motion papers should be

19  unsealed to the Circuit.  I will make the recommendation as

20  appropriate to them.

21              MR. KAUFMAN:  Thank you.

22              THE COURT:  One last matter we have to deal with

23  before getting to the substance of the documents.

24  Mr. Oberlander filed this morning a request to appear as a

25  friend of the court, but I'm going to deny that because

PROCEEDINGS

1   Mr. Oberlander is already involved in this matter as a party

2   and he's represented by Mr. Lerner.  I don't see any reason to

3   allow Mr. Oberlander to make, in effect, a second appearance

4   on his own behalf.

5           Mr. Lerner will be your spokesman as you've chosen,

6   Mr. Oberlander, and as is part of the record before the Second

7   Circuit.  Again, here I feel that while theoretically I might

8   admit a friend of the court, it certainly did not make sense

9   here where Mr. Oberlander's appearance has been made through

10  Mr. Lerner in the Circuit and that has been the case here as

11  well.  I deny the request for Mr. Oberlander to appear as a

12  friend of the court.  I will hear from Mr. Lerner only with

13  respect to Mr. Oberlander's interests.

14          MR. OBERLANDER:  I'm sorry.  Just for the record, I

15  obviously respect your decision.  Technically I was asking for

16  an ex-friend standing.  Because I don't have the same

17  interests for myself as an appellant as people who should be

18  here but are not.  Therefore, what I technically requested was

19  to be recognized as having ex-friend standing.  I don't think

20  it's a distinction or a technical difference, but it was to

21  give me standing that I don't have an appellant.  I respect

22  that you're denying.  I wanted to note that for the record.

23          THE COURT:  So you noted your objection.  I'm

24  denying that request.

25          Let's get now to the issues at hand.  I'll hear from

PROCEEDINGS

1  the parties who are moving for unsealing.  I think that since

2  Mr. Roe is the respondent/appellant we'll start with him,

3  followed by the Intervenors, and last Mr. Kaufman for Amici.

4          I'd appreciate it if you had don't repeat arguments.

5  I know everyone probably prepared a presentation, but if you

6  hear an argument being made by your co-counsel -- I'll call

7  you all loosely -- you need not to repeat the same argument.

8          MR. LERNER:  Reading from an unsealed letter, letter

9  dated March 17, 2011, unsealed by Judge Glasser on I believe,

10  on or about the 14th or 15th of March, 2013.  It was a letter

11  by the Government asking that Judge Glasser take up the

12  unsealing of the 98-CR-1101 case.  The Government stated,

13  "Here the compelling" --

14          THE COURT:  Slow down.

15          MR. LERNER:  "Here the compelling factors at issue

16  are the safety of the defendant and his family and law

17  enforcement's interest in procuring cooperation from other

18  defendants."

19          THE COURT:  Stop.  When people read they go too

20  fast.  You have a court reporter who has to take down

21  everything you say.

22          MR. LERNER:  Would you like me to hand up copy of

23  the letter?

24          THE COURT:  You can give a copy to the Government --

25  that won't help the court reporter -- and your colleagues.

PROCEEDINGS

1          MR. LERNER:  Starting over.  "Here the compelling

2     factors at issue are the safety of the defendant, and his

3     family and law enforcement's interest in procuring cooperation

4     from other defendants now and in the future.  That Government

5     revealed the defendants criminal conviction in a March 2,

6     2000, press release necessarily influences that balancing

7     test.  The Government has no information that any person has

8     sought to harm the defendant or his family since the press

9     release was issued, nor that the Government's ability to

10    secure cooperation has been negatively effected.

11          Now it has been five years or more since AUSA

12    Kaminsky stood up before the Second Circuit just one month

13    earlier on the now-unsealed transcript and said it was

14    necessary to maintain sealing in order to protect Mr.--

15          THE COURT:  Mr. Doe.

16          MR. LERNER:  Mr. Doe.  That argument that he made on

17    February 14, 2011, was abandoned one month later by this

18    letter.  It's been years and he hasn't been -- he's still

19    alive and well.  There is no compelling reason whatsoever for

20    his safety to maintain any further sealing on any documents.

21          There is an important reason as well why this entire

22    case must be unsealed.  And that is, I'm reading from an

23    unsealed letter dated January 26, 2012, page nine, this is the

24    Government reciting that in secret it moved at the Second

25    Circuit to unseal.  I'm reading from a public letter, "In its

PROCEEDINGS

1   summary order of June 29, 2011, the Second Circuit also

2   remanded with instructions for this Court, quote, to rule upon

3   the Government's unsealing motion of March 17, 2011, unquote."

4   That is what I just read to your Honor.  "Subsequently on

5   August 2, 2011, the Government moved under seal and exparte

6   with respect to Roe to modify the summary order to remove that

7   instruction."  In other words, there was a public document

8   referenced in a public decision that said the Government had

9   moved to unseal and ordered the judge to take it up.  And yet

10  in secret the Government moved to retract that at the Second

11  Circuit.

12          This makes this the incredibly, incredibly of

13  interest to the public how the Government could in secret move

14  to change an order so that the Judge Glasser would not take up

15  the unsealing, which the Second Circuit had ordered him to

16  take up, and which the Government had asked him to take up.

17  So there is -- we submit that there is an issue of overriding

18  misconduct.  We submit it's prosecutorial misconduct.  And

19  regrettably, it may be judicial misconduct, because that

20  submission should have been made known to the public that the

21  Government was moving in secret to try to undo what the Second

22  Circuit had ordered in public.

23          THE COURT:  Let me ask you a question though, the

24  Government does fairly frequently submit such requests in

25  camera for the obvious reason that the request is based on

PROCEEDINGS

1    information that it would undermine a compelling Government

2    interest.  Then the judge has to make a determination on his

3    or her own that that request to file such information under

4    seal and exparte is appropriate.  So here you may be accusing

5    the Government of doing something improper, but ultimately the

6    judge, Judge Glasser, and I think some at point later the

7    Second Circuit, did in effect ratify or approve that course of

8    action or conduct.

9        I mean, that's how the process works.  Yet you're

10   suggesting that something nefarious happened simply because it

11   was filed after seal, after an initial decision about making

12   something public.  Certainly circumstances can change or

13   something that comes to light later would effect that public

14   decision that went before it, the antecedent decision.  That

15   doesn't make it wrong, especially if you have two judicial

16   authorities approving that.  That's my concern.  I know you're

17   suggesting the judicial misconduct, that's a hard one for me

18   to accept.

19       MR. LERNER:  It was the exparte nature of that

20   submission, which made it, I submit, improper.  It was made

21   without notice to Mr. Roe, that an order which came down

22   directing the Judge to take up a motion to unseal, was

23   secretly being withdrawn or the request was made that it be

24   withdrawn.  What happened was the Second Circuit said no, take

25   it up with Judge Glasser.  And Judge Glasser subsequently in

PROCEEDINGS

1    an unsealed order later in August indicated that he did allow

2    him, in secret, exparte, to withdraw their motion, March 17,

3    2011 motion.

4              That order was sealed to the public until March 14,

5    2013, a week or ten days before the U.S. Supreme Court was to

6    decide Mr. Roe's petition for certiorari.

7              I've noted in my submission of this morning that the

8    crime victims have a right to be here.  Under 3771 of the

9    Crime Victims Rights Act, the Government has an obligation to

10   notify crime victims of all public court proceedings and this

11   is a very public court proceeding.  The Court, and here it

12   would be the Second Circuit, has an obligation to ensure that

13   the Government do its job and fulfill its responsibility to

14   notify victims of this proceeding.  We certainly know that

15   there are victims, because Klotsman, his co-defendant, was

16   ordered to pay restitution.  And there was certainly known

17   victims.  There was letters in the file identifying victims,

18   in the capo file, and in the files of co-defendants.

19             The Government has failed in its obligation

20   investigation to notify Sater's victims of this proceeding,

21   and all the proceedings for that matter that have occurred

22   from 1998 through the present.  These are proceedings not only

23   in the Eastern District, but Second Circuit, and even in the

24   U.S. Supreme Court where they have a obligation to notify the

25   victims that a case was brought before the court.

PROCEEDINGS

1          THE COURT:  So it's your position that the

2    Government has an obligation to notify the alleged victims of

3    John Doe's crimes of any request to unseal documents at the

4    Circuit level.

5          MR. LERNER:  3771 requires notice of every open

6    court proceeding to the victims.  They have not been notified.

7          It has been the Government's position that it was

8    necessary to keep Mr. Doe's cooperation secret.  That if that

9    information were to get out, he could come to harm, it had

10   been that position.  It was abandoned on March 17, 2011.

11         But the idea that that information became public or

12   became known to the La Cosa Nostra members of organized crime

13   because of anything Mr. Roe did or that I did is, I submit, a

14   fraud on the Court.  Because the victim -- the co-defendants

15   pursuant to Brady and Giglio, were notified that Felix

16   Sater -- withdrawn, that Doe was a cooperator.  Because in

17   2000 and 2001 and 2002 they all knew.  And I can hand up

18   letters to the Court showing that they had been informed back

19   in November 20, 2001, one of the defendants, Lawrence Ray, was

20   told that John Doe was a cooperator.  There is a memo of law

21   submitted in support of Daniel, defendant Daniel Lars'

22   pretrial motion where they sought information on the

23   Government cooperator.  And I'll use the fictitious names when

24   I read aloud.  "According to the Government, cooperating

25   witness, Gennady Klotsman and John Doe, served as solicitors

PROCEEDINGS

1    of Lev for his investment.  Therefore, the lion's share of

2    proof against Lev will come from the mouths of these

3    cooperators."

4            This is a memo of law which was filed with the court

5    on behalf of defendant Lev by Lichtman, I believe.  It was

6    joined in by all the defendants.  It's filed November 16,

7    2000.

8            They all knew, they've known for over a decade,

9    almost 20 years, that John Doe has been a cooperator.  And the

10   idea that he might come to harm as a result of any information

11   that might come to light now is preposterous.

12           THE COURT:  Can I suggest to you one thing, though,

13   obviously the fact that his being a cooperator is potentially

14   dangerous for him, but as you say, thankfully no harm has come

15   to him.  There is a difference between knowing, since he is a

16   cooperator, and knowing what he might have done for the

17   Government and who he cooperated against.

18           MR. LERNER:  I have no such information.  I don't

19   believe any Amici or Intervenors have any such information.

20   The only one who told that information in public is

21   Mr. Sater -- sorry.

22           THE COURT:  Mr. Doe.

23           MR. LERNER:  Mr. Doe himself, when he spouts to

24   various members of media and tells them what he's doing.

25   There is a website, I believe called NarcoNews, which I didn't

PROCEEDINGS

1    bring with me, where he talks about what he's done for the

2    Government.  There are other reporters he's spoken to.  I

3    think he spoke to Mr. Behar and told him what he has done.

4    Mr. Behar has counsel who can speak for him.  I believe it's

5    out there.  Mr. Doe himself has said what cooperation he

6    provided to the Government.

7              THE COURT:  Certainly some, right?

8              MR. LERNER:  Whatever he has disclosed certainly

9    cannot be redacted.  But as far as for information that he

10   actually did, I don't have that information.  We've never had

11   that information.  It wasn't in the PSR.  It wasn't in the

12   cooperation agreement.  It wasn't in the proffer.

13             THE COURT:  But you must admit there could be some

14   information that you don't know that could actually subject

15   him to a to a potential risk of harm were it to be disclosed.

16   It's certainly theoretically possible.

17             MR. LERNER:  I would call Rumsfeld on this one.

18             THE COURT:  It's clearly possible that some of the

19   information you don't know could still subject him to some

20   harm, notwithstanding the fact that his actual cooperation

21   with the Government has been revealed or was revealed a number

22   of years ago.

23             MR. LERNER:  I will acknowledge the theoretical

24   possibility.  However, for First Amendment purposes, theory

25   isn't enough.  It has to be a concrete showing of specific

PROCEEDINGS

1   harm.

2            THE COURT:  Potential not actual harm.

3            MR. LERNER:  Reasonably threat.

4            THE COURT:  Agreed.

5            MR. LERNER:  Thank you.

6            THE COURT:  Thank you, very much.  Mr. Langford?

7            MR. LANGFORD:  Thank you, your Honor.  I would take

8    a step back for just a moment and talk about the right of

9    access generally.  It's as well established in this Circuit

10   and around the country that there is a First Amendment right

11   of access to court proceedings and to certain court documents.

12   The purpose of the right of access couldn't be clearer, in

13   which newspapers and the Supreme Court over and over again

14   iterated and iterated and reiterated that the right of access

15   ensures that the public can see what is going on in its

16   courts.  In footnote nine, the Court compiles, I guess it's a

17   number of statements from his prior jurisprudence talking

18   about the notion that court proceedings are public property.

19            In this particular matter the right of access

20   couldn't be more important.  This case, as it has been widely

21   reported and is publicly known, implicates integrity interest

22   of the highest order, both of the EDNY, of this, Court, of the

23   Second Circuit in this proceeding; but more importantly now of

24   the relationship between the defendant in this case and the

25   President of the United States.  There is not a lot of dispute

PROCEEDINGS

1   on the other side the right of access attaches to the records

2   the Intervenors and Amici are asking to be unsealed here.

3          But I think it's important to quickly run through

4   the idea that the right of access clearly attaches to

5   appellate proceedings, clearly attaches to appellate rule

6   arguments, it clearly attaches to substantive briefing.  To

7   the extent that the Government and United States Attorney's

8   Office argue that certain documents in the Second Circuit are

9   not judicial documents and therefore not subject to the right

10  of access, I think that argument is misplaced.  Hartford

11  Courant makes it very clear that the vast majority of

12  documents, including the docket sheet itself that are

13  submitted to the court are subject to the First Amendment and

14  common law rights of access.

15         The government and plaintiff Doe's attorneys object

16  to the characterization of technical filings of judicial

17  documents.  But the only documents that fall outside of the

18  judicial document caveat are the ones that play no role in the

19  performance of Article III functions, that's a quote from

20  Amodeo.  I think that it's very clear that this argument hubs

21  around whether the right of access is overcome, not whether

22  the right of access attaches to the documents in this case.

23         If the Government or Mr. Doe's attorneys would like

24  to argue otherwise, I will go back and forth with them.  I

25  think that point is well-established by both the case law in

Rivka Teich CSR, RPR, RMR
Official Court Reporter

PROCEEDINGS

1   this Circuit as well as case law around the country.  I would

2   note that that case law extends to filings and proceedings

3   related to unsealing dockets.  Ninth Circuit specifically held

4   that when there is unsealing motion in an appellate form, the

5   right of access attaches to any argument and to the papers

6   submitted in connection.

7           Turning to the substance with the Government's

8   position on sealing.  In their letter, the redacted letter,

9   the Government contends that the documents they would like to

10  withhold would represent a substantial probability of

11  prejudice to compelling interests of the defendant,

12  Government, or third-party such as the integrity of Lev,

13  investigations, danger to persons, and privacy interests.

14  They cite for that proposition United States V. Doe.

15          I just would like to point out to the Court, that

16  when you turn to United States V. Doe, what the Second Circuit

17  says is compelling transaction may include the defendant's

18  right to a fair trial.  That's not an issue in this case.

19  Mr. Doe pled guilty 19 years ago, was sentenced in 2009.

20  There is no compelling interest in a fair trial.  There is no

21  trial.

22          They may include privacy interests of the defendant,

23  victims or other persons.  Mr. Doe has self-identified in many

24  public forums.  He continuously is speaking to reporters about

25  his cooperation with the Government.  I don't think that there

PROCEEDINGS

1   is a legitimate argument that Mr. Doe's identity is a

2   compelling privacy interest in this case.  There may be other

3   people identified in these documents who's privacy is sort of

4   still intact with respect to these proceedings.  I would

5   suggest that it's incumbent on your Honor to take a very close

6   look at the documents and make sure the redactions do not

7   inappropriately protect privacy.

8          Another compelling Governmental interest can include

9   the integrity of significant Government activities entitled to

10  confidentially, ongoing undercover investigations.  As far as

11  we know, there is no ongoing investigation.  We can't counter

12  that entirely, we don't know.  But I would suggest that it is

13  important that the Government, at the very least, carry a

14  burden of demonstrating that there is an ongoing

15  investigation, not just that there have been investigations.

16         THE COURT:  But you would agree, if there is

17  evidence of ongoing investigations that might be an interest

18  that should be protected by some form of restriction on the

19  disclosure of the information.

20         MR. LANGFORD:  Yes, your Honor, were the caveat that

21  it must meet the other three prongs:  That no alternative is

22  available, that it's narrowly tailored, and it's effective.

23         THE COURT:  Let me ask you that question, if you do

24  find that there is a prejudice or potential prejudice or harm

25  to a compelling Government interest, let's just pick the

PROCEEDINGS

1    example ongoing investigations being comprised, what would you

2    say is a reasonable alternative short of keeping that

3    information sealed and not in the public record?

4              MR. LANGFORD:  It may well be, your Honor, that

5    there is no reasonable alternative to some sealing in those

6    instances.

7              But I think when you come up on a scenario in which

8    the right must be limited, it still must be limited as

9    narrowly as possible.  The same interest that would have

10   justified sealing in 1998, in 2010, in 2011, in 2016, are not

11   necessarily interests sufficient to justify closure here.

12   Some of these investigations have concluded.  If these are

13   investigations in the sense that they are ongoing for 19

14   years, I would suggest that perhaps that happens in the

15   unusual case and maybe that's the case here, but it's the

16   Government's burden to demonstrate there is a real ongoing

17   investigation that could be hampered by disclosure of these

18   documents.

19             The last interest of the Second Circuit identifies

20   in danger to persons or property.  There I actually want to

21   push back slightly on what Mr. Lerner said in terms of what we

22   know about Mr. Doe.  We know his identity, we know that from

23   Mr. Doe himself and we know that from separate sources.  I

24   would turn to first the Government's own acknowledgment of the

25   extent of Mr. Doe's cooperation.  This is from the publically

PROCEEDINGS

1  available February 14, 2011, Second Circuit transcript.  There

2  I believe Mr. Kaminsky said, I quote, "Mr. Doe cooperated,

3  unlike some cooperators who cooperated within one type of

4  organized crime family or over one type of crime, Mr. Doe's

5  cooperation runs a gamut that is seldom seen.  It involves

6  violent organizations such as Al-Queda, it involves foreign

7  Governments, it involves Russian organized crime, and most

8  particularly it involves various families of La Cosa Nostra.

9  By that specifically I mean an individual on the ruling board

10 of the Genovese crime family, a captain in the Bonanno crime

11 family" -- I don't know the correct pronunciation of that --

12 "a soldier in the Gambino crime family.  The list goes on and

13 on."  That's the Government's own words.

14          Next I would turn to --

15          THE COURT:  I want to point out, Mr. Langford, that

16 you should appreciate that those types of investigations

17 certainly have more longevity than some.  When you talk about

18 RICO offenses in theory they could go on quite indefinitely.

19          MR. LANGFORD:  I believe --

20          THE COURT:  Or they can be prosecuted fairly long

21 after they start the investigation.

22          MR. LANGFORD:  I'm sure your Honor knows more than I

23 do on that, but I would also suggest that to the extent that

24 it is well-known publicly the names of the specific crime

25 families against which Mr. Doe has cooperated, then the notion

PROCEEDINGS

1    that there is still a compelling interest in protecting him

2    for his own safety, for example, is not sufficient to overcome

3    the First Amendment right of access.  To the extent that it

4    could interfere with an ongoing investigation, in that somehow

5    La Cosa Nostra has missed that Mr. Doe has cooperated against

6    them, potentially there is an argument.  I think that is a

7    high burden to carry on the Government's side.

8            I just wanted to point to Loretta Lynch's testimony

9    before Congress in September 2015.  Perhaps, your Honor, I can

10   go back to that.  I'm sorry about that.  It is in the record.

11   I'm sure your Honor is aware of it, but in her 2015 testimony

12   before Congress, Presumptive Attorney General Loretta Lynch at

13   that point acknowledged with a good deal of specificity the

14   extent of Mr. Doe's cooperation with the Government, including

15   the number of years that Mr. Doe cooperated, the sorts of

16   investigations that he was involved in.  That is, I think,

17   well established in the public record, both in public

18   reporting by some the very investigative journalists in this

19   room, including my client, also in the Government's own

20   acknowledgment of the 2011 hearing and Loretta Lynch's

21   testimony.

22           Before I make my next point I ask for a sidebar.

23           THE COURT:  Why don't we have a sidebar.  Everybody

24   come up.

25           (Continued on the next page.)

Rivka Teich CSR, RPR, RMR
Official Court Reporter

SIDEBAR

1          (Sidebar conference.)

2          MR. LANGFORD:  Your Honor stated that nothing in the

3    PSR is to be disclosed.  I don't have a copy of the PSR, but

4    in publicly available copies of the Supreme Court briefing

5    that was filed 2012 and 2013 there are a number of references

6    specifically to items in the PSR that I would like to

7    reference.  The only confirmation I have that they are in the

8    PSR is that a briefing says they are in the PSR, but that's a

9    matter of public record.

10          MR. LERNER:  Can I speak to that?  I can clarify.

11          THE COURT:  Go ahead.  Was that your submission?

12          MR. LERNER:  It was my submission to the Supreme

13   Court.  It was filed under seal discussing the contents of the

14   PSR under seal with a motion to the U.S. Supreme Court

15   requesting that they unseal it, and they granted that.  So the

16   contents of the statements in the PSR that I believe counsel

17   may have in mind are only those that were made public by the

18   U.S. Supreme Court itself.

19          THE COURT:  Do you have a record cite for that?  I'm

20   a little bit concerned.

21          MR. LERNER:  It's available on Westlaw.

22          MR. LANGFORD:  I have printing troubles.  I have a

23   copy for the Court.

24          THE COURT:  Let me see that.

25          MR. LERNER:  I don't know if you have access to the

SIDEBAR

1   U.S. Supreme Court docket, but it's 12-112.  It shows my

2   motion.  It was to file the cert petition under seal with

3   leave to file a public redacted version.  That was granted on

4   June 25 I believe of 2012.

5               THE COURT:  So this is the --

6               MR. LERNER:  Redacted in accordance with --

7               THE COURT:  What Mr. Langford has just handed me is

8   captioned Richard Roe et al Versus United States Versus John

9   Doe.  It's docket 12--112 in Supreme Court.  And at the top of

10  the document it says, "Redacted in accordance with the

11  June 25, 2012 order of the U.S. Supreme Court."  And this is

12  Mr. Lerner's petition for a writ certiorari.  So I'm looking

13  at redacted copy.

14              MR. LANGFORD:  If you turn to page seven -- the

15  copies were supposed to be highlighted but they were not

16  printed out with highlights.  You can see here.

17              THE COURT:  But this is the document that you say

18  the Supreme Court later granted Mr. Lerner permission to

19  unseal, that's what Mr. Lerner is saying.

20              MR. LANGFORD:  Yes, your Honor.

21              THE COURT:  Let's do this, do you have anything else

22  that we need to address at sidebar?  What I'd like to do is

23  give my law clerk a chance to confirm in fact this was

24  unsealed at some point.  Then, what we can do is have Mr.

25  Kaufman speak next and give you a chance to find the reference

SIDEBAR

1    to --

2              MR. LANGFORD:  We located it, yes.

3              MR. LERNER:  If your law clerk will looking at the

4    Supreme Court docket, the clerk will see that on June 25 there

5    was an order.  It's on the docket, it's docket order.  Then

6    one month later, I believe it was July 25, there is a

7    statement on the docket that says petitioner complied with the

8    order of June 25.  What's being referred to is the filing of

9    this in accordance with the June 25 order was met -- the

10   requirement of the filing of this met the, complied with the

11   order.

12             THE COURT:  When you say "this," this is a redacted

13   copy?

14             MR. LERNER:  Yes.

15             THE COURT:  You're representing at some point the

16   Supreme Court allowed you to unredact -- no.

17             MR. LERNER:  Allowed the redacted version to be made

18   public, that is it what was made public.

19             THE COURT:  Is the material from the PSR that you

20   want to reference in the redactions?

21             MR. LANGFORD:  No, your Honor.

22             THE COURT:  Give me an example, seven and eight.

23             MR. LANGFORD:  On page seven, Mr. Doe's 2004

24   presentence report or PSR.

25             THE COURT:  I see it noted.

Rivka Teich CSR, RPR, RMR
Official Court Reporter

SIDEBAR

1    MR. LANGFORD: "DOJ hadn't given the victim list

2  required by the mandatory Victims Restitution Act so probation

3  can contact victims about restitution."

4    THE COURT: But what is redacted here is the

5  reference to the presentence report -- wait, no, I'm sorry.

6    What is redacted there?

7    MR. LANGFORD: I don't know, your Honor.

8    THE COURT: Mr. Lerner, do you remember?

9    MR. LERNER: If your Honor would like to see the

10  unredacted petition I can hand it up, but I can't give it to

11  anybody else.

12    THE COURT: I'm trying to make sure that.

13    MR. OBERLANDER: Please --

14    THE COURT: The sentence as redacted means what you

15  say it means, that mainly it's saying that the PSR noted

16  because unfortunately with the redaction it's grammatically a

17  little confusing.

18    MR. LERNER: May I hand up the --

19    MR. WOLF: May I be heard on behalf of John Doe?

20    For years and years and years Mr. Oberlander,

21  through Mr. Lerner and otherwise, has been professing that the

22  Supreme Court authorized them to publish portions of the PSR

23  and other things. That's just a fallacy. There is any order

24  on this docket that I've reviewed that, one, shows an

25  application to do that. Or a subsequent order that says, sure

SIDEBAR

1    go right ahead and file portions of the PSR.

2              THE COURT:  Let me say this, though, if in fact it's

3    correct that this redacted petition appeared on a public

4    document, I'm looking at it directly, it does have a reference

5    to the PSR and in theory -- although this is where I'm having

6    some concern -- states some part of the contents, again, I'm a

7    little concerned about the grammatical awkwardness because of

8    the redaction, but if this was in fact filed publicly it just

9    supports what Mr. Lerner is claiming, that it was allowed to

10   be issued or publicly docketed and seems to contain some

11   reference to the presentence report.

12             MR. WOLF:  Your Honor, what the docket indicates, I

13   believe this was made in advance just by Mr. Roe the appellant

14   seeking certiorari, without papers filed from other sides or

15   even notice to anyone else with a request to file redacted

16   copies of their petition, there is nothing that shows up as to

17   what they were going to put in their cert petition.  But let

18   me say this --

19             THE COURT:  If we go to this Westlaw site we'll get

20   this exact document that I'm looking at?

21             MR. WOLF:  Correct.  And all the Supreme Court says,

22   file redacted.  It indicates what it says on the docket, the

23   identities of the parties and everything.  The reason I'm

24   saying this, is this has been raised over and over again, both

25   in the Second Circuit and with Judge Cogan.  There is Supreme

SIDEBAR

1    Court imprimatur matter that this is okay to publish anything

2    from the PSR when there hasn't been.

3            THE COURT:  I'd hate to be sort of obvious about

4    this but, the document I'm looking at which all parties seem

5    to agree, was actually posted on the public docket in the

6    Supreme Court in redacted form, does contain unredacted

7    references to the PSR and its contents.  So for example, there

8    is a sentence that we've been focusing on, which is on page 7,

9    first full paragraph underneath the heading II et cetera.

10   Then even further down on that same page it says that "PSR

11   also shows the probation officer, though charged with warning

12   employers and others of recidivism risk, knew Doe had been

13   working since 2002 as a partner at that real estate

14   development firm," then it goes on and has a record site.  It

15   also has other information about the PSR and the officer's

16   statements in the PSR.

17           So I don't know how an argument can be made that in

18   fact the Supreme Court did sanction, I mean approve or allow,

19   the disclosure of certain information from the PSR in this

20   public filing.

21           MR. WOLF:  I was not involved in the case at this

22   point.

23           THE COURT:  Do you dispute this is on the public

24   Supreme Court docket?

25           MR. WOLF:  I believe it is, yes.

SIDEBAR

1        THE COURT:  You believe that it is.

2        MR. WOLF:  I believe so.  We can access to the

3    docket.  My point is this, your Honor, it's been represented

4    over and over, and perhaps that representation is relevant or

5    not, that somehow the Supreme Court was, one, told that there

6    is PSR references; and two, authorized it in Court, which is

7    something that is just false.

8        This was raised in front of Judge Cogan.  It was

9    raised with the Second Circuit, this whole Supreme Court

10   thing, and all the decisions consistently afterwards of the

11   court, Second Circuit and Judge Cogan, at a minimum have

12   rejected any motions that there can be any references to the

13   PSR.

14       THE COURT:  But why can't they reference this

15   decision, or this brief if it wasn't sealed?  I suspect that

16   the problem we have --

17       MR. LERNER:  May I be heard for?

18       THE COURT:  Hang on for a second.  The only

19   potential issue is that these are just the contentions, it

20   seems, of Mr. Lerner or Mr. Roe by Mr. Lerner, that would be

21   one argument as to why it shouldn't come in.  Not really why

22   it shouldn't come in, but why I shouldn't consider it or why

23   it shouldn't be construed as truthful and accurate

24   representation of what is in PSR.  It's not a decision of the

25   Supreme Court, rather only Mr. Lerner's summary of what was in

SIDEBAR

1    the PSR.

2              MR. LERNER:  Under the rules of the U.S. Supreme

3    Court, the factual statements in the petition for cert are not

4    rebutted, they are deemed true of the purposes of the cert

5    petition.  Moreover, my motion I made to requesting that it be

6    made public, specifically cited the reasons and indicated that

7    the petition does make references to the PSR, and requested

8    permission to make those statements public.  It was granted

9    for the purpose of telling the media and potential Amici what

10   was going on in this case.  My motion was granted.

11             The motion was served on the Government.  It was

12   served on Mr. Doe's counsel.  There was no opposition to my

13   request for relief.  I have proof of service.

14             It's a little late for Mr. Doe to be making an

15   argument about that motion for leave, to make that petition

16   for cert public or challenge any facts in it when they were

17   not challenged.

18             THE COURT:  What I'm thinking about here is what

19   significance this has, if any, on the question of disclosing

20   or allowing the disclosure of the presentence report in toto

21   or even as to these particular allegations.  Again, this is,

22   at least this brief I'm looking at, is simply your

23   representation of what the PSR says.  And then you would claim

24   that beyond that, because it was unrebutted it should be

25   accepted as true.

SIDEBAR

1    But again, regardless of all that, how does it go to

2    the question of unsealing?  I think your argument is going to

3    be that the cat is out of the bag and the Supreme Court has

4    essentially approved of the letting of the cat out of the bag;

5    therefore, how can I say that it shouldn't be disclosed at

6    least those portions.  That's your argument?

7    MR. LANGFORD:  Yes, your Honor.  And then I would

8    just point out a couple of things.  One, I actually don't

9    necessarily know that it's relevant whether the Supreme Court

10   allowed this to happen.  I think the argument is just that

11   because this is publicly available, there is no longer any

12   effect to a sealing order at least with respect to these

13   portions of the PSR.

14   THE COURT:  Well, I mean, I don't agree with that.

15   If it's merely Mr. Lerner saying this is what is in the PSR,

16   that isn't inherent  reliable or validity.  The problem I'm

17   having is a little bit of let it go into the record as to what

18   the PSR says, which I think is subject to some dispute.  And

19   that's why I think the more relevant issue is whether or not

20   you even get to reference these representations about what the

21   PSR says.  This is clearly a public record.  I get that,

22   assuming that this redacted copy was filed as is.  You can

23   certainly represent that.  But I'm concerned about creating a

24   record that gives the impression that this is a fact of what

25   the PSR says, when I don't have or don't have the ability

SIDEBAR

1   right now to test that or review it.

2          Now, I don't know, and I'll hear from the Government

3   on whether there is harm in you saying, okay, a publicly filed

4   document with the Supreme Court the following representations

5   were made about what was in the presentence report.  So that

6   information is out there in public, at least the

7   representations are.

8          MR. LANGFORD:  Just one related point, was that in

9   the Government's own opposition filed by the Solicitor

10  General's Office --

11         THE COURT:  That's the next document you handed me,

12  "Redacted brief of the United States in opposition."

13         MR. LANGFORD:  If you turn to pages three and four.

14         THE COURT:  Okay.

15         MR. LANGFORD:  I'll just point out that starting

16  here.

17         THE COURT:  Okay, right, okay.  So that generically

18  refers to the fact that the PSR noted Mr. Doe's cooperation in

19  several places.  It doesn't talk about the actual --

20         MR. LANGFORD:  It does cite the specific paragraphs

21  of the PSR.

22         THE COURT:  But nothing about the nature of the

23  cooperation in this part as least.  Simply knowing that he did

24  cooperate and that was part of his PSR.

25         MR. LANGFORD:  Yes, your Honor.

SIDEBAR

1          THE COURT:  You want to make the point the PSR

2    should be unsealed because it refers to his corporation.

3          MR. LANGFORD:  At a minimum.  I think anything

4    referred to in paragraph 130 of the PSR should be unsealed.

5    Our position is enough is disclosed in here, and I think in

6    conjunction with the public record that is otherwise

7    available, to suggest there should be a much broader

8    disclosure of the PSR in this case.  And that is incumbent on

9    the Government to justify, I don't think it can justify

10   redacting these particular motions of the PSR.  I think that

11   even if they can, they have to justify redaction.  I don't

12   think they can be wholly withheld at this point.

13         THE COURT:  My overall concern about this is that it

14   almost rewards the bad behavior of Mr. Roe by releasing

15   something he should not have released in the first place.  So

16   then the argument goes in order to defend against that there

17   has to be a discussion about what is in it.  Then that becomes

18   a boot-strap argument as to why it should be fully disclosed.

19   I'm concerned about this as a matter of policy.

20         MR. LERNER:  Your Honor, there can't be any wrongful

21   disclosure.  U.S. Supreme Court has granted the motion to

22   allow it to be disclosed.  They've taken that away from the

23   Second Circuit and from your Honor.

24          In fact, before I submitted that proposed redacted

25   version, I e-mailed exchanges with the court staff at the U.S.

Rivka Teich CSR, RPR, RMR
Official Court Reporter

SIDEBAR

1    Supreme Court where they authorized me in that forum.

2             THE COURT:  I'm talking when the original disclosure

3    with the filing of the civil complaints, from which this all

4    comes or arises out of, that is my concern.

5             MR. LERNER:  There has never been a finding that

6    Oberlander obtained it through wrongful means.

7             THE COURT:  I do say that I think things speak for

8    itself.  Unless Mr. Doe gave to him, it's hard to imagine what

9    correct purpose he had that document for.  Or who might have

10   been entitled to that document and given it to him.  Let's not

11   go down that road.  I'm explaining at some level this strikes

12   me as being improper because I'm dealing with the reality that

13   there are some references to the contents of the PSR in these

14   publicly filed documents.

15             Where the Government does it, I think it's a little

16   bit different than where Mr. Lerner does it.  I think this

17   illusion might be, is to allow the arguments to be made that

18   there are these representations in public court documents

19   about what is in the presentence report.  Then whatever follow

20   up argument you want to make in that vein, I'm sure the

21   cat-is-out-of-the-bag argument.  But I will consider that.  I

22   can't really say it's improper to reference representations

23   made in publicly filed briefs.  However, I think the

24   Government can certainly argue that these are merely

25   representations that I can take for what they are worth.

SIDEBAR

1            And there is a more fundamental arm here that

2     troubles me, that is because they were released in this

3     fashion.  Because the defense of why they should be, or

4     because the case for why they should be in still sealed

5     requires some public vetting of that issue.  It almost creates

6     an improper reason for it to then be unsealed.  Like I said,

7     it seems to reward the bad behavior in the first place.

8            MR. LERNER:  Objection to bad behavior.

9            THE COURT:  Understood.

10           MR. LERNER:  I'll state pursuant to Watkins, the

11    Watkins case from Judge Raykoff I believe moved for the

12    unsealing of the PSR on the supplemental memorandum.

13           MR. LANGFORD:  If I can address the policy concern

14    you've expressed.  That argument did percolate through Judge

15    Cogan and Judge Glasser's orders.  There are a couple of

16    responses.  I think it's an issue that is not really before

17    the Court right now.  The first would be that the same

18    argument could be made for the Pentagon papers, which is that,

19    you could have argued that allowing a newspaper to publish

20    information that was wrongly obtained, I believe that very

21    argument was made and Supreme Court rejected that.

22           I think further, whether or not obtaining the

23    documents in the first place was lawful, I don't think factors

24    into the constitutional closure standard.  The issue is, is

25    this information public.  Which is why I said earlier, that I

SIDEBAR

1   believe that whether the Supreme Court condoned these filings

2   or not, may be a motivating factor in a decision one way or

3   the other if they are sitting on Westlaw and they have the

4   indicia of reliability as these I think do.  I think there are

5   more arguments to be made about why they are reliable

6   representations.  I don't think the constitution permits

7   courts to keep that information secret anymore.  It doesn't

8   yield to policy incentives that might allow people to disclose

9   documents.  I don't think there is a fix for that.  I think

10  that there are criminal statutes on the books that allow for

11  the prosecution of --

12          THE COURT:  I know this matter has been referred on

13  this issue by Judge Cogan, I understand that.  I'm only

14  cutting you off because we need to move forward.

15          Let me hear from the Government on the proposal to

16  allow the Intervenors and other parties to make reference to

17  this publicly filed brief, including the Government's brief

18  petition by Mr. Lerner, then also the Government's response to

19  the extent that it at least makes representations about what

20  is in the presentence report.

21          MR. NORRIS:  I'm struggling with this one, your

22  Honor.  I'm conscious of the fact that there is a long history

23  of this case.  I won't profess to remember all the details.

24  But I believe that these issues were brought to the Second

25  Circuit's attention prior to the 2014 briefing in connection

SIDEBAR

1   with the prior unsealing process before Judge Glasser.  And

2   ultimately the Second Circuit continued to affirm redactions

3   or sealing in connection with the PSR.  That's one point.  And

4   that post dates this.

5           And I have a memory that some aspect of what had

6   happened in the Supreme Court and what was in the public in

7   the Supreme Court briefing, may have been brought to the

8   Second Circuit's attention in connection with those.  I'm not

9   certain of it.  I'm also not certain what our response was, if

10  any, or how the Second Circuit handled it.  That's why I'm

11  pausing.

12          There was both an injunction that was issued in the

13  dissemination with the PSR.  As well as ultimately in 2014 a

14  summary order of the Second Circuit that affirmed Judge

15  Glasser's redactions and sealing among other things with

16  respect to references to the PSR.

17          THE COURT:  The problem I have is that this is a

18  brief from May 2012.  It makes references to the PSR.  Clearly

19  neither the Second Circuit nor I have any authority -- or

20  Judge Cogan or Judge Glasser I should say -- have the

21  authority to preclude a party from referencing what is in the

22  public already, what has been filed.

23          Now, an entirely different issue is whether I find

24  that those references justify unsealing the PSR.  But I don't

25  think allowing them to make reference to it is something that

SIDEBAR

1    I can really preclude them from doing in a public hearing.

2    Why can't they reference it.  There is no argument to be made

3    that somehow the reference for what is already in the public

4    could cause any greater harm.  The weight of that, or the

5    effect or consequence of that, I agree with you, may still be

6    subject to much argument and debate.  You can respond.  But it

7    seems to me the mere existence of these disclosures or

8    representations, I should say, is something I can't prevent

9    them from saying on the regard.

10            MR. NORRIS:  That might be right as a matter of

11   constitutional law.  Because so much of this case has been

12   characterized as advertent and inadvertent disclosures that

13   forces everyone's hand with respect to the new reality, the

14   Government will probably be excised and not refer one way or

15   the other publicly to anything that is mentioned.

16            You may be right, if in the event that these are

17   public regardless of how it came to be, it may that the

18   constitutional applications allows folks to make reference to

19   them.  We're not going to do that today in light of prior

20   rulings.

21            THE COURT:  No one is pointing me to a decision by

22   the Supreme Court where they make reference to what is in the

23   presentence report.

24            MR. LANGFORD:  No, your Honor, that doesn't exist.

25            THE COURT:  I'm going to let you say what you want

SIDEBAR

1   to about what has been represented as being in the public

2   domain already.  You can certainly make your counter arguments

3   about how, A, I shouldn't consider them at all, they don't

4   justify unsealing, and there is merely representations to a

5   large extent by the party moving for unsealing, that you're

6   neither going to confirm or deny, I guess, the language,

7   except for obviously the reference in the Government's brief

8   but that can be fairly innocuous.  It talks more about generic

9   statements about his cooperation, which I think everything

10  knows.

11            Let's proceed with you making your arguments.  Stick

12  with whatever is in the unredacted portions of the petitions.

13            MR. NORRIS:  I would note we may not make any

14  comments about it today.

15            THE COURT:  That's fine.  Proceed how you want.  I'm

16  going to let them make their arguments.

17            (End of sidebar conference.)

18            (Continued on the next page.)

19

20

21

22

23

24

25

PROCEEDINGS

1          (In open court.)

2          MR. LANGFORD:    On February 9, 2015, Presumptive

3   Attorney General Loretta Lynch submitted answers to questions.

4   And in response to a question from Senator Hash, let's see if

5   I can summarize the question for you.  Senator hash says, "A

6   professor at the University of Utah College of Law testified

7   before the House Judiciary Committee, House Judiciary

8   Subcommittee, on the Constitution regarding implementation of

9   crime victims' rights statutes.  These include mandatory

10  Victim Restitution Act and the Crime Victim Rights Act, both

11  of which I have helped enable.  He, Professor Paul Castle,

12  suggested that your office had failed to follow these statutes

13  in a sealed case involving a racketeering defendant who had

14  cooperated with the Government.  Specifically, he cited

15  documents appearing to show that your office failed to notify

16  the victims of the sentencing in that case and had arranged

17  for the racketeer to keep the money he had stolen from

18  victims."

19          Senator Hash asked Loretta Lynch to explain.  She

20  says, "The defendant in question here" -- she says Felix Sater

21  -- "provided valuable and sensitive information to the

22  Government during the course of his corporation, which began

23  in or about December 1998.  For more than ten years he worked

24  with prosecutors from my office, the United States Attorney's

25  Office for the Southern District of New York, and law

PROCEEDINGS

1    enforcement agents from the Federal Bureau of Investigation,

2    and other law enforcement agents, providing information

3    crucial to national security and the conviction of over 20

4    individuals.  Including those responsible for committing

5    massive financial fraud and members of La Cosa Nostra.  For

6    that reason his case was initially sealed."

7              She goes on to talk a little about the sealing.  But

8    the argument with respect to this testimony is that once

9    again, there is a very, very public record of a very

10   high-ranking Government official acknowledging the extent of

11   Mr. Doe's cooperation against members of La Cosa Nostra.

12             THE COURT:  So your focusing on the LCN part of her

13   comment.

14             MR. LANGFORD:  I'm sorry, the LCN?

15             THE COURT:  La Cosa Nostra.

16             MR. LANGFORD:  Yes.  It also refers to national

17   security issues.

18             THE COURT:  Which is very generic and vague.  You

19   may proceed with your next argument.

20             MR. LANGFORD:  What I would suggest I do is provide

21   your clerk with a copy of the brief.  I'll give the page

22   number on those copies, it may be easier than the Westlaw.  So

23   the set of documents that I'm about to refer to were filed

24   when Mr. Roe saw cert from the Supreme Court in this matter.

25   And the documents refer very specifically to the PSR and to

PROCEEDINGS

1   the contents thereof.  The documents represent what they claim

2   are the contents of the PSR.

3          THE COURT:  Be specific, what Mr. Roe claimed was

4   contained in the PSR.

5          MR. LANGFORD:  Both what Mr. Roe claimed in the PSR,

6   there is also a response from the Government.

7          THE COURT:  You should specify whom you're

8   attributing each of those representations to.

9          MR. LANGFORD:  Of course, your Honor.  I want to

10  preface by saying there is something you can glean from the

11  metadata from the cites, both the Government and Doe and Roe,

12  are citing to the same portion of the Supreme Court Joint

13  Appendix.  More importantly, neither contradicts what the

14  other says is incorporated in the PSR.  And so I think both

15  strongly suggest that these are accurate representations of

16  the contents of the PSR.  One would suspect that the Solicitor

17  General's office would challenge a blatant false

18  characterization.

19          THE COURT:  I understand your argument.

20          MR. LANGFORD:  So in Roe's own petition for cert, on

21  page seven -- we're going to engage in a long reading

22  exercise, I hope I'm not wasting anyone's time by doing this.

23  I can submit this afterwards, if you prefer.  I'd like to be

24  on the public record, but I also don't want to waste

25  everyone's time.

PROCEEDINGS

1          THE COURT:  I would just read it very slowly.

2          MR. LANGFORD:  Yes, your Honor.  So on page seven of

3  Roe's cert petition.  Roe asserts that Doe's 2004 presentence

4  report or PSR noted DOJ hadn't given the victim list, JA514,

5  required by the MVRA, so probation can contact victims about

6  restitution.  Across the break, on pages seven and eight, Roe

7  goes on to assert the PSR also shows the probation officer,

8  though charged with warning employers and others of the

9  recidivism risk, knew Doe had been working since 2002 as a

10  partner at that real estate development firm, yet agreed not

11  to communicate with the firm, thus allowing Doe's prosecution

12  to remain hidden from the firm and his partners, JA515.

13          Continuing on page eight, the officer also stated in

14  the PSR that Doe self-reported no salary from -- this is

15  redacted -- but he, the officer, wouldn't verify it, JA537 to

16  38.  As that might alert the firm to Doe's secret case JA537.

17          Continuing on page eight, the probation officer

18  concluded Doe had a negative net worth of -- it's redacted --

19  JA540, yet with no income still managed to live and in -- this

20  is redacted -- per month house, JA534.

21          Continuing on page eight, the officer expressly

22  noted that he did not ask what happened to the millions of

23  dollars of crime proceeds Doe had admitted receiving, JA541.

24          On page ten, Roe asserts the documents, meaning the

25  documents at issue in the Second Circuit's litigation, were a

56

PROCEEDINGS

1  criminal complaint, JA590; information, JA588; proffer, JA466;

2  and cooperation agreement, JA472 to 480, all from 1998, and a

3  PSR from 2004, JA496 to 544. All from Doe's secret case,

4  98-CR-1101 EDNY, identifying Doe by his true name confirming

5  Doe had pled guilty to racketeering and had been scheduled for

6  sentencing in 2004.

7          Skipping ahead to page 23, Roe argues even without

8  the submissions the judiciary would have to know because

9  during that entire time respondent was under a cooperation

10  agreement and a probation office knew what he was doing,

11  JA515.

12          I realize I cut off the sentence that gives that

13  some context. The sentence before that refers to Doe's

14  ongoing fraud while he was cooperating as a witness, the point

15  that Mr. Roe is making is that the probation office would have

16  known fraud.

17          On pages 23 and 24 Roe argues, the Court's below

18  must know he has been emboldened to continue his -- if for no

19  other reason than his probation officer acknowledged in the

20  2004 PSR that Doe's racketeering conviction was being hidden

21  from the firm and his partners including petitioner's clients,

22  JA515.

23          In the Government's response, I believe this is

24  their response on the merits, the Westlaw cite is 2013 Westlaw

25  648684, on pages three to four. The Government acknowledges

PROCEEDINGS

1    that the District Court had previously scheduled Doe's

2    sentencing for September 2004, docket entry number 15,

3    July 22, 2004.  In advance of sentencing, a court-appointed

4    probation officer prepared a presentence investigation report,

5    CA8496 to 544 (2004 presentence report).  The very same that

6    Mr. Roe is citing to you in his briefs, see 18 U.S.C. 3602.

7    I'm going to skip the rest of this cite.

8            The Government goes on to say, that report noted

9    Doe's cooperation agreement with law enforcement multiple

10   times and relied on Doe's assistance and noting the District

11   Court's authority to impose a more lenient sentence than would

12   otherwise be required, CA at 8532 paragraph 130, 543, to 544,

13   paragraphs 180 and 185 to 186.

14           In light of Doe's ongoing cooperation, however, the

15   sentencing was adjourned to a later date, as occurred multiple

16   times during the proceedings.  See for example petitioner's

17   appendix 106A to 107A.  I'm going to skip through.

18           A probation officer prepared a revised presentencing

19   report in connection with Doe's sentencing in 2009, cite is to

20   presentence investigative report September 15, 2009.  In

21   petitioner's reply brief -- I apologize I was unable to locate

22   on Westlaw, which is why I don't have quotes from that brief.

23   If I find them, I'll be sure to submit them to the Court.  But

24   the Westlaw cite is 2013 Westlaw 836953.  Roe argues on page

25   one, the documents at issue, those documents included a

PROCEEDINGS

1    presentence report, PSR, from the 1998 case, which revealed

2    that Doe is hiding his previous conviction from his partners

3    in the new firm (an obvious material omission).  On page nine,

4    Roe argues the 49 page PSR contains only a single footnote

5    explaining restrictions on redisclosure that apply to the

6    Bureau of Prisons, JA497.

7           Page 11, Roe argues, the 49-page PSR contains

8    exactly three references to Doe's cooperation agreement and

9    provides no details about the nature or extent of Doe's

10   cooperation, JA532, 543 to 44.

11          Finally, just one more quote, in the petitioner for

12   rehearing, and the Westlaw cite is 2013 Westlaw 316-6392, Roe

13   argues on page five, the District Court's sole reason for

14   enjoining disclosure of the PSR was that it mentioned the fact

15   of Doe's cooperation with the Government, see Petition

16   Appendix 64A, but the 49-page PSR contains only three generic

17   references to Doe's cooperation agreement and provides no

18   information about the nature or extent of Doe's cooperation,

19   JA532, 543, 244.

20          THE COURT:  Before you continue with your argument

21   let me ask you a couple of questions.  First, the references

22   to JA is to the Joint Appendix that was filed by the parties

23   before the Supreme Court, correct?

24          MR. LANGFORD:  Yes, your Honor.

25          THE COURT:  Do you know if any portion of that

PROCEEDINGS

1    appendix was sealed; namely, the presentence report itself?

2              MR. LANGFORD:  I do not know the answer to that,

3    your Honor.

4              THE COURT:  That is a typical way that they proceed

5    in the Circuit, you know.

6              MR. LANGFORD:  Yes, your Honor.

7              THE COURT:  You don't know whether or not they

8    sealed the actual presentence report at the Supreme Court

9    level?

10             MR. LANGFORD:  I do not know.  I believe initially

11   the Joint Appendix was submitted under seal.  I don't know

12   that any portion of the Joint Appendix was redacted or

13   resubmitted.  I don't believe that a redacted version is

14   available on Westlaw.

15             THE COURT:  You know I do want you to submit a

16   letter later -- never mind, we'll confirm it on the record

17   ourselves.  Because my guess is that they sealed the Joint

18   Appendix, then only allowed out certain information under this

19   redaction protocol that was followed, including the documents

20   that you cited from which were only released after they were

21   redacted, correct?

22             MR. LANGFORD:  Correct, your Honor.

23             THE COURT:  The other question, the Supreme Court

24   ultimately denied cert after reading the petitions you

25   mentioned.

60

PROCEEDINGS

1          MR. LANGFORD:  Correct.

2          THE COURT:  Rehearing by Mr. Roe and redenied.

3          MR. LANGFORD:  Correct.

4          THE COURT:  And then the Second Circuit before that,

5   and the decision that Mr. Roe was appealing to the Circuit, to

6   the Supreme Court, confirmed the non-disclosure of the

7   presentence report as held by Judge Glasser, correct, or Judge

8   Cogan.

9          MR. LANGFORD:  When you say the non-disclosure?

10          THE COURT:  Meaning the request to unseal the

11   presentence report was the subject of the proceedings below

12   before Judge Glasser, correct?

13          MR. LANGFORD:  Correct.

14          THE COURT:  Judge Glasser resealed the document

15   after it was filed by Mr. Roe as part of his civil case,

16   correct?

17          MR. LANGFORD:  Correct.

18          THE COURT:  Then Judge Cogan decided the issue of

19   content based on the acts of Mr. Roe, correct?

20          MR. LANGFORD:  Correct, your Honor.

21          THE COURT:  He also ruled that the PSR should not be

22   disclosed; is that correct?

23          MR. LANGFORD:  Correct.

24          THE COURT:  All of those decisions were affirmed by

25   the Second Circuit?

PROCEEDINGS

1          MR. LANGFORD:  Correct, your Honor.

2          THE COURT:  Go ahead.

3          MR. LERNER:  May I correct several points?

4          THE COURT:  All right.

5          MR. LERNER:  First of all, the issue of the Second

6    Circuit on the 10-2905 was not the unsealing of the PSR.

7    judge Glasser on July 10, I believe -- July 20, 2010, stated

8    that he's issuing a permanent injunction as to the PSR, not

9    because of any wrongful conduct by Mr. Oberlander but because

10   the PSR regime itself.  He held that PSRs are a special kind

11   of document that are subject to special rules.

12         THE COURT:  Greater protections from unsealing.

13         MR. LERNER:  And in a sense he held that they are of

14   a higher order of protection than the Pentagon papers.  That

15   issue was taken up to the Second Circuit.  They did affirm the

16   non-dissemination of the PSR.  But the issue there was not the

17   unsealing of the PSR, because there was no need to unseal it,

18   it was never a court-sealed document.

19         THE COURT:  I'm not sure what that means exactly.

20   They are never disclosed in court proceedings.

21         MR. LERNER:  But they are not docketed.  They are

22   not sealed.  They fall under a different regime.

23         THE COURT:  They are not disseminated to the public.

24         MR. LERNER:  But if they happen to come into the

25   hands of a member of the public, then it was argued that he

Rivka Teich CSR, RPR, RMR
Official Court Reporter

62

PROCEEDINGS

1    has a right to disseminate it, as a member of the public has a

2    right to disseminate the Pentagon papers.  I'm not rearguing,

3    I'm clarifying what was at issue.

4            THE COURT:  I want to clarify the issue too.  I want

5    to make clear to all the parties, this is partly what we

6    talked about at the sidebar, was that I allowed Mr. Langford

7    to make arguments and put on the record what is already in the

8    public domain via these briefs filed with the Supreme Court.

9    But those are representations by both parties as to what is

10   contained in the PSR.  There is no, as I understand from

11   Mr. Langford, a Supreme Court decision specifically stating

12   what is in the presentence report.

13           So I want the record to be balanced that ultimately

14   notwithstanding these arguments and representations that were

15   made in the briefs by Mr. Lerner at the Supreme Court, and the

16   responses by the Government, the Supreme Court ultimately

17   didn't grant cert which allowed to stand the Second Circuit's

18   decisions on two different occasions in essence affirming the

19   continued non-disclosure, non-dissemination of the presentence

20   report at issue.

21           I want the record to be clear.  And for no one in

22   the public leaving that somehow those recited representations

23   are fact or that they were proven or endorsed as fact by the

24   Supreme Court itself, notwithstanding the submissions of the

25   arguments to them.

PROCEEDINGS

1        MR. LERNER:  However, I will add as I stated at

2   sidebar, that under the Supreme Court rules, if a fact is set

3   forth in the petitioner for certiorari and it's not rebutted,

4   it is deemed true.  I know there are new facts that have come

5   to light since 2010 and 2011 and 2012 warranting now the

6   unsealing of the PSR.  Those facts are well-known in the

7   public.  A fellow named Donald Trump is now the President of

8   the United States and had a business associate who we've been

9   calling here John Doe, who is a convicted RICO fraudster.  And

10  the public needs to know the length of their relationship, the

11  nature of their relationship, and what kind of person John Doe

12  is.  The PSR speaks to that quite clearly.

13       THE COURT:  Mr. Langford, it was your -- hang on one

14  second.

15       I want to ask you one question, Mr. Lerner.  You

16  cited as one of the reasons there should be disclosure the PSR

17  or maybe all of the documents is that the Government violated

18  the Crime Victims Rights Act.  But the violation of that Act,

19  is a remedy for that requiring them to disclose documents as

20  to which there may be a compelling Governmental interest to

21  keep secret?  I'm seeing a bit of a mismatch here.  I

22  understand that part of your claim throughout has been that

23  the Government didn't fulfill its obligations under the Crime

24  Victims Right Act, as was a question posed to Presumptive

25  Attorney General Lynch, why is the unsealing the remedy?

PROCEEDINGS

1   Where did it say in the law that that's the proper remedy?

2              MR. LERNER:  It says it in the First Amendment as

3   interpreted by the Supreme Court and every other court that

4   looked at the issue.  The remedy for Governmental misconduct

5   is the bright light of sunlight, the disinfectant of sunlight.

6              THE COURT:  What you want disclosed is the

7   Government failing to advise alleged crime victims of

8   hearings, so the sunlight has been taxed on that, that is part

9   of the public record.  There is, in theory, no notice that was

10  filed by the Government or certainly I guess you could voir

11  them to find that out.  I'm not sure how revealing documents

12  that various courts, including Judge Glasser then Judge Cogan,

13  have decided should be sealed is the remedy for the victim's

14  rights not being observed.  That's where I'm finding the

15  disconnect.

16             MR. LERNER:  Let me quote from Loretta Lynch during

17  her --

18             THE COURT:  Wait, I have to finish another thought.

19             It's not as if them coming to the proceeding in

20  which none of those records were disclosed either would solve

21  the alleged injury to them by not getting notice of the

22  proceeding.

23             MR. LERNER:  Ms. Lynch, in terms of restitution,

24  "There has been speculation that my office pursues restitution

25  from cooperating defendants differently than it does from

PROCEEDINGS

1    other defendants.  It does not.  With respect to Sater's case

2    the information in the record that concerns the issue of

3    restitution remains under seal.  As a matter of practice,

4    however, the prosecutors in my office work diligently to

5    secure all restitution whether the defendant is convicted in

6    their cases, cooperated with the Government, or not."

7              I submit that when this case is totally unsealed it

8    will prove that was false.  That the EDNY does not work

9    diligently to protect crime victims; that cooperators are

10   given specific deals; that victims of cooperators are not

11   informed of their CVRA and MVRA rights.  That makes the

12   unsealing of paramount importance.  This means that the

13   Eastern District has in a sense ratified the misconduct of the

14   prosecutors' office and allowed them to give special deals to

15   cooperators allowing them to keep the money they've stolen in

16   exchange for their cooperation, which I submit is maybe

17   reasonably construed according to Caperton standards of

18   reasonableness.

19             THE COURT:  Let me ask you this, though, wasn't that

20   issue decided by the Second Circuit in the Supreme Court, the

21   same exact argument you've been making, which is that this

22   information should be disclosed to remedy the failure of the

23   Government?  That was exactly, I think, the argument that was

24   made to the Circuit.  Then you tried to get the Supreme Court

25   to decide.  What is different?  Why should I go against what

PROCEEDINGS

1    has already been rejected by the Second Circuit and the

2    Supreme Court -- I or the Second Circuit, again I should say.

3              MR. LERNER:  Because of what Ms. Lynch testified to

4    in front of the Committee, Senate Committee, what I just read

5    to your Honor.  She said that this office, the EDNY office,

6    does protect cooperators.  And unsealing this record -- I'm

7    sorry.  She testified that the EDNY does protect crime

8    victims, does afford them all the rights under CVRA and MVRA.

9    Unsealing this record will show that that is false.

10             In other words, I submit that unsealing this docket

11   in its entirety will show judicial misconduct, prosecutorial

12   misconduct, and misrepresentations by Ms. Lynch when she

13   testified before the Senate Committee.

14             THE COURT:  All right.  Anything else to say on

15   that?

16             MR. LERNER:  I ask that the information in the

17   record that concerns the issue of restitution be unsealed.

18   She said that it remains unseal.  I submit that there is no

19   such information.  And that fact should be brought to light,

20   to the public light.

21             THE COURT:  Okay.  Mr. Langford.

22             MR. LANGFORD:  So in one way I agree with Mr. Lerner

23   that things have changed since the Supreme Court denied cert,

24   most importantly the transcript of the Second Circuit's

25   February 14, 2011 hearing is now publicly available.  Loretta

PROCEEDINGS

1    Lynch's testimony was given after the Supreme Court denies her

2    and as a principal.  I think it's important to step back for a

3    second.  In this respect I think we differ somewhat from

4    Mr. Lerner's arguments.  It is not part of the First Amendment

5    right of access test.  As part of the First Amendment right

6    access test, the Court doesn't assess the utility of a

7    particular document to shed light on a particular proceeding.

8    Instead there is a categorical determination on the front end

9    of the test.

10          If there is a history of access and logic of access.

11   Under Preston two types of documents, like letters, briefs, to

12   proceedings like oral arguments, to pretrial hearing, voir

13   dire transcripts, et cetera.  Then the right extends to that

14   category of records.  Then it becomes the Government's burden

15   to demonstrate that for some particular reason and some

16   particular case, on a case by case basis, the right is

17   overcome.

18          THE COURT:  You agree there is no history when it

19   comes to presentence report, quite the contrary, right?

20          MR. LANGFORD:  Right, your Honor, absolutely.  But

21   there is a very important qualification there.  This is where

22   I would submit that Judge Cogan, I believe maybe it was Judge

23   Glasser, went off a little bit in adopting the Charmer

24   standard.

25          What Charmer deals with is a scenario in which, the

PROCEEDINGS

1   specific issue before the Second Circuit was whether the court

2   should disclose a PSR at the outset, in the context of a

3   criminal prosecution. It didn't deal with a case like this

4   where a PSR becomes subject to access litigation, for

5   instance, in which the PSR is a prime exhibit. That, if you

6   accept the position, I think this Court has to, that the right

7   of access extends to the proceeding about unsealing

8   themselves. Then it follows that if the unsealing proceeding

9   is about a PSR, that is made part of the court record, the PSR

10  becomes subject to the right of access.

11            THE COURT: For what purpose, for purposes of

12  arguing for unsealing?

13            MR. LANGFORD: It becomes part of, it becomes

14  subject to the right because there is a history of access to

15  documents that form the basis of a court's decision, documents

16  that influence a court's determination of an issue. If the

17  issue happens to be about unsealing, to sort of

18  meta-proceeding, but it certainly is a judicial document.

19            THE COURT: So therefore you don't apply Charmer.

20            MR. LANGFORD: You wouldn't apply Charmer. It's not

21  about release in the first instance. There might be another

22  scenario that a PSR has been let out of the bag. Whether you

23  can stop a reporter from publishing it, clearly would be

24  subject to the Pentagon papers, to the jurisprudence

25  generally, that's a different issue.

Rivka Teich CSR, RPR, RMR
Official Court Reporter

PROCEEDINGS

1          Charmer does not deal with the right of access

2     either.  Charmer deals with the specific scenario in which the

3     Arizona Attorney General acquired a PSR from I believe it was

4     Eastern District of New York court, I don't remember

5     specifically, and wanted to use the document and sought

6     clarification.  The issue went up to the Second Circuit.  When

7     there is a request from someone like the Arizona Attorney

8     General to obtain a PSR for use in a criminal prosecution,

9     what is the standard for disclosure.

10         That's very different than when the PSR becomes a

11    prime exhibit in another judicial proceeding like we have

12    here.

13         THE COURT:  I'm not sure I entirely agree with you,

14    but I understand what you're arguing.  I think the potential

15    danger of your argument is simply because someone requests to

16    unseal something it all of a sudden looses or, here the PSR,

17    looses its of historical protection.  I think you have to go

18    back to the standard of is this something that historically

19    has been subject to disclosure or dissemination to the public.

20    This is fundamentally a document that is not.

21         MR. LANGFORD:  In the context a normal criminal

22    investigation, you're correct.  Just as a judge's bench memos

23    are not subject to right of access, they are not judicial

24    record.  The typical PSR is an internal court document, the

25    probation office is an arm of the court.  It's like a bench

PROCEEDINGS

1    memo in that context.

2           But when the PSR is disclosed for one reason or

3    another, and particularly where it concerns information of

4    public significance, I would say particularly, particularly

5    where it contains information of the highest public

6    significance potentially, there is no difference between a PSR

7    and any other exhibit at the core of a judicial proceeding,

8    like an exhibit to a summary judgment, those are subject to

9    the right of access.  The PSR is playing a fundamentally

10   different role in this litigation than it does in your normal

11   criminal prosecution.

12          THE COURT:  But certainly the preliminary

13   indications of disclosure are no different if it's criminal or

14   civil.  In other words, you may endanger the safety of

15   individuals.  You may disclose, as has been alleged here,

16   potentially ongoing investigation.  And you certainly at a

17   minimum are going to undermine without knowing what is the

18   Government's ability to get individuals to cooperate if

19   something as simple as someone requesting to unseal a PSR

20   could sort of remove any cloak of protection that it had.

21          Go ahead.

22          MR. LANGFORD:  So I think the problem is, your Honor

23   is conflating the motivations behind protecting PSRs in two

24   different contexts.  Those are the same as you say, same sorts

25   of privacy at stake.

71

PROCEEDINGS

1          THE COURT:  I was going to say motivations.  But the

2    consequences, aren't the consequences the same?

3          MR. LANGFORD:  I think they would be if you don't

4    have a very full-some public record of what this individual

5    has been prosecuted for, of what their criminal history was,

6    the Presumptive Attorney General talking about the crimes,

7    talking about the witness' role.  If you didn't have

8    references to the very PSR in a public Supreme Court briefing

9    it's a very different scenario.  I think you certainly could

10   have a case, and you probably do with respect to certain

11   aspects of this PSR, that the right of access is overcome.

12   But the point is in the Charmer instance if I intervene in a

13   normal criminal case, I say I want to see the PSR, it gets

14   kicked on the first part of the right of access test.  It's

15   not a judicial document.  It's not filed with the court.  It

16   is not typically part of the record.  It's not what the

17   litigation is about.  It's like a bench memo, so the right

18   doesn't attach there.

19          If on the other hand, say a very high-profile

20   individual were to be prosecuted and for whatever reason a PSR

21   makes it out, there is a lot of litigation over the

22   surrounding aspects of the PSR being leaked, that all of a

23   sudden becomes a judicial proceeding.  There is briefing on

24   the PSR, about it's contents.  If the PSR is submitted as an

25   exhibit it very becomes subject to the right of access.

72

PROCEEDINGS

1          THE COURT:  Okay.  I understand your argument.

2          Did you want to say anything further, Mr. Langford,

3    Mr. Lerner is jumping up.

4          MR. LERNER:  I'd like to point out, there is no

5    categorical rule that the PSR can't be made public.  In fact,

6    Judge Raykoff in the Watkins case did order a PSR public in

7    furtherance of the ends of justice because the person who was

8    the subject of that PSR had made misrepresentations in

9    litigation, I believe also in the public, which was

10   contradicted by what was set forth in the PSR.  So pursuant to

11   Watkins we would submit, and we'll brief the issue in a

12   supplemental memo, this PSR must be unsealed because of its

13   paramount importance now.

14         THE COURT:  Thank you.  By the way, I'm not inviting

15   any supplemental briefing.  You've already submitted a brief

16   that I have.  So I don't intend to ask for anything further.

17   If you want to make any other argument or cite any other

18   cases, now is the time to do it.

19         MR. LERNER:  Well then, I'm citing the Watkins case

20   from Judge Raykoff in support of unsealing the PSR.  Because

21   we submit that by allowing the regime of secrecy to continue

22   by the probation officer not doing his job, it facilitated

23   what we may be apparent to be fraud by President Trump in

24   financial institution fraud.  I would speak to that further,

25   but I don't think this is the appropriate place.

73

PROCEEDINGS

1          THE COURT:  Thank you, Mr. Lerner.  Mr. Langford?

2          MR. LANGFORD:  I think I pretty much touched on

3    everything I would like to touch on.  There is one logistical

4    issue, in that in the both the Government's chart identifying

5    their positions on sealing and Mr. Doe's chart there are a --

6          THE COURT:  Mr. who?

7          MR. LANGFORD:  Mr. Doe's chart.  There are many

8    missing docket entries.  The numbers even in the combined

9    chart that I've prepared to assist the Court, you'll see do

10   not actually run, there are gaps.  I hope it doesn't mean we

11   need to come back but, I sort of think we might have to come

12   back if there are other documents that, and we know there are

13   other documents and other filings that are not on the public

14   docket.  I think the case law in the Second Circuit could not

15   be clearer that the entirety of the docket sheet is subject to

16   the right of access.  I think, it's very much the Government's

17   burden, and Mr. Doe's burden, to justify withholding that even

18   the docket itself, the entries.  The Second Circuit Hartford

19   Courant case.

20         THE COURT:  Point to me a document that you say is

21   not on the Government's list.  You're referencing the filing

22   that you made this morning, which we did unseal.

23         MR. LANGFORD:  If you look down the left-hand column

24   of the Government's most recent chart the numbers are one,

25   two, four, five, seven, nine.  I'm not good at math, but

PROCEEDINGS

1    that's not the entirety set of docket entries.  We're missing

2    three, six, eight.  There is a host of docket entries missing

3    from the Second Circuit's publicly available record.

4              THE COURT:  I think, though, my concern is that you

5    may be making a bit much about what turns out to be some

6    administrative filings that the Court did.

7              For example, three, even identified on your chart,

8    is the District Court order.

9              MR. LANGFORD:  Sure.

10             THE COURT:  And then four is a notice of appearance.

11   So these are documents that -- I don't know if the Government

12   has any opinion on -- and truthfully I'm aware that they had

13   to rely to some extent on documents that were provided to them

14   by the Circuit.  I think we're all operating at a bit of a

15   disadvantage in that regard, since the entire docket -- the

16   documents themselves are not available through the public

17   docketing system.  So the question I have for you is, is there

18   anything that you've identified that actually seems to be

19   something of substance as opposed to administerial filings?

20             MR. LANGFORD:  There are a couple of things.  If you

21   turn to page four of the table that I submitted, there is a

22   very big gap between docket entry 135 and 140, there are four

23   documents missing there.  Before that there are 124 and 128.

24             THE COURT:  More importantly seven between 128 and

25   135.

PROCEEDINGS

1      MR. LANGFORD:  That runs throughout this table.

2  What I believe is happening in the Second Circuit is the same

3  thing that is happening here, which is that there is a sealed

4  docket and that some those filings are matriculating to the

5  public docket.  But I believe there is somewhere in the Second

6  Circuit a record that has all of these docket entries.

7      THE COURT:  Let me turn to the Government.  I don't

8  think the Government has any access to any sealed docket.

9      MR. NORRIS:  No, we certainly don't.  A couple of

10 comments on that.  I know our redacted letter has been filed

11 from June 9.  We reviewed the numbers in terms of what we've

12 been able to access and able to review for purposes of these

13 proceedings.  There is no doubt we have don't have everything.

14 When we embarked on this process we reviewed our own files,

15 talked to the court, talked to the Second Circuit Clerk of

16 Court, tried to get what we could from the publicly available

17 Second Circuit.  And everything we were able to pull and

18 everything we were able to find we reviewed for purposes of

19 these proceedings.

20      I agree with counsel, it does appear there are some

21 things we don't have.  But we're not certain how to get access

22 to them at this point.  Our understanding is the Second

23 Circuit Clerk of Court has provided everything it has to your

24 Honor.  And I'm not aware --

25      THE COURT:  Not exactly, but yes.

PROCEEDINGS

1          MR. NORRIS:  I'm not aware of where else we can look

2     to find any other documents at this point.

3          THE COURT:  This is a bit of conundrum of no one's

4     making who is here.  What I will endeavor to do, we have

5     access to I think the sealed docket sheet, we will make a

6     comparison to see what some of these missing entries are.  If

7     necessary I may, if necessary, I'll take some action to advise

8     the parties if something further needs to be addressed by the

9     parties.  That's probably the best way to put it.  I had not

10    really considered these missing documents to be relevant.

11    Because as I said, I think many of them are not substantive

12    but merely administerial.  I think sometimes things will be

13    numbered by a number, but the Court does it internally.  It

14    has no bearing that the parties can or should address.  So I

15    will make sure that we look at some of these missing entries

16    and do a comparison to figure out whether or not anything more

17    needs to be discussed by either side.

18          That will be part of the project when I make the

19    recommendation to the Second Circuit.  And if something needs

20    to be briefed supplementally or further we'll let you know by

21    notice of some sort.  But obviously, this is also something I

22    have to deal with the Clerk's Office in the Second Circuit as

23    well.

24          MR. LANGFORD:  Your Honor, the only other point I'd

25    raise now is that for each of the documents that the

Rivka Teich CSR, RPR, RMR
Official Court Reporter

                          PROCEEDINGS

1    Government and/or Doe have argued for redaction, they do not

2    identify whether they consider them to be judicial documents.

3    That determination is, again, made on a categorical basis.

4             If they intend to argue, for instance, that docket

5    entry 128, on page four of my table, which is a motion for

6    clarification of the February 14, 2011 order, that argument

7    should be made publicly and we should have an opportunity to

8    respond to that sort of argument.

9             THE COURT:  Whether something is a judicial document

10   or not.

11            MR. LANGFORD:  As a category of record.

12            THE COURT:  Well, contrary-wise are there some

13   specific designations?  Because you have the benefit of those

14   from the Government's unsealed or partially unsealed letter.

15   Are there any that you would contend should be deemed judicial

16   documents?  The problem is, you don't you know what they are,

17   right?

18            MR. LANGFORD:  I would say partially.  Some of these

19   that they have argued are not -- for instance, docket entry

20   four, notice of appearance as substitute counsel.  These are

21   admittedly administerial filings, but I think that the Second

22   Circuit's Amodeo test is very clear that the only things that

23   are not judicial documents are things that have no relation to

24   the Article III function.  And I think if you read that case

25   alongside Hartford Courant that talked about the utility of

PROCEEDINGS

1    docket sheets.  And Hartford Courant applies to the entirety

2    of the docket sheet.

3           The reason that there is a logical access to the

4    docket sheet, these sorts of filing ensure that the process is

5    unfolding normally.  The sorts of documents that the Second

6    Circuit and other circuits in the country are being concerned

7    about pulling off of out of the judicial documents category

8    are things like bench memos or PSRs, in your ordinary criminal

9    case, or things like discovery disputes where they are filed

10   with the court for the sole purpose of showing that they are

11   irrelevant to whatever the dispute is about.

12          THE COURT:  Let me ask you a question, this is a

13   more pragmatic response to what you're raising.  First of all,

14   it's difficult for the Government to discuss at length in an

15   open proceeding, I think, why it may view some documents as

16   non-judicial or not judicial documents.  Because the

17   Government would have to reveal what the documents are and

18   currently nobody, save maybe Mr. Roe, knows what those

19   documents are.

20          Now you've pointed to something that is listed on

21   the public docket number four in particular, as something

22   where it appears that the Government may have incorrectly

23   viewed that document as not the judicial document.  However,

24   this is where I'm being pragmatic, again, the Government has

25   taken the view that that can be unsealed; that's their

PROCEEDINGS

1    position.  So I don't think there is any purpose in going

2    through necessarily all the documents because either the

3    Government isn't going to be able to explain why they took the

4    position, it's not a judicial document; or with number four,

5    they are not opposing the unsealing of that document.

6         So I'm not sure theoretically I can view the issue

7    differently.  I'm not sure it's worth figuring out every

8    single document as to which the Government believes is

9    judicial or not, because the practical effect is almost nil

10   where they are saying we agree with unsealing.

11        MR. LANGFORD:  I agree, your Honor.  And I would not

12   want to go through that.  I will just say that I don't think

13   it's appropriate, for instance, if the Government intends to

14   argue that sealed motions, that oppositions to motions, these

15   are substantive documents and also letters, if they intend to

16   argue that these should be redacted in part because whatever

17   is redacted is not subject to the right of access, I think we

18   should have a chance to respond to that.

19        THE COURT:  I got it.  Okay.  Let Mr. Norris

20   respond.

21        MR. NORRIS:  In our first version of the chart that

22   we included in the June 9 letter, we didn't include a column

23   as to whether a document is judicial or not.  We did the

24   Court's order with second chart.

25        The Court is correct, nothing rides in our

PROCEEDINGS

1    determination whether or not the documents that we said could

2    be unsealed, whether we viewed them as judicial or not.  If we

3    incorrectly designated one as no where it should have been

4    yes, in some instances we're happy to have that corrected.

5    There is no specific document that --

6              THE COURT:  You're relying on the presumption --

7              MR. NORRIS:  We're relying on a presumption or

8    making any redactions or sealing decision based on the

9    conclusion that it's not a judicial document.  It's just our

10   effort to assist the Court and answer the Court's question in

11   that regard.

12             MR. LANGFORD:  One other category of record that

13   appears, if you take a look at page two of the table I

14   submitted, there is a docket entry number 26, listed in the

15   both the Government's and Doe's charts.  They both consent to

16   unsealing, so it's not something that we need to worry about.

17   But we actually we don't know what that is, it's not on the

18   public docket.  I guess I would just suggest that there may

19   will be substantive documents that don't exist on the docket.

20   There is related, on page nine, docket entry T34, it's a

21   little bit strange.  It doesn't appear on the public record,

22   no one is opposing unsealing, the Government and Doe I think

23   will disagree whether it's a judicial document or not.

24             THE COURT:  Understood.  I think Mr. Norris' comment

25   that they did not take a position on sealing or unsealing

PROCEEDINGS

1    based in large part or exclusively on its of determination

2    about whether a document is judicial or not.  I gather your

3    further point is that there may be some lack of knowledge or

4    ignorance about what a document is based on this somewhat

5    haphazard filing that has been going on or filing practices

6    that have been employed at the Circuit level.  And that's not

7    a criticism, mind you.  But certainly because you've put us on

8    notice about these gaps, I will be sure to try to fill them in

9    because we're probably the only body entity who has

10   semi-perfect knowledge or the most-perfect knowledge of what

11   may be behind these missing entries.

12         If I think there is a real concern about a

13   substantive document that hasn't been disclosed to either

14   side, I will solicit additional briefing or argument as

15   necessary.  Certainly after figuring out whether or not it's

16   something that I can do that with.  Because I, too, am

17   operating under some limitations given the sealing that's

18   happened at the Circuit level.  We'll try to sort that out.

19         Did you answer your question?

20         MR. LANGFORD:  Yes, your Honor.

21         THE COURT:  Mr. Lerner?

22         MR. LERNER:  I think the concern has been expressed

23   by the Court, I want to make sure it's clear.  That First

24   Amendment category analysis doesn't work.  And that the Court

25   has to actually look at the content of the documents to see

PROCEEDINGS

1   what is in them to determine whether they should be unsealed

2   or kept sealed.

3          THE COURT:  Yes.

4          MR. LERNER:  So for example, a document that might

5   have an innocuous title or may appear to be a scheduling

6   order, which may have no title it's not obvious that it's

7   important, but it may well have content that is significant

8   and the public needs to know.

9          THE COURT:  I don't disagree with you on that.  But

10  you realize to a large extent I think the Government has taken

11  the position that those should be unsealed.

12         MR. LERNER:  I am just making my concerns known

13  about categorical analysis based on the title of the document.

14         THE COURT:  Understood, understood.

15         Mr. Kaufman, you've been waiting patiently.  Do you

16  want to make some additional statements?

17         MR. KAUFMAN:  I'm going to take on -- I've been like

18  a dog with a bone on this -- I'm going to take on what I view

19  and what like to believe everyone could agree is a rather

20  simple issue, which is the openness of the motions themselves.

21  I do represent investigative journalists.  I'm sure they're

22  not happy when they can't, literally, I advise them that they

23  could not necessarily safely reveal that this proceeding was

24  going on at the outset and based on the Second Circuit's

25  blanket sealing of even -- I like to tell friends, I won a

PROCEEDINGS

1    motion.  The Second Circuit granted my motion for leave to

2    file on an AP Brief, supporting unsealing, so long as it was

3    filed under seal.  It gets a laugh, maybe they don't

4    understand.

5         We prepared and I don't know your Honor whether you

6    have received it yet, but we tried to send it up to chambers.

7    We served it on everybody.  We have given hard copies, and

8    annotated version of our amended Amicus brief.  No?  It didn't

9    get up there in time.

10        THE COURT:  Did you file it with the Circuit?

11        MR. KAUFMAN:  Did not file it.  I wanted you to have

12   it in advance.  Everyone else has it.  I served it last night.

13   I have not filed.

14        THE COURT:  Neither here nor in the Circuit?

15        MR. KAUFMAN:  Neither here nor in the Circuit.  The

16   amended Amicus brief was granted leave to be filed.  It's

17   these annotations that I prepared between last Thursday's

18   hearing and today.

19        THE COURT:  Okay.

20        MR. KAUFMAN:  The point I'm trying to drive home

21   with those additional annotations, is there is nothing in our

22   motion papers that is subject to sealing.  The Government has

23   conceded that.

24        We now have added totally non-controversial

25   materials, really almost bibliographic.  We've added links to

84
PROCEEDINGS

1  the documents that we are trying to point out have been public

2  about Mr. Doe for a long time.  And we now provide hard copies

3  in an organized fashion, should that be of assistance to the

4  Court.

5          When I was counseling one of my Amici on Friday

6  night who wanted to tweet to his 80,000 followers something

7  about this upcoming hearing, his initial draft of it -- even

8  tweets get vetted by lawyers -- he wanted to include John

9  Doe's name.  I was still uncertain as to whether that would be

10 permissible.  Notwithstanding all of the annotations and

11 citations to all of the evidence starting in 1998 that John

12 Doe has been identified in connection with this case and a lot

13 of other things.  His identity is not unknown.

14         As I was about to advise my client, you should not

15 put the name in, in came Mr. Doe's attorney's redacted,

16 approved, unsealed position paper on this proceeding.  And the

17 first sentence of which was, "I am the attorney for" -- may I

18 say it now?

19         THE COURT:  You don't have to say it.

20         MR. KAUFMAN:  The name of Mr. Doe.

21         THE COURT:  The real name of Mr. Doe.

22         MR. KAUFMAN:  The real name of Mr. Doe.  I think his

23 briefs used to say "now known as" -- the name I won't say.

24 Now he starts with the name and says "formally known as Doe."

25         THE COURT:  It's like Prince.

PROCEEDINGS

1          MR. KAUFMAN:  I said to my -- with trepidation -- I

2     said to my client, you may include the name in describing the

3     subject matter that of an open hearing.  I commend your Honor,

4     we have managed to go two days totally open and the world

5     hasn't come to an end yet.

6          And so I want to renew, and if it can only be your

7     recommendation to the Second Circuit, I want to urge you to

8     recommend that all of the motion papers be unsealed so that we

9     have essentially a public proceeding involving some very

10    important issues, even if there may have to be some exparte

11    gathering in your Honor's chambers or whatever.

12         I guess that's what I have to say.  It's all about

13    the motion papers, so that this is really an open proceeding.

14         THE COURT:  All right.  Thank you very much,

15    Mr. Kaufman.

16         Again, thank you for your patience.

17         THE COURT:  I'll hear from the Government, to the

18    extend that you want to respond to any of the parties'

19    arguments.  Perhaps I should have let you of integrate your

20    arguments into theirs, but I figured you could write down your

21    thoughts.

22         MR. NORRIS:  Yes, thank you, your Honor.

23         I'm going to be pretty limited in my remarks today.

24    I'm going to try to confine what I got to say to the issues

25    specifically related to sealing and to the particular

PROCEEDINGS

1  procedure that your Honor has been appointed to undertake.  I

2  hope that doesn't construe my lack of response with respect to

3  an argument counsel may have made, an agreement of the

4  underlying facts, that any of that argument are correct.

5      After the Intervenors made their application to the

6  Second Circuit back in March and the referral was made or the

7  appointment was made of your Honor, we reviewed all the

8  documents we could get our hands on and considered the facts

9  that we knew and considered new facts that we came to learn

10 that perhaps we hadn't known at the last juncture that we had,

11 briefing, sealing issues.  I think it was Judge Cogan that we

12 briefed those issues before in 2016.  So we under took that

13 process.

14      And as we had done before when faced with an

15 unsealing application and conducting that internal review, we

16 found that the vast, vast majority of what exists can be

17 unsealed.  And so here, the back-of-the-napkin-math here, I

18 think we are, our chart indicates that we believe 80 percent

19 of the documents that we've been able to review thus far and

20 been able to see can be unsealed.  Ninety-three of 115.  Only

21 two we're recommending and asking to be sealed in their

22 entirety.

23      One document we take no position on.  And the rest

24 we're requesting redactions, and in some cases the redactions

25 are exceedingly few.  Some the filings in this case have run

PROCEEDINGS

1    100 to 200 pages.  On some of those documents we're asking

2    words on two or three pages be redacted, that's it.  That

3    characterizes our approach and our general results.

4              As we indicated in our redacted letter, that sets

5    the basis which we believe are applicable to our request to

6    seal or redact.  We think that safety continues to be a basis,

7    as has been found by Judge Glasser, Judge Cogan, and the

8    Second Circuit panel in this case.  We believe that with

9    respect to certain documents safety continues to be a

10   compelling interest to the Government and the defendant.

11             THE COURT:  You make that argument even given the

12   passage of time.

13             MR. NORRIS:  Yes, indeed.  Having taken into account

14   passage of time and other facts, we still make the argument

15   that safety in some instances is still a factor that leads us

16   to conclude, and the Court concludes, sealing is appropriate.

17             THE COURT:  Also taking into account the fact that

18   there had been sort of gradual greater and greater

19   acknowledgment of Mr. Doe's cooperation.

20             MR. NORRIS:  Absolutely.  The point I was trying to

21   make, we've taken into account the world as it exists in 2017,

22   as opposed to at any prior time.  So we tried to incorporate

23   any new information to our attention in the analysis.

24             Safety, we believe integrity of investigations, is

25   still a basis to seal.  We believe that portions of the PSR,

PROCEEDINGS

1    to the extent those are referred to in whole or in part, or

2    arguments are based thereon, should be sealed.  And we believe

3    other decisions of other Courts do continued to be respected.

4            Those are all the categories that was publically

5    identified following the 2013 proceedings before Judge Glasser

6    and the appeal to the Second Circuit.  And those are the

7    categories of documents that Second Circuit affirmed were

8    appropriately taken into account by Judge Glasser.

9            So we think essentially looking at this as law of

10   the case, as taking into account certainly the facts as they

11   may have changed, we still think there are specific documents

12   for those particular bases are still relevant and sealing is

13   still appropriate.

14           With respect to particular documents and the

15   particular bases that we cite, that's the one place where we

16   believe we have to stop.  We don't think we can meaningfully

17   discuss a particular bases as it related to a particular

18   document or pages in a document without instantly undermining

19   the interest we're trying to protect.  Whether your Honor

20   ultimately agrees with us, in a closed forum, we hope we can

21   have that discussion.  To the extent your Honor has any

22   questions, in a closed process, so that we can make the

23   arguments and your Honor can consider them before ruling

24   without jeopardizing underlying interests.

25           THE COURT:  Is it fair to say that the Government

PROCEEDINGS

1    has taken a categorical position with respect to anything

2    contained in the PSR, to the extent that it's actually

3    identified as being in the PSR?  In other words, is the

4    Government's view that if there is a document that says here

5    is what was in the PSR, that you would take the position that

6    that shouldn't be unsealed, that reference?

7             MR. NORRIS:  Yes.  I believe that's the approach

8    we've taken, and that's been taken consistently in connection

9    with prior proceedings.

10            THE COURT:  Okay.

11            MR. NORRIS:  That's all I've got to say.  Fully

12   recognizing there are other issues and other points made by

13   counsel, I'm happy to respond to any questions your Honor has.

14   That covers to my mind what was relevant to the particular

15   decisions your Honor has to make with respect to the documents

16   that should be sealed or redacted.

17            THE COURT:  I gather to the extent I want to find

18   out more particulars about those documents or portions thereof

19   that the Government maintains should still be sealed, you're

20   requesting that the courtroom be closed?

21            MR. NORRIS:  Yes, we are.  In connection with that,

22   following your Honor's order that the Government be prepared

23   to move to close the courtroom at today's proceeding, we

24   obtained the approval to be able to do that.  We filed public

25   notice that we had obtained that approval, and we're so

PROCEEDINGS

1    prepared this morning.  And we also filed under seal an

2    exparte exempt as to counsel for Doe, our application and

3    proposed order in connection therewith.

4         We also, I would just note, in connection with the

5    prior discussion about notice to the public, that I certainly

6    did notice that the calendar for this proceeding today,

7    indicated that an aspect of it will entertain potential motion

8    from the Government with regard to closure.

9         THE COURT:  Thank you.

10        Mr. Wolf, would you like to be heard on behalf of

11   Mr. Doe?

12        MR. WOLF:  Yes, your Honor.  First of all, on behalf

13   of John Doe we join in the Government's position that's been

14   filed in this proceeding.  One, we join in the application for

15   closure as well.  Your Honor, directed that we be in a

16   position to so move, we join in that application.

17        THE COURT:  Okay.

18        MR. WOLF:  And as well I would like to point out a

19   few things.  Your Honor, I'll point out what is in footnote

20   one in the Government's June 9 submission, which says, I'm

21   paraphrasing a little bit, that Mr. Doe has previously been

22   referred to by his true name by the Government and other

23   parties in publicly filed documents, including in the Second

24   Circuit and cites the proceeding.

25        THE COURT:  No one need be skirmish about that

PROCEEDINGS

1  anymore.

2          MR. WOLF:  No.  And the same as Richard Roe, there

3  is no question who that is and that's been public as well.  As

4  well as is his, Mr. Lerner's criminal referral by Judge Cogan

5  twice for criminal investigation in connection with the orders

6  issued in this case, and that criminal investigation by the

7  Department of Justice is still pending as of today.  That's

8  also been reported to the Second Circuit, I think as recently

9  as a few months ago, when we appeared for oral argument in

10  another proceeding with Richard Roe.  In that case it's

11  Frederick Oberlander was the counsel for the appeal.

12          That said, your Honor just briefly, I would point

13  out additional statements that were made by former Attorney

14  General Loretta Lynch, which have been quoted so far in

15  various points.  This will just be short and sweet but to the

16  point, and certainly in line of what Mr. Norris has said on

17  behalf of the Government and the history in this case an the

18  decisions, and the frankly, respectfully, the controlling

19  decisions in this case.

20          So Judge, Ms. Lynch then said, "In addition to Judge

21  Glasser's 2013 ruling, a three-judge panel of the Second

22  Circuit Court of Appeals twice rejected efforts to reconsider

23  the decision to keep certain materials sealed in this case.

24  The judges reviewing Judge Glasser's order concluded that

25  given the, quote, 'extent and gravity of Doe's cooperation,

PROCEEDINGS

1    continued sealing of select materials was appropriate.'  In a

2    separate instance the Court went out of its way to warn the

3    plaintiffs behind the lawsuit to cease any further, quote,

4    'frivolous motions or else risk Court-imposed sanctions.'

5    Finally, just last month the Supreme Court declined to hear

6    any further arguments from the parties behind this lawsuit."

7    That's the end.  Another few statements made in her testimony

8    on February 9, 2015.

9            So it's now three times the Second Circuit, because

10   since February 9, 2015, Judge Cogan in a very comprehensive

11   proceeding in this courthouse, in fact in contempt proceedings

12   against Richard Lerner and Frederick Oberlander, which were

13   public, public courtroom, and those are the proceedings which

14   resulted in the two criminal referrals over several years by

15   Judge Cogan.  Judge Cogan issued his decision, of course going

16   through and I must admit, your Honor, when I saw the initial

17   motion by Forbes Media in this case and other letters, while

18   it was to unseal the Second Circuit docket, I fully expected

19   it would be largely administerial in light of the fact that

20   Judge Cogan dealings with the parties, the Government, and

21   certainly John Doe, we had gone through painstakingly document

22   after document of what was left after Judge Glasser had done

23   the same with the Government and John Doe, and it went up to

24   the Second Circuit of course.  I expected that the largely

25   what was on the Second Circuit docket, although it was sealed,

Rivka Teich CSR, RPR, RMR
Official Court Reporter

PROCEEDINGS

1   was already ordered to be unsealed.  And frankly affirmed by

2   the Second Circuit, and that which wasn't unsealed.  And I'll

3   focus just on the PSR, to be more specific, that would remain

4   sealed.  There would be no access to it, as per what Judge

5   Cogan issued in his decision, which was the latest in a number

6   of decisions.  And again, affirmed just a few months ago by

7   the Second Circuit, affirming Judge Cogan.

8          Respectfully, and your Honor certainly recognizes, I

9   think the limitations or what the Circuit has directed your

10  Honor to do, and we have no doubt that you'll do it well and

11  thoroughly, like it has been done so far.

12          THE COURT:  I appreciate the vote of confidence.

13          MR. WOLF:  That has been ruled on over and over and

14  over again at the District Court level and at the Second

15  Circuit level.  There is nothing that's been brought out in it

16  this record that changes any of that, nothing has been changed

17  legally or factually to affect that.

18          A little color though, is necessary in light of

19  Mr. Roe's position in this proceeding and promoting the First

20  Amendment and how important it is to disseminate this PSR.

21  I'll just go back to the lawsuit, and there was a lawsuit that

22  was filed in 2010 by counsel for a plaintiff that is -- let me

23  just be clear, none of the victims that, quote, have been

24  identified by Mr. Lerner today, that the victims have a right

25  to be here -- so in the lawsuit that they filed in 2010, which

PROCEEDINGS

1    they filed in the Southern district with the PSR attached to

2    it, that precipitated all of the litigation and the contempt

3    litigation and the litigation of sealing and up through Judge

4    Glasser and Judge Cogan, allegations of contempt, the PSR

5    attached to that lawsuit not on behalf of the, quote/unquote,

6    victims that they are talking about today, but on behalf of an

7    employee of a company, Jody Chris was the employee.  The

8    lawsuit -- this is the PSR that Judge Glasser, in the

9    proceeding before him, determined and facts determined, were

10   stolen.  In fact, it was a stolen document from the server of

11   this company.  And Judge Glasser certainly on the record

12   before him maybe statements to that effect, and made

13   statements of the fact that Richard Roe being involved with

14   that wrongdoing.  And on October 18, 2010, in a letter to

15   Doe's counsel, Mr. Roe, who's here today on behalf of the

16   First Amendment, said, "My clients and I simply demand what

17   they are entitled to, one billion dimes."  Later in a

18   footnote, this letter is public record, it's been filed in

19   proceedings in this courthouse it's been filed in the Southern

20   District, it's an available record from the Law Office of

21   Frederick Oberlander from October 18, 2010 to Brian Herman,

22   Esq., who then represented John Doe.

23           In this a footnote on the same page, Mr. Roe then

24   says, "At this time plaintiffs will very favorably consider

25   settling the entirety of all claims, known and unknown, for

PROCEEDINGS

1    the actual damages for $35 million."

2              Again, plaintiffs not being any of the victims that

3    Mr. Lerner said it's very important that they know about this.

4    Okay.

5              Then he goes on to say, "It's the least amount which

6    plaintiffs would be willing to accept for a quick settlement

7    that avoids the dissemination."

8              So then in possession of the PSR, the threat was pay

9    35 million or a billion dimes and no one will get this PSR,

10   public First Amendment or otherwise all we want is the money.

11             Then following it up, less than a month later, about

12   three weeks later, again in a letter that is publicly filed

13   from the law office --

14             MR. LERNER:  -- to the issue of the First Amendment.

15             MR. WOLF:  Can I not be interrupted?

16             THE COURT:  Hang on both of you.  I think to some

17   extent he's addressing the question of whether there is some

18   genuine interest on behalf of the victims who you claimed

19   Mr. Lerner were cheated out of restitution.  I think he's

20   trying to suggest that actually isn't a basis, I guess, for

21   the disclosure.

22             Now, I will say this, Mr. Wolf, the motivations of

23   the parties is irrelevant to the question of whether or not

24   there is a First Amendment right to the public of this

25   information.

PROCEEDINGS

1          MR. WOLF:  I understand.

2          THE COURT:  Let's wrap it up.

3          MR. WOLF:  I will.

4          MR. LERNER:  May I?

5          MR. WOLF:  If I could just --

6          THE COURT:  What do you want to say?

7          MR. LERNER:  May I ask the Court if it's relevant;

8   and if not, please strike Mr. Wolf's comments.  I submit since

9   1215 when the Magna Carta was written, allegations are of no

10  evidentiary value.  And those criminal referrals have come to

11  nothing.

12         THE COURT:  You needn't strike anything.  I'm aware

13  of those referrals as part of history.  I do agree with you

14  that they are not particularly relevant to the issue before

15  me, but they are a matter of public record they are part of

16  the hearing.

17         Mr. Wolf, please do focus on the legal issues that

18  have been raised.

19         MR. WOLF:  I will.  In that second letter

20  Mr. Oberlander says, "Always remember, if I can't settle this

21  in time now, you will have brought this about by your

22  decision.  Taking the tactical nuclear device I filed in the

23  Southern District New York", referring to the PSR, "and

24  enhancing it beyond even what I could have, magnifying its

25  yield to that of a strategic, thermal, nuclear weapon by

Rivka Teich CSR, RPR, RMR
Official Court Reporter

PROCEEDINGS

1    dragging in the Eastern District of New York."

2            THE COURT:  That's enough.

3            Mr. Lerner, please have a seat.

4            MR. WOLF:  The last thing I'll say on the point

5    that's been indicated is a basis for further disclosure of

6    what would otherwise be sealed in accordance with the

7    Government's position in this case.  It's been alleged, in

8    fact they are in attachments, the alleged statements from Mr

9    Sater to the media, the NarcoNews and LA Times articles.  Your

10   Honor could see and read those, I'm sure will read them.

11   There are no statements by Mr. Sater as to La Cosa Nostra or

12   anything at all in that regard.  I point to that specifically,

13   it's a particular focus here.

14           The national security statements are the national

15   security statements as identified.  Loretta Lynch also

16   referred to national security, but he has provided no detailed

17   information at any time.

18           THE COURT:  But the La Cosa Nostra statement came

19   from the Government during oral argument in the Second

20   Circuit.  I don't think there is any dispute that it's out

21   there in the public record in some fashion.  I accept your

22   representation that Mr. Doe isn't the one who put it out there

23   necessarily.

24           MR. WOLF:  My point is a little different.  Not that

25   it's not out there, and so the record is clear, what it is is

PROCEEDINGS

1    Mr. Doe has not added anything to what is already out there

2    that's been identified, generally or in any detail, or further

3    detail, which would be relevant today.  He has not.  There is

4    nothing from John Doe that is in addition to what your Honor

5    cited.  Separate statements are being made about La Cosa

6    Nostra or anything that's been referred to, that's not true.

7    And that's not part of this record.  There is no record of

8    that.

9              THE COURT:  I think the argument, though, is the

10   fact that it's public and no harm, thank God, has befallen

11   him, under the argument that safety is a genuine concern if

12   it's published that he cooperated against the LCN or any other

13   organized crime family.  I think that's one general point that

14   all of the parties who are moving for unsealing are making.

15   I'm not sure the Government necessarily disagreed with that.

16   Certainly the Government itself has acknowledged that he did

17   help with some investigation about LCN members or the families

18   in general.

19              So I think that's the central point, whether it came

20   from Mr. Sater or not, whether he was promoting any further

21   dissemination of that information, I think is beside the

22   point.  I know I just said his name.  I think at this point

23   either reference is fine.  It is a matter of public record.

24             MR. WOLF:  Your Honor, that said, to the extent that

25   anything further would be requested by the Court in that

PROCEEDINGS

1  regard, I could in a closed proceeding or closed forum with

2  the Court address that a little more consistent with the

3  Government's position as has been set forth.

4          I'll point out one other thing with regard to the

5  Second Circuit transcript, that's referred to as the

6  February 14, 2011 transcript.  There is no doubt that's been

7  public since last year.  It became public because in the

8  contempt proceedings that were pending against Richard Lerner

9  and Frederick Oberlander before Judge Cogan, a motion had been

10 made because the criminal investigation by them, which we

11 consented to, to stay that contempt proceeding.  Then it was

12 stayed.

13         At the same time, a 950-page document was filed by

14 Mr. Lerner, which then after it was stayed, also got stayed or

15 nothing went further with it.  In that 950 pages, which I'll

16 submit wasn't carefully reviewed beyond perhaps the first

17 hundred or so, since it was not going to be before the Court,

18 was buried what was then the sealed Second Circuit transcript.

19         And ten days later, which it was then sealed, it was

20 unsealed pursuant to Judge Cogan's standing order if there is

21 no objection.  It's public.  There is no question about it.  I

22 point that out, as your Honor noted, and Judge Cogan noted,

23 about the boot-strapping of Mr. Roe and Mr. Lerner in this

24 matter to put something out that's sealed, then it's in the

25 public domain, then saying it's public, nothing you can do

PROCEEDINGS

1    about it.  That's all.

2              THE COURT:  I understand, thank you.

3              Mr. Langford?

4              MR. LANGFORD:  A couple of points to the last point.

5    It's actually precisely what the Supreme Court held in many

6    different First Amendment contents.  When something is out in

7    the public it cannot be, the genie cannot be put back in the

8    bottle, game is over.

9              Second, just a quick clarification, Mr. Doe referred

10   to purchasing skinner missiles in his statement to NarcoNews.

11   I believe there is a public record, I've not fully flushed out

12   here that links that to activities of the LCN.  That I don't

13   have support before me, but I believe that's part of the

14   public record.

15             I want to make a quick point.  I think the

16   Government and Doe may differ slightly in the way they

17   characterize what is going on here.  I think the Government,

18   very admirably, slowly acknowledged that as more information

19   has been made public, the right can no longer overcome with

20   respect to particular filings.  I think Doe has also made the

21   positions in the chart.  But the idea that this is an

22   administerial proceeding that relies on the finding of two

23   District Judges, the Second Circuit or the Supreme Court in

24   the past I think fundamentally misconstrued the nature of

25   First Amendment rights broadly.  And a lot of jurisprudence

PROCEEDINGS

1    that talks about the idea that depriving people, including the

2    entire public, of a First Amendment right for a single day is

3    a constitutional violation and an ongoing one at that.

4            The Court's determination when it looks at these

5    documents needs to be based on concerns that are real and

6    present now, not concerns that have been present in the past

7    or speculative concerns about the future.  And even if the

8    content the documents may still need to be sealed for one

9    reason or another, the Government is conceding right of access

10   attached to those documents.  There may well come a day that

11   all of this stuff should be public, because there are no

12   longer any compelling interests in keeping it secret.

13           I would just impress upon, I'm sure your Honor

14   understands this well, is very much incumbent on the Court to

15   press the Government in any closed proceeding on the

16   legitimacy of the interest that it asserts.

17           THE COURT:  I agree with you on that.  Thank you,

18   Mr. Langford.

19           I actually have a couple of questions for you,

20   Mr. Lerner.  One is a request, amongst the documents that I

21   have seen is the civil complaint that you filed on behalf of

22   Mr. Roe in the Southern District.  The problem with it is,

23   even the copy that I have was redacted for purposes of filing

24   in the Southern District.  I don't know what is underneath the

25   redactions that were made I think in connection with that

PROCEEDINGS

1    case.  So the only person, I imagine, who has that, I don't

2    think even the Government has that, would be you -- so I'd

3    ask.

4            MR. LERNER:  Are you asking for 10-CV-3959, the

5    original complaint?

6            THE COURT:  Yes, correct.  So if you can provide it

7    under seal and exparte, chances are, though, I'll need to

8    share it with the Government to the extent that they need to

9    take a position on whether or not those original redactions

10   are ones that they think should remain.

11           Let me just say this, I recognize that I don't have

12   the authority to undue something that another Court has

13   necessarily done.  However, the Second Circuit might decide

14   that some of those original redactions are no longer

15   necessary, and so I'm going to look at that issue.  But if

16   you'll send that, again, by close of business tomorrow?

17           MR. LERNER:  Sure.

18           THE COURT:  Can you either provide it to chambers

19   and we'll take care of getting filed, or if you know how to

20   file exparte.

21           MR. LERNER:  To the extent the PSR, I purged the PSR

22   from my computer.  So I don't believe, although the PSR was,

23   portions were annexed to exhibits to the 3959 complaint, I

24   can't provide that obviously.

25           THE COURT:  I'm just interested in the complaint

PROCEEDINGS

1    itself that has redactions.

2              MR. LERNER:  There are several other exhibits which

3    were not controversial.

4              THE COURT:  I'm only asking about the actual

5    complaint which contains those redactions.

6              One more thing before we take a quick break.  I do

7    have another question for you, Mr. Lerner.  There is a

8    document that actually was filed based on a representation of

9    an under seal exparte making a representation of

10   attorney-client privilege on behalf of Mr. Roe.  So the

11   question is whether or not you are moving to unseal even that

12   document?

13             MR. LERNER:  I think the only one I have in mind,

14   there were statements as to which other individuals Mr.Roe

15   spoke with regarding the case.

16             THE COURT:  Yes.

17             MR. LERNER:  Let me consult.

18             THE COURT:  Let's take a short break here for our

19   court reporter's sake.  She's dutifully and laboriously

20   transcribing everything.  So take a few minutes to talk about

21   that.  Come back here in 15 minutes, so 4:25, we'll resume

22   then.

23             (Whereupon, a recess was taken at 4:10  p.m.)

24             THE COURT:  Back on the record now.  I think when we

25   broke, I'm trying to remember, Mr. Lerner, were you going to

PROCEEDINGS

1    look at something else that was filed and make a comment?

2            MR. LERNER:  If it is what I think it is, it's not

3    controversial.  We'll not object.  Just confirm that it is

4    what I think it is.  So how do I go about doing that?

5            THE COURT:  Let's do this, I'm prepared to make a

6    finding to closing the courtroom so I can probe the Government

7    and John Doe further, the requested continued sealing and

8    redactions.  There is also an issue that I want to address

9    with Mr. Roe as well, including this issue that I've just

10   raised about the assertion of attorney-client privilege.  So

11   I'll allow Mr. Roe to remain for the first part of the closed

12   proceedings, so it will be bifurcated in a sense.

13           But I do make the findings that the closure is

14   necessary to protect a compelling interest of the Government

15   and John Doe, and that there is a substantial probability of

16   prejudice or harm if I do not close the courtroom to ascertain

17   additional information that will support or that has been

18   offered to support the continued closure of certain

19   documents -- the continued sealing of certain documents or

20   portions thereof.  I also found that there is no reasonable

21   alternatives to closing the proceedings, because I do need to

22   get the information directly from them.  I don't feel that any

23   other alternative would adequately protect the interests of

24   the Government or John Doe.

25           I mentioned earlier some of the same interests when

PROCEEDINGS

1   I found find factions in various filings was appropriate.

2   Mr. Norris alluded to some of them as well.  Certainly the

3   safety of individuals with whom the Government has been

4   working or that have been implicated in someway in some of

5   these documents, as well as the Government's investigations,

6   as well as the interests in the Government in being able to

7   secure in the future cooperation.  And lastly, although this

8   doesn't necessarily require closure, there is an interest in

9   protecting or abiding by other Court orders and the reasoning

10  behind some of those orders.

11       I also find that the restriction of closing the

12  courtroom for this limited purpose is very narrowly tailored.

13  In fact, I'll note, as Mr. Norris did, that the Government is

14  only seeking continued disclosure as to a very few number of

15  documents out of the entire universe, maybe 20 percent at

16  most.  And even as to those documents, the Government sealing

17  request or continued sealing request is very, very limited, as

18  indicated to some extent by the chart that's been provided to

19  the parties.

20       I do find that this closure for this limited purpose

21  and as to these limited documents, portions of documents is

22  very narrowly tailored.  Lastly that this restriction will

23  protect the threatened interests of the Government and John

24  Doe.

25       I find closure of the courtroom at this time is

PROCEEDINGS

1    appropriate and sealing of the proceeding as to only

2    Mr. Lerner and Mr. Roe initially, along with the Government

3    and John Doe and their legal representations.

4            Then at some point I'll ask Mr. Roe and Lerner to

5    leave as well.  All right.  With that I must excuse everyone

6    else.

7            MR. LERNER:  May I state an objection on the record?

8    That is, Mr. Norris has given oral argument about why there

9    should be closure but he presented no evidence.  And --

10            THE COURT:  Thank you.  I should note for the record

11    that I have reviewed the originally filed exparte submissions

12    and the portions that were redacted, for the reasons I

13    mentioned earlier I think do provide a sufficient basis to

14    find both a compelling interest of the Government and John Doe

15    and the need for closure of the courtroom under the various

16    factors.  Thank you for reminding me.

17            MR. LERNER:  Let me express concern, that is, if

18    there is to be in camera argument or as to the risk to

19    Mr. Doe, I note that he's not here today.  He's not taking the

20    stand about any perceived risks.  We would certainly request

21    and assert the right to cross-examine him about his perceived

22    risks.  Without him being here and testifying, I submit, that

23    there can't be any finding that he actually is at risk.

24            THE COURT:  Let me say this, the reason I disagree

25    with you is that, as may seem obvious to me at least, in order

107

PROCEEDINGS

1    for you to probe that issue you would have to know what the

2    information is that he thinks puts him at risk, which would

3    obviously defeat the whole purpose of trying to decide whether

4    unsealing is appropriate, because in effect that would be the

5    unsealing.  So there is an inherent problem with what you

6    propose.  But based on everything I've seen, it includes the

7    documents at issue, I think it's appropriate not to allow

8    other parties to participate in that and for me to make the

9    determination based on the representations and argument of the

10   Government and Doe, plus my review of the documents

11   themselves.  Continue with your objection.

12            MR. LERNER:  One further point, in December of last

13   year and then again in February, Judge Schofield in the

14   Southern District ruled in connection with the 3959 RICO case,

15   that anyone who knew that John Doe was concealing his

16   conviction at Bay Rock and facilitated it, is guilty of

17   racketeering conspiracy.  She reiterated that in order of

18   February 2017; she reiterated that further in February 2017.

19            The PSR as Mr. Langford recited, says that the

20   probation officer facilitated Mr. Doe's concealment of his

21   conviction.

22            THE COURT:  That's the representation by you and

23   your submission to the Supreme Court.

24            MR. LERNER:  Yes.  And your Honor is accepting

25   representations by the Government as being so, I would ask

PROCEEDINGS

1    that the same courtesy be granted to me.

2              THE COURT:  It's not so much that.  What I'm trying

3    to do is prevent you from revealing actual information.  It's

4    not that I don't trust your representations, I can verify

5    that.  I'm not going to, and the Government hasn't confirmed,

6    that the representation is accurate because that document is

7    still sealed.

8              MR. LERNER:  Well, even if there were Governmental

9    immunity, still that PSR, we submit, in light of Judge

10   Schofield's ruling implicates the Government in the

11   facilitation of John Doe's racketeering.  Therefore, we

12   submit, that it must be unsealed in its entirety because it is

13   of profound importance, it is a document that reveals

14   Governmental misconduct of the highest order.

15             THE COURT:  I understand your order.  Thank you.

16             Mr. Langford.

17             MR. LANGFORD:  I request that your the Court make a

18   transcript of the closed hearing and release a redacted

19   version.  And that I would suggest that as a least restrictive

20   closure of access.

21             Secondly, is it your Honor's intent to reconvene

22   following the closed portion?

23             THE COURT:  No, you're free to go.  I will, as I

24   said before, take under advisement your request about

25   releasing a redacted version of the transcript.  Which will

PROCEEDINGS

1    depend on what is discussed during that closed proceeding and

2    whether or not I think it's possible to release any redacted

3    transcript that would be sensible or convey any information

4    after any appropriate redactions are made.

5         MR. LANGFORD:  Thank you.

6         THE COURT:  Mr. Wolf, did you want to say anything?

7         MR. WOLF:  Briefly in response to what Mr. Lerner

8    just said, and the Southern District record will speak for

9    itself.  But the description of two orders by Judge Schofield

10   and the way it was just described by Mr. Lerner, I'm not going

11   to repeat, is just false.  Judge Schofield made no findings as

12   he just indicated on this record.

13        THE COURT:  Okay.

14        MR. WOLF:  Nor was the issue raised before.

15        THE COURT:  All right.  That's obviously something I

16   can verify.

17        So with that I'm going to have everyone else leave

18   the courtroom except for the Government, Mr. Doe, his lawyers,

19   and Mr. Lerner and Mr. Roe for now.  Thank you everyone.

20        (Whereupon, the remaining proceeding was held

21   in a closed courtrooom.)

                    *    *    *    *    *

22

     I certify that the foregoing is a correct transcript from the

23   record of proceedings in the above-entitled matter.

24

25   Rivka Teich, CSR RPR RMR
     Official Court Reporter