THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| United States of America,<br><br>   *v.*<br><br>John Doe,<br><br>   *v.*<br><br>Richard Roe. | 10-cr-2905<br><br>F.R.A.P. 48<br>Proceeding<br>17-mc-1302 EDNY<br><br>(Chen, Master) |

**Affirmation and Memorandum of Law Submitted in Behalf of Movant / Appellant Frederick M. Oberlander in Support of Reconsideration and Request to Correct the Docket**

Richard E. Lerner, Esq.
**The Law Office of Richard E. Lerner**
122 West 27th Street, 10th Floor
New York, New York 10001
Tel. 917.584.4864
richardlerner@msn.com

Table of Contents

**Table of Authorities**................................................................................iii

I.   **Request to Reconsider I (Not Filing Under Seal)**................................ 1

    A.   Lack of intent must be presumed because there is no evidence to the contrary as the court never served the order on Mr. Oberlander and never even docketed it, and indeed still has not. .................................. 1

    B.   Lack of intent must also be presumed because (i) the filing decision was entirely counsel's; (ii) counsel also lacked intent; and (3) even if counsel had intent it cannot be imputed to Mr. Oberlander. ............ 2

    C.   Lack of intent, inadvertence, or mistake must be assumed for Mr. Oberlander as it has apparently been assumed for others, who each filed publicly, not under seal, or otherwise also went into contempt.... 3

        *1.   Mr. Sater and the government filed their briefs publicly, not under seal, though the docket order of July 11, 2017 as to ECF 32 falsely states that only Mr. Oberlander filed publicly.*................................. 3

        *2.   To illustrate the point, we note that Yale's motion has remained public for four months, despite the "sealing order," yet the court gives Yale a pass (as it should, of course).*......................... 3

        *3.   Mr. Sater (rather his counsel) violated a clear, docketed amended order that he appear at the June 15, 2017 conference: [Edited]* ......... 4

    D.   Lack of intent must also be found, for it is the truth............................ 5

II.  **Request to Reconsider II (Unconstitutional Seal)**.............................. 7

    A.   From a legal standpoint, Mr. Oberlander's brief is indistinguishable from the government's, yet his is sealed while theirs is public............. 7

    B.   The Constitution prohibits this, per se, so the disparate sealing is facially, and thus transparently, invalid. ............................................... 8

1. *A content-based sealing of Mr. Oberlander's brief, or his later motion of July 10, 2017, or Yale's brief, is factually unsupportable.* ............................................................................................. 8

2. *Given their innocuous content, any sealing of Mr. Oberlander's brief or motion, or Yale's brief, while the government's and Mr. Sater's briefs are unsealed, is situationally unsupportable* ............... 8

3. *Sealing, a fortiori to the extent it enjoins dissemination by a party, a fortissimo to the extent it enjoins dissemination by an author, without observing procedural and substantive requirements is invalid per se so is necessarily transparently invalid and vitiates the collateral bar rule.* ........................................................................... 9

**III. Conclusion** ............................................................................... 15

1. *A content-based sealing of Mr. Oberlander's brief, or his later motion of July 10, 2017, or Yale's brief, is factually unsupportable.* ............................................................................................. 8

2. *Given their innocuous content, any sealing of Mr. Oberlander's brief or motion, or Yale's brief, while the government's and Mr. Sater's briefs are unsealed, is situationally unsupportable* ............... 8

3. *Sealing, a fortiori to the extent it enjoins dissemination by a party, a fortissimo to the extent it enjoins dissemination by an author, without observing procedural and substantive requirements is invalid per se so is necessarily transparently invalid and vitiates the collateral bar rule.* .......................................................................... 9

**III. Conclusion** ................................................................................ 15

TABLE OF AUTHORITIES

**Cases**

*Ashcraft v. Conoco, Inc.*, 218 F. 3d 288 (CA4 2000) .................................................. 9

*Colorado River v. United States*, 424 U.S. 800 (1976) ............................................. 9

*In re Contempt*, 12-MC-557 ........................................................................................ 2

*In re Sealing Litig., Reference Nos. 101-140,* 2007 Conn. Super. LEXIS 772 ............ 13

*Lugosch v. Pyramid Co.*, 435 F.3d 110 (CA2 2006) .................................................... 9

*Shane Group v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (CA6 2016) ..... 12

*United States v. Mourad*, 289 F.3d 174 (CA1 2002) ................................................ 10

*United States v. Salameh*, 992 F. 2d 445 (CA2 1993) ............................................. 10

## I. Request to Reconsider I (Not Filing Under Seal)

I respectfully object to the court's docket entry order of July 11, 2017, for its unfair and untrue characterizations of Mr. Oberlander's acts. The entry, as written, may effectively persuade those reading it that Mr. Oberlander willfully contemned an order by not filing ECF 28 and 32 under seal. Reconsideration is warranted, *inter alia*, for the court's evident failure to consider what really happened and because the order states that one basis for issuing it is that all other parties filed under seal, a factual predicate belied by the record and so likely misapprehended by the court.

**A.    Lack of intent must be presumed because there is no evidence to the contrary as the court never served the order on Mr. Oberlander and never even docketed it, and indeed still has not.**

Simply assuming that Mr. Oberlander *intended* to violate a May 10, 2017 order ostensibly requiring filing under seal is unfair, for not only did he do no such thing, and not only does the court have no evidence that he did (for that matter no evidence of what really happened, as it never asked for any), the reality is the *court* never served it on Mr. Oberlander, but only on counsels, and only by email, and the *court* never docketed it. To assume that he, or anyone was "fully aware" of an order never served on him and never visible on the docket is wrongful in all possible ways.

When ECF 28 and 32 were written and filed Mr. Oberlander was *not* aware of the May 10, 2017 order, not only because he had not been served with it (he was an attorney on the docket for all of one day, five weeks after its service, on June 15, 2017, representing one of his clients), not only because he in fact checked the docket for such an order, but also because he asked several times for confirmation that there was no order requiring filing them under seal *and was told that there was not*.

1

> **B.     Lack of intent must also be presumed because (i) the filing decision was entirely counsel's; (ii) counsel also lacked intent; and (3) even if counsel had intent it cannot be imputed to Mr. Oberlander.**

All decisions to not file the brief as to the *Charmer* issue under seal were independently mine, as counsel for Mr. Oberlander. In fact, Mr. Oberlander had inquired whether there was any sealing order applicable to the filing.

First, actually I *did* check the docket several times, but there was no sealing order on it. I did not know or recall that the court had emailed such an order to counsels months before (but not to parties), and it honestly never occurred to me that such an order, if it existed, would be undocketed, as sealing orders must be docketed as a matter of First Amendment law. That emailed order simply and regrettably slipped my mind or evaded my attention because it addressed a motion made by counsel for amici to file a motion under seal, something I wasn't part of.

Second, there were entries on the docket that were inconsistent with there having been such a filing order.

Third, others also publicly filed documents, so were presumably as confused as I. That is, the court may be assured that I acted in good faith to the best of my ability to confirm, even if incorrectly, that there was no sealing order, particularly a sealing order applicable to the filing of requested memoranda on the *Charmer* issue.

But in any event in this context there is no authority whatsoever for trying to impute any willfulness – which again is denied – of counsel onto his client.[1]

---

[1] Judge Cogan previously ruled in the related motion for contempt brought by Mr. Sater against Mr. Oberlander's client Jody Kriss that a client could not be presumed to know the contents of an order directed to his attorney, thus willfulness by the client could not be presumed, and to hold otherwise – *viz.* that the client is presumed to know – would be "dangerous." As Judge Cogan stated, "To hold so here would be to travel a dangerous path, particularly concerning legal representation and contingency arrangements, whereby a client could be vicariously liable for the misconduct of his

2

   C.   **Lack of intent, inadvertence, or mistake must be assumed for Mr. Oberlander as it has apparently been assumed for others, who each filed publicly, not under seal, or otherwise also went into contempt.**

1.   *Mr. Sater and the government filed their briefs <u>publicly, not under seal</u>, though the docket order of July 11, 2017 as to ECF 32 <u>falsely</u> states that only Mr. Oberlander filed publicly.*

The docket entry of July 11, 2017 is *false* in its statement that all the other parties filed under seal. *Mr. Sater and the government did not.*

The docket reflects that later the same day that I filed ECF 28 publicly (on June 24, 2017), Mr. Sater filed publicly, ECF 30, and the government filed publicly, ECF 29, both thus filing *not* under seal, and in the government's case reflects that it was filed just a few moments after Mr. Oberlander's filing. Surely, at least the government was not relying on Mr. Oberlander, and playing follow the leader.

Yet the court accuses them of *nothing*, not only ignoring this reality but misstating the record to record that all other parties filed under seal when obviously they did not, a reality rendered all the more significant by the fact that while Mr. Oberlander's public filings were placed entirely under seal, the government's and Mr. Sater's filings were and remain entirely public, even though, as shown *post*, the government's filings are significantly duplicative of Mr. Oberlander's.

2.   *To illustrate the point, we note that Yale's motion has remained public for four months, despite the "sealing order," yet the court gives Yale a pass (as it should, of course).*

*To illustrate the one-sidedness:* The court may recall that Mr. Oberlander demonstrated on June 15, 2017 [Transcript of hearing, p.41-42], that though Yale's motion in behalf of Forbes Media LLC and Richard Behar was ordered under seal

---

attorney without any knowledge or authorization of that misconduct." *In re Contempt*, 12-MC-557, Order of January 8, 2016, Docket Entry 152. (Made public by Judge Cogan at 16-mc-706, DE 152).

3

by the Second Circuit in April 2010, ECF 406, it has been and remains publicly available by Yale, which is hosting it on its servers, available to anyone in the world.

The court seems unconcerned. Perhaps that is because everything in there is benign, like ECF 28 and 32. Still it is open ongoing "contempt" of a sealing order, if a sealing order is a prior restraint against dissemination.

3.  *Mr. Sater (rather his counsel) violated a clear, <u>docketed</u> amended order that he appear at the June 15, 2017 conference: [Edited]*

| | |
|---|---|
| 06/12/17 | ***ORDER***: ***The Court also set a hearing on the motion for June 15, 2017, at 10:30 a.m., in which the United States and Doe are required to participate.*** |
| 06/13/17 | ***AMENDED ORDER***: The hearing re the Movants' and Amicus Curiae's motions to unseal documents is adjourned to June 19, 2017 at 1:00 p.m. in Courtroom 4F North. ***The hearing re the sealing of that proceeding is still scheduled for June 15, 2017 at 10:00 a.m. in Courtroom 4F North.*** |

*A further illustration of the one-sidedness:* Counsel's explanation that he was confused was accepted [Transcript of June 19, 2017 hearing, p.4]:

> MR. WOLF: [O]ur apologies as well for not appearing on Thursday before the Court. Our confusion with the bifurcated order and everything got pushed to Monday, today.[2]
>
> THE COURT: [U]nderstood…The scheduling was a little bit last minute, so I understand that you might have been confused.

One may infer his violation was inadvertent. He should not be assumed to have suicidally violated an order. But in ECF 32 I said *under penalty of perjury* that ECF 28 wasn't filed under seal, because to my knowledge no order required it. I am

---

[2] In a June 16 letter, ECF-14, he says, "[D]ue to inadvertent scheduling confusion by our office, our internal calendar rescheduled both related hearings in this matter for Monday June 19, 2017 after the Court's June 13, 2017 amended order was received. As a result, we did not appear at yesterday's hearing and regret any inconvenience this may have caused the Court or the parties."

4

not suicidal either and wouldn't have sworn had I recalled the order that had been emailed to me. *I should receive the same inference of inadvertence.*

Perhaps Mr. Wolf read his email message on his BlackBerry-type device, just as, perhaps, I read the May 10, 2017 email on mine, and lost track of it. That is why docketing is so important, especially docketing of court orders.

**D.    Lack of intent must also be found, for it is the truth.**

My email records show that on May 10, 2017, my server captured an email from the court containing an order sent to counsels, *but not clients*, addressing a motion that had been made by counsel for the amici to file their motion papers under seal and requesting their unsealing. I honestly have no recollection of having read it, but cannot disprove or swear that I didn't, though I can state with certainty and swear that if I did I eventually forgot it as I had no intention of filing papers in the near term since, as the appellant, my client was already a party to the proceeding.

Consequently, when I did first file papers, six weeks after that email in mid-June, if I had indeed read it, I had forgotten about it. But I assure the court that I checked the docket, *and that May 10, 2017 order was not docketed then and still is not.*

Moreover, by that time the court had vitiated that order by allowing public filings on this docket, with such redactions as it itself, without consultation with the panel, but on notice to the filer with an opportunity to be heard, found appropriate.

For example, before Mr. Oberlander briefly appeared as counsel for Mr. Cohen, his client in a Court of Claims matter, for one day, June 15, 2017, he filed a notice of appearance and a request for judicial notice per FRE 201, and the court discussed that filing with him in court, but did not criticize him for filing it openly (which again he did because when he checked the docket that day there was none).

5

And significantly, appellee United States' ECF 29, and appellee Sater's ECF 30, were filed at about the same time as my brief, ECF 28, on July 24, and the evidence is incontrovertible that each counsel uploaded their papers to ECF publicly, and in fact they've remained public to date without anyone's registering an objection, not even the court.

On such a record, it seems perfectly understandable – because it's true – that anyone could be confused whether filing under seal was always required. Surely, the government and Mr. Sater would concur, given their public filings.

That leaves unexplained why, when Mr. Oberlander filed his papers, ECF 28, on the very same day, June 24, in response to the very same solicitation for briefing on the *Charmer* issue, in support of unsealing the PSR, uploading his papers to ECF publicly the very same way as did Sater and the government, within a week only ECF 28 was put under seal by the court, without prior notice or comment, much less record findings capable of review as would suffice to demonstrate a compelling need for sealing.

Quite disturbingly, it is impossible to believe it's purely a matter of the respective content of the government's papers and the papers submitted in behalf of Mr. Oberlander.

## II. Request to Reconsider II (Unconstitutional Seal)

Reconsideration is warranted *inter alia* for the presence of new facts, *infra*.

### A. From a legal standpoint, Mr. Oberlander's brief is indistinguishable from the government's, yet his is sealed while theirs is public.

Both briefs begin with a summary of the argument in Yale's brief, and they are so closely aligned they might have been written by the same person:

| Mr. Oberlander's Brief, ECF 28 | The Government's Brief, ECF 29 |
|---|---|
| Yale, in its brief for Intervenors, first argues that *Charmer* was never good law as it is nonsense to say that a PSR is a "non-judicial document" since, as a sentencing aid in its "home" criminal case it is a document plainly "relevant to the performance of the judicial function and useful in the judicial process." Yale Br. n.8, ECF 27. | In their subsequent memorandum of law, however, the intervenors make clear that they simply fundamentally "disagree with the Second Circuit's conclusion in *Charmer*" and instead believe that PSRs are judicial documents. See Intervenors Mem. of Law at 11 n.8, Dkt. 27, June 22, 2017 (adding that the Court "need not reach this point in deciding the specific issue presently before it"). |
| But, Yale says, the court need not reach the issue as, regardless whether a PSR is always a judicial document per se, it is in the context of this case as it's a juridical MacGuffin, the object about which the plot of this case revolves; Yale might add that the PSR is also a judicial document in respect of the Supreme Court proceedings. Yale then leaves unbriefed what Appellant presumes is its *sub silentio* believe that the court should then apply a regular unsealing process and requisite access test. | Interestingly, the intervenors concede that *Charmer* holds that "PSRs in ordinary criminal prosecutions are non-judicial documents" and, even when "incorporated into criminal appendices on appeal, they may at least arguably retain their non-judicial status on appeal, too -- in ordinary application. See Intervenors Mem. of Law at 11, Dkt. No. 27, June 22, 2017. |

The rest is also the same from a First Amendment standpoint, with legal argument and review of prior cases in related matters, the government's devoted to EDNY, SDNY, and Second Circuit cases, and Mr. Oberlander's devoted to the Supreme Court case. There is no constitutional basis to seal one and not the other.

**B.     The Constitution prohibits this, *per se,* so the disparate sealing is facially, and thus transparently, invalid.**

**1.     *A content-based sealing of Mr. Oberlander's brief, or his later motion of July 10, 2017, or Yale's brief, is <u>factually</u> unsupportable.***

Intervenors *Forbes* and Mr. Behar, by counsel, filed a brief on the *Charmer* issue in support of unsealing the PSR, ECF 27, asking the court to unseal it, yet a month has passed, and the court has done nothing to unseal, though it is pure legal argument of no possible danger to anyone.

Mr. Oberlander's brief on the same *Charmer* issue – where it isn't virtually identical to the government's so to that degree is un-sealable as the government's has now been public for a month – contains nothing of any conceivable danger, but rather is largely concerned with highly public proceedings in the Supreme Court as well as the highly public (in this court) fraud of Mr. Wolf as to the issue of whether the Supreme Court allowed the information from the PSR to go public, which is, of course, quite germane to the *Charmer* issue.

**2.     *Given their innocuous content, any sealing of Mr. Oberlander's brief or motion, or Yale's brief, while the government's and Mr. Sater's briefs are unsealed, is <u>situationally</u> unsupportable***

A F.R.A.P. 48 referral to a district court judge to serve as a special master does or does not, impliedly or expressly, convey the power to seal (or not to seal) the proceedings. It is a binary-valued question.

But it is no kind of question at all whether, once the court decided it *had* the power to seal or unseal what's on this docket, and effectuated that decision by electing to seal or redact some things but not others, it obligated itself to conform its decisions to the requirements of the First and Fifth Amendments.

8

There is no authority for a court to decide that it will randomly select one document to analyze for allowing public access *vel non* but not another. That is an abdication of its virtually unflagging responsibility to take up and decide such matters, prohibited by precedent. *Lugosch v. Pyramid Co.*, 435 F.3d 110 (CA2 2006); *Colorado River v. United States*, 424 U.S. 800 (1976).

Even if it not random, but the court determined to pick and choose, it self-evidently could not do so based only on content, or only on its author. That would be a constitutionally prohibited, non-viewpoint neutral First Amendment violation. Some things are self-evident. For a court to willfully and intentionally adjudicate public access to one document, unsealing what it must, but not to its opposing document, leaving it sealed, creates a fundamental miscarriage, again abdication of its First and Fifth Amendment duty to take up and decide without prejudice what it must, thus deliberately presenting a one-sided, distorted docket to the public.

Like the docket we have here. Your honor, why is the public allowed to see only arguments for the PSR's continued sealing but not its unsealing, and allowed only to infer from the invective on the transcript that counsel or Mr. Oberlander, or both, defrauded the Supreme Court when the only fraud was by Mr. Wolf? Why have you purported to criminalize, without explanation, telling them the truth?

3.  ***Sealing, a fortiori to the extent it enjoins dissemination by a party, a fortissimo to the extent it enjoins dissemination by an author, without observing procedural and substantive requirements is invalid per se so is necessarily transparently invalid and vitiates the collateral bar rule.***

In *Ashcraft v. Conoco, Inc.*, 218 F. 3d 288 (CA4 2000), the Fourth Circuit held that a court that seals a document without observing requisite notice and other procedural and required evidentiary substantive process has sealed invalidly *per se*.

9

Forgetting for now that despite Mr. Oberlander's request to the contrary (*see* ECF 22, and Transcript of June 15, 2017, p.6 et seq.) this court is unwilling to issue precise and exacting decretal language to precisely and exactly define what its sealing orders precisely and exactly mean and to whom are they precisely and exactly directed, see Transcript of June 15, 2017 p. 25-26, for its discussion of violating the "spirit" of orders as opposed to their language, we are entitled to presume from the court's comments on that record on June 15, 2017, that they may be the basis for an attempt to enforce them against us as prior restraints on the dissemination of information filed under seal, at least to the extent that the fact of its filing here is disseminated when it is not otherwise discernible.

As noted in prior papers, the Second Circuit has held that any attempt to gag a lawyer, let alone a party, in a case from extra-judicial speech triggers full prior restraint due process. *United States v. Salameh*, 992 F. 2d 445 (CA2 1993).

Accordingly, to the extent the sealing means, *ceteris paribus*, that we cannot tell the world what's going on here, what's under seal, why (or rather, why it is that the court has declined to state why), there is a constitutional violation, and with it a manifest issue of *transparent invalidity* as an exception to the *collateral bar rule*.

Interestingly, this question -- Where a court order restricting a fundamental right has been issued without requisite procedural and substantive process, is that order transparently invalid? – has been addressed at the appellate level. In *United States v. Mourad*, 289 F.3d 174 (CA1 2002) the First Circuit answered, *yes*.[3]

---

[3] The collateral bar rule provides that "a party may not violate an order and raise the issue of its unconstitutionality collaterally as a defense in the criminal contempt proceeding." *In re Providence Journal Co.*, 820 F.2d 1342 (CA1 1986), 820 F.2d 1354 (CA1 1987). The appropriate method to challenge a court order is to petition to have it vacated or amended." *Id.* The rationale for this is "to protect the authority of the courts when they address close questions and to create a strong

The answer *has* to be yes, as otherwise a federal judge would have the power through not the right to criminalize any speech, even that which is critical of him or her, without regard to or bothering at all with substantive or procedural due process.

Transparent invalidity defenses ordinarily require attempts at emergency or expedited review. Hence this filing. And on the issue of whether the court's sealing implicates fundamental rights – which we believe is obvious – we ask the court to notice recent news reports, appearing for the first time on or about Thursday, July 20, 2017, well after the July 11, 2017 order, that Special Prosecutor Mueller is investigating Trump's ties to Sater and Bayrock in, *inter alia*, construction of Trump SoHo, as well as the fact that on July 14, 2017 members of Congress submitted a bipartisan "Resolution of Inquiry," to obtain information about certain

---

incentive for parties to follow the orderly process of law." Id. at 1347. In short, "no man can be judge in his own case." *Walker v. City of Birmingham*, 388 U.S. 307, 320 (1967) (petitioners, deliberately violating injunction without first attempting to dissolve it properly convicted of contempt).

Although Mourad acknowledges the general application of the rule, he contends that an exception for "transparently invalid" orders prevents its application…If an order is "transparently invalid," a party may challenge its validity or constitutionality as a defense in a criminal contempt proceeding. 820 F.2d at 1347-48. When an order is clearly invalid, the rationale for the collateral bar rule dissolves because "in that instance the court is acting so far in excess of its authority that it has no right to expect compliance and no interest is protected by requiring compliance." Id. at 1347.

Mourad points to…the lack of procedural due process. He notes that, although a court has the power to enjoin "a party from filing and processing frivolous and vexations lawsuits," any such injunction must be narrowly tailored so as not to offend the individual's right of access to the courts. *United States v. Castro*, 775 F.2d 399, 408, 410 (1st Cir. 1984) (per curiam).

Under our precedent, an order should be considered transparently invalid only if "the court reviewing the order finds the order to have had [no] pretense to validity at the time it was issued." *Providence*, 820 F.2d at 1347.

Mourad…bases his claim of transparent invalidity on the lack of due process because no notice or hearing was provided prior to the order's issuance. ***Although a denial of meaningful access to the courts may constitute deprivation of a life, liberty, or property interest, thereby triggering due process protections, see Rogan v. City of Boston, 267 F.3d 24, 28 (CA1 2001), that is not the situation presented here***. The appellant was only barred from entering the eleventh floor of the O'Neill building. Although this did prevent access to the clerk's office, Mourad was still able to file documents with the court via mail or hand delivery to the guards at the entrance to the floor. ***The order limited only his ability to be present in the bankruptcy court; it did not deny him meaningful access to the court. Thus due process protections, such as notice and a hearing, were never triggered***.

11

Trump associates, including Felix Sater and Bayrock. See https://democrats-financialservices.house.gov/uploadedfiles/roi_01_xml_-_07.14.2017.pdf.

Mr. Oberlander has in prior papers explained why the Eastern District "owns" Mr. Sater and can expect to have to answer for it.[4]

It should suffice in closing to note the recent Sixth Circuit case, *Shane Group v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (CA6 2016), wherein the court vacated a district court's orders sealing "most of the parties' substantive filings" and approving a class settlement in a price-fixing suit against an insurer. In vacating the sealing order the court noted that the "obligation to explain the basis for sealing court records is independent of whether anyone objects to it," that courts must "set forth specific findings and conclusions" to justify sealing, and that sealing must be "narrowly tailored" to a "compelling reason" offered, none of which had occurred.

---

[4] As Judge Korman describes the district in *U.S. v. Scarpa*, 155 F.Supp.3d 234 (2016):

"The U.S. Attorney for the Eastern District repeatedly, in the ordinary course, accepts cooperation from defendants who are guilty of the most serious criminal conduct and who have lied in the course of their cooperation.

[I]n one case…the U.S. Attorney submitted…a 5K1.1 motion on a cooperator's behalf notwithstanding that…during final preparation for the cooperator's trial testimony against a defendant, the cooperator "informed the government for the first time that he had been involved in a homicide." In the…5K1.1 letter, the U.S. Attorney wrote, "[a]s a result, the government was unable to call [the cooperator] to testify and the defendant ... was acquitted."

The cooperator also informed the U.S. Attorney that an individual named Pedro had killed a person named Robles, but the cooperator maintained he believed at the time that Robles was only to be robbed, not killed, and that he learned of the murder for the first time when one of the killers arrived at his house with the body. Nevertheless, the cooperator was permitted to plead guilty to this murder and continue cooperating. He thereafter admitted, contrary to his prior testimony, that he (1) had conspired with others to rob and murder Robles; (2) had taken the lead in cutting up the body; and (3) had said that a co-conspirator was not aware of the homicide prior to its occurrence when in fact that individual had authorized it. The foregoing notwithstanding… the U.S. Attorney continued to utilize the cooperator and made a…5K1.1 motion on his behalf. *US v. Omura,* 99-cr-00095 (ERK) (E.D.N.Y.2006).

12

But significantly, the Sixth Circuit also vacated the class settlement, because the secrecy brought about by the invalid sealing prohibited unnamed class members, and members of the public, from viewing the proposed settlement, thus prevented them from understanding and intervening, if they wished.

Mr. Oberlander thus respectfully asks this court, at what point will the courts – viz. the EDNY and the Second Circuit – concede that *they* have become the story, that not only is the story now, What did Trump know about Sater's crimes at Bayrock and when did he know it; it is also, How and why did the Eastern District facilitate those crimes through the use of secrecy and threats against those who would reveal the truth; and, Why have the EDNY and the Second Circuit acted as they have, with such secrecy, and with such disdain – or rather, *contempt* – for one who wishes to reveal prosecutorial and judicial misconduct, even after the U.S. Supreme Court has given him their blessing to speak?

Mr. Oberlander reminds the court that in *In re Sealing Litig., Reference Nos. 101-140,* 2007 Conn. Super. LEXIS 772, *18, Judge Beach observed [Emph. Add.]

> There is a presumption of openness and transparency; the public has a presumptive right to know what the courts are doing…*This presumption is buttressed by an additional factor…some have called into question the integrity of the judicial branch and have suggested that sealing orders may have been motivated by unseemly factors. Public confidence in the integrity of the judicial branch is essential to its functioning in a free society. Public confidence, in the circumstances of these cases, is a factor reinforcing the presumption of public access.*

Public confidence in the integrity of the process in this courtroom is in issue. That's why the media have stampeded into this court to find out what has been going on for almost two decades. Yet Mr. Oberlander or counsel or Yale can go to

13

jail if they tell anyone that *the court has hidden all argument in favor of unsealing the PSR and all proof that the Supreme Court has in public filings anyone can read in the National Archivies years ago mooted the issue by finding maximum public access compelled to further the ends of justice*?

The court and its actions have thus become their own story, demanding their immediate unsealing and ungagging.

jail if they tell anyone that *the court has hidden all argument in favor of unsealing the PSR and all proof that the Supreme Court has in public filings anyone can read in the National Archivies years ago mooted the issue by finding maximum public access compelled to further the ends of justice*?

The court and its actions have thus become their own story, demanding their immediate unsealing and ungagging.

### III. Conclusion

Wherefore the above, Mr. Oberlander pleads this court to:

*First*, unseal this motion, and ECF 27, 28, and 32, because they are not lawfully under seal;

*Second,* as the alternate minimum provide a statement of reasons satisfying First Amendment requirements as to why any of these items must remain sealed in whole or in party while the government's and Mr. Sater's filings need not;

*Third*, to correct the docket to remove the statement that the other parties, but not Mr. "Roe," filed under seal, and remove any implication that any violation of that May 10, 2017 order was willful, and restore that order to the docket;

*Fourth*, if such be so, to correct the docket to reflect that either a further extension was granted or that the court has filed its report with the panesl; and

*Finally*, to award such other relief as may be just and proper in the court's own discretion.

***

All facts above are stated under penalty of perjury, per 28 U.S.C. § 1746.

Dated: July 25, 2017
New York, New York

Respectfully submitted,

/s/ Richard E. Lerner, Esq.
Attorney for "Richard Roe"
**The Law Office of Richard E. Lerner**
122 West27th Street, 10th Floor
New York, New York 10001
Tel. 917.584.4864
Fax. 347.824.2006
richardlerner@msn.com