# THE UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA

*vs.*

JOHN DOE *AKA* FELIX SATER

*vs.*

RICHARD ROE *AKA* FREDERICK OBERLANDER

**10-CR-2905**

FRAP 48
PROCEEDING
17-MC-1302 EDNY


(CHEN, MASTER)

## BRIEF OF THE APPELLANT
## FREDERICK M. OBERLANDER

### IN SUPPORT OF HIS REQUEST FOR THE PUBLIC DISCLOSURE OF
### FELIX SATER'S 2004 PSR PURSUANT TO

*UNITED STATES v. CHARMER INDUS., INC.* 711 F.2D 1164 (CA2 1983)
AND
*RICHARD ROE vs. UNITED STATES*, S.CT. 11M122, 12-112 (2012)

RICHARD E. LERNER, ESQ.
**THE LAW OFFICE OF RICHARD E. LERNER**
TEL. 917.584.4864

# CONTENTS

I.   **INTRODUCTION**.................................................................... 1

   A.   **Yale Correctly Argues That, at Least in the Context of This case, Charmer Does not Apply Because the PSR Is not a Non-Judicial document, but a Judicial One** ........................................ 1

   B.   **Appellant Agrees, but Notes the Entire Question, Even Through the Access Analysis, Was Preclusively Decided in Favor of Disclosure by a 2012 Ruling of the Supreme Court, Which Has Set Disclosure as the Law of the Case** ...................... 2

   C.   **In 2012, When the Issue Was Entirely the Suggestion of Misconduct by the Government, the Courts, or Sater, not Trump's Complicity in it, the Supreme Court made PSR Access Law of the Case, so in 2017, When the Issue is Trump's Complicity with Sater and Its Connection to Russian Organized Crime, with What's Been Learned Since 2012 About the Misconduct the PSR Suggests, We Can Be More Confident That the PSR Must Be Disclosed to Meet the Ends of Justice So the People May Decide If Their Government Knew of or Facilitated Racketeering Conspiracy Between Trump and Russian Organized Crime** ........................................ 4

II.  **CHARMER RECONSIDERED** .......................................... 6

   A.   **Yale Is Correct, Charmer Was Wrongly Decided, For a PSR Is Rather Obviously a Judicial Document, Though Yale Perhaps Did not Take the Point Far Enough.** .......................................... 6

      1.   Charmer, perhaps for good reason, did not apply the First Amendment. This court must not repeat the mistake (if it was a mistake at all). ................................................. 6

   B.   **Nevertheless, Charmer is what it is, and as Yale says this court need not reach the issue of whether a PSR is a judicial document per se, as surely it is one in this case.** .......................... 7

1.   Charmer expressly allows a court to release a PSR to the public where, after balancing the competing interests, the court finds that disclosure is compelled to meet the ends of justice, as not only is the case here but as has already been held to be the case here by the Supreme Court. ......................... 7

III.  ACCESS TO SATER'S PSR IS REQUIRED TO MEET THE ENDS OF JUSTICE BECAUSE THE SUPREME COURT, RESPONDING TO SWORN DECLARATION IN SUPPORT OF MOTIONS SERVED ON ALL PARITES EXPRESSLY ASKING TO PUBLICIZE PSR CONTENT, PREVIOUSLY AND PRECLUSIVELY FOUND A PUBLIC INTEREST IN SEEING SIGNIFICANT PSR CONTENT BY APPROVING MAXIMUM PUBLIC ACCESS VIA PUBLIC DISCLOSURE OF MR. OBERLANDER'S PETITION FOR CERTIORARI. .......................................................... 9

A.   To Begin, the Problem Would not Have Occurred but for the Panel's Impedance of the Cert Petition Process. ......................... 9

1.   Counsel filed that motion, which expressly explained the panel's secrecy order, and asked that Court to vitiate it by allowing a redacted version to be made public with quotations from to-date "forbidden" material still supposedly under seal, expressly including the significant parts of the PSR. ........................................................................ 10

2.   As the Solicitor General declined to participate, counsel worked directly with Atkins to ensure the redactions complied with the Court's order. ................................................ 11

3.   The court, and everyone at the sidebar, are percipient witnesses to Mr. Wolf's deceit, fraud, contempt, and obstruction. ................................................................................. 12

B.   Putting Aside the Fact That the Supreme Court Made the Issue Moot as Maximum PSR Access Is Law of the Case, Access to the PSR is required to meet the ends of justice by Developments Occurring Since Its 2012 Ruling ......................... 14

1.    The arguments which the Supreme Court found compelling enough to order maximum PSR access to meet the ends of justice. See Exh. B....................................................................... 14

2.    The public has a critical need to know whether counsel or Mr. Wolf has defiled this court, because if Mr. Wolf has then the entirety of the closed proceedings in which he participated and material under redaction which he submitted are irreparably tainted and if not subject to disclosure and verification are, fairly and objectively seen as sufficiently probative of taint by Caperton standards, it creates structural Fifth Amendment error. ................................ 18

3.    The fact that the information is found in the redacted petition for certiorari does not negate the need to release the actual PSR; it enhances it...................................................... 20

4.    Finally, the information learned about Sater and Trump since 2012, if even necessary for consideration given the Supreme Court's ruling, makes disclosure of every shred of information everywhere compelling because of the implication of Trump's involvement in racketeering. ................ 21

## Cases

*Abelman v. Booth* 62 U.S. 506 (1858) ...................................................................... 19

*Caperton v. A. T. Massey Coal Co.,* 556 U.S. 868 (2009)........................................... 19

*Gambale v. Deutsche Bank AG*, 377 F.ed 133 (CA2 2004)...................................... 20

*In re Simons*, 567 F.3d 800 (CA 6 2009)................................................................. 23

*Kriss v. Bayrock*, 10-CV-3959 (SDNY) .................................................................... 22

*Richmond Newspapers v. Virgnia*, 448 U.S. 555 (1980) ........................................... 7

*United States v. Charmer Indus., Inc.*, 711 F.2d 1164 (CA2 1983) ........................... 1

*United States v. Watkins*, 623 F.Supp.2d 514 (S.D.N.Y.2009) ................................. 7

## Statutes

18 U.S.C. § 3771 ...................................................................................................... 16

28 U.S.C. § 1746 ...................................................................................................... 13

## Other Authorities

N.Y. Rules of PRof. Cond. 8.3 ................................................................................ 11

## I.   INTRODUCTION

The court has sought briefing on how any public right to access Sater's 2004 PSR, sealed on this docket, is affected by *United States v. Charmer Indus., Inc.*, 711 F.2d 1164 (CA2 1983)*,* which holds that a PSR *at least in the criminal case in which it issues* is a kind of, or perhaps *sui generis*, "non-judicial" document access to which through the courts requires showing that it is compelled to further the ends of justice.

A responsive brief should address, first, whether with the passage of time (it has been a generation since it issued) *Charmer* is still good law (if it ever was), and if it is, or is not but the panel doesn't seek or get en banc review (assuming it follows horizontal stare decisis for published decisions), then second, how it applies here.

### A.   YALE CORRECTLY ARGUES THAT, AT LEAST IN THE CONTEXT OF THIS CASE, *CHARMER* DOES NOT APPLY BECAUSE THE PSR IS NOT A NON-JUDICIAL DOCUMENT, BUT A JUDICIAL ONE

Yale, in its brief for Intervenors, first argues that *Charmer* was never good law as it is nonsense to say that a PSR is a "non-judicial document" since, as a sentencing aid in its "home" criminal case it is  a document plainly "relevant to the performance of the judicial function and useful in the judicial process." Yale Br. n.8, ECF 27.

But, Yale says, the court need not reach the issue as, regardless whether a PSR is *always* a judicial document *per se*, it is in the context of *this* case as it's a juridical MacGuffin, the object about which the plot of *this* case revolves; Yale might add tha the PSR is also a judicial document in respect of the Supreme Court proceedings.

Yale then leaves unbriefed what Appellant presumes is its *sub silentio* believe that the court should then apply a regular unsealing process and requisite access test.

1

**B.** **A**PPELLANT **A**GREES, BUT **N**OTES THE **E**NTIRE **Q**UESTION, **E**VEN **T**HROUGH THE **A**CCESS **A**NALYSIS, **W**AS *PRECLUSIVELY* **D**ECIDED IN **F**AVOR OF **D**ISCLOSURE BY A **2012** **R**ULING OF THE **S**UPREME **C**OURT, **W**HICH **H**AS **S**ET **D**ISCLOSURE AS THE **L**AW OF THE **C**ASE

Starting in 2003, when he acquired what would become a majority interest in, and control of, Bayrock, a real estate firm, Sater, even though awaiting sentencing for a 1998 RICO conviction and so supervised by Probation Office, brazenly ran the firm through fraud, hiding his ownership and conviction from lenders and partners.

In 2010 Mr. Oberlander, representing Sater's disaffected partners, received, unsolicited, a copy of a PSR made for Sater's 2004 sentencing (later put off to 2009). In it, █████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

The implications were clear: █████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████

Sater ran for help to the judge who had heard his criminal case, who, though admitting (1) he hadn't issued orders binding Mr. Oberlander, or any sealing orders; and (2) sealing orders are directed only to court personnel; permanently enjoined dissemination of the PSR contents, relying on *Charmer* to hold a PSR exempt from First

2

Amendment prior restraint law. In 2011, the Second Circuit upheld the injunction, though it simultaneously held it had no jurisdiction to fully consider the issue.

In 2012, Mr. Oberlander moved the Supreme Court to vitiate that order by allowing him to quote that PSR content in a publicly available redacted version of the petition for writ of certiorari he had filed earlier. Mr. Oberlander *expressly* argued that it didn't matter whether that Court chose to apply First Amendment access analysis, common law access analysis, or any other access analysis, the result would be the same: disclosure is compelled, because the public need for it is insurmountable; or, as Mr. Oberlander – again, *expressly* argued, *expressly* quoting the language of Charmer to just this end – *maximum public access to the PSR is compelled to meet the ends of justice*.

Mr. Oberlander argued that such access to the PSR was compelled so that, considering its strong suggestion of private, government, and judicial misconduct, in the tradition of open democratic government the *people* might decide for themselves whether their government knew of, indeed facilitated, Sater's ongoing racketeering.

That motion, *made under penalty of perjury*, was served on Sater and the government and made public in redacted form at the Court. It *expressly* seeks to disclose PSR content. When granted, the Court ordered Mr. Oberlander to submit proposed redactions for review which were analyzed by the Court for weeks. The Solicitor General was offered, but declined, a chance to participate in the process. In July, 2012 the Court gave its approval and made the documents publicly available at its clerk's office.

By doing so, the Court made this law of the case: *Whether analyzed by judicial document access law or Charmer standard, maximum access to the PSR is compelled to meet the ends of justice*. This Court must respect that. To do otherwise would be mutiny.

**C.**    **IN 2012, WHEN THE ISSUE WAS ENTIRELY THE SUGGESTION OF MISCONDUCT BY THE GOVERNMENT, THE COURTS, OR SATER, NOT TRUMP'S COMPLICITY IN IT, THE SUPREME COURT MADE PSR ACCESS LAW OF THE CASE, SO IN 2017, WHEN THE ISSUE *IS* TRUMP'S COMPLICITY WITH SATER AND ITS CONNECTION TO RUSSIAN ORGANIZED CRIME, WITH WHAT'S BEEN LEARNED SINCE 2012 ABOUT THE MISCONDUCT THE PSR SUGGESTS, WE CAN BE MORE CONFIDENT THAT THE PSR MUST BE DISCLOSED TO MEET THE ENDS OF JUSTICE SO THE PEOPLE MAY DECIDE IF THEIR GOVERNMENT KNEW OF OR FACILITATED RACKETEERING CONSPIRACY BETWEEN TRUMP AND RUSSIAN ORGANIZED CRIME**

For a decade, 2002 to 2011, Trump and Sater were partnered together, largely in Bayrock ventures. There is evidence sufficient to indict that by 2008 they were also partnered together in Bayrock racketeering. That, plus evidence learned in the last five years that the government knew of it, threatened Mr. Oberlander, counsel, and others to shut them up, and did so with the help of the courts, compels disclosure.

This is explained *infra*, but it is sufficient to say for now that the principle of vicarious liability, one becomes liable for another's crimes by agreeing with him to commit them, or facilitating them, and when that occurs, the scope of liability may include *every* crime committed by the other within the scope of the conspiracy, *even crimes the first person doesn't know of*. And conspiracy is easier to prove than primary liability. For example, if you can show that a person in a position of control learned what was going on, didn't report it or turn it in, but stayed, doing nothing to stop it.

4

And, a federal judge has recently *twice* held that these concepts may be used to state (1) a racketeering case against Sater for hiding his ownership and conviction while running Bayrock and (2) a racketeering conspiracy case against *any* Bayrock outsider who knew generally what he was doing and facilitated it. Even POTUS.

## II.   *CHARMER* RECONSIDERED

### A.   YALE IS CORRECT, *CHARMER* WAS WRONGLY DECIDED, FOR A PSR IS RATHER OBVIOUSLY A JUDICIAL DOCUMENT, THOUGH YALE PERHAPS DID NOT TAKE THE POINT FAR ENOUGH.

In *Charmer*, the question was whether the Arizona AG could be ordered to give up possession of, and not disseminate the content of, a PSR she had asked for and received from an EDNY clerk, a happenstance no one ever said was wrongful. The Second Circuit held that the question whether she should, or could, keep it was identical to the question whether, had she not obtained it the way she had, but had formally moved in court to access it, she would have prevailed, then held that because a PSR is not a "judicial document," the burden in such a motion would have been on her to establish that granting her access was compelled to meet the ends of justice.

In the interest of expedience, Mr. Oberlander concurs with Yale both in its reasoning and its conclusion, as far as it goes and in the facts of that case.

### 1.   *Charmer*, perhaps for good reason, did not apply the First Amendment. This court must not repeat the mistake (if it was a mistake at all).

However, Mr. Oberlander adds that it has never been held, and remains an open question, whether state and local governments have First Amendment rights (or, if they do, whether they have First Amendment rights of access).

As a result, the *Charmer* court may have thought it was dealing with a party who had no such rights at all, and thus (and properly, though it might have mentioned the point to avoid precisely this confusion) not considered them.

Put simply, had the Arizona AG been before that court solely in her personal capacity, that court might well have held that a less demanding test would apply to her access rights notwithstanding its holding that a PSR is not a judicial document.

After all, that same court (the referring court here) in the years since became the first court to find that the First Amendment is not limited to traditional matters, but applies also to non-judicial proceedings[1], and it was a few years before *Charmer*, in *Richmond Newspapers v. Virgnia*, 448 U.S. 555 (1980), that the Supreme Court ever found such a right of access applied anywhere, that Court setting aside the fact that the First Amendment lacks an express right of access to reason broadly that such a right necessarily is implicit in the core values of a "liberty-loving society," noting:

> The First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw … It must be taken as a command of the broadest scope that explicit language, read in the context of a liberty-loving society, will allow.

**B.     NEVERTHELESS, *CHARMER* IS WHAT IT IS, AND AS YALE SAYS THIS COURT NEED NOT REACH THE ISSUE OF WHETHER A PSR IS A JUDICIAL DOCUMENT *PER SE*, AS SURELY IT IS ONE IN THIS CASE.**

**1.     *Charmer* expressly allows a court to release a PSR to the public where, after balancing the competing interests, the court finds that disclosure is compelled to meet the ends of justice, as not only is the case here but as has already been held to be the case here by the Supreme Court.**

*Charmer* directs courts to "weigh[] the competing interests in order to determine whether … the ends of justice require disclosure." 711 F.2d at 1176. In *United States v. Watkins*, 623 F.Supp.2d 514 (S.D.N.Y.2009), Judge Rakoff released a PSR

---

[1] *NYCLU v. New York City Transit Authority.*684 F.3d. 236 (CA2 2011) (turnstile-jumping hearings).

so the defendant would be estopped by a state court from asserting facts in a civil matter contrary to those he had asserted in his PSR in a federal criminal matter.

Watkins had pled guilty before Judge Rakoff and provided "information to the probation department concerning his finances for use in his PSR," and testified to his penury at his sentencing. The court in its discretion, and in reliance on Watkins' claimed "inability to pay," reflected in the PSR, chose not to impose a fine.

Awkwardly, Watkins later filed a derivative suit in New York State Supreme Court court alleging that at the same time he had been pleading poverty before Judge Rakoff he had formed a real estate venture with a partner and "less than a month after being incarcerated" had "invested approximately $600,000 in that corporation."

The federal court found under these circumstances that the opposing party in the state court derivative suit had a "compelling need for disclosure of the Presentence Report to 'meet the ends of justice'" (In turn, the state court judicially estopped Watkins, based on the PSR, from asserting that he had "claims to real property or accountings based on funds he was suddenly representing had had transferred at the same time" he had in the PSR represented that he did not have to induce leniency.

*Watkins* held PSR disclosure compelled when all that was at stake was the parochial interest of a private litigant in a civil suit. Here, Sater's PSR



These post-2012 concerns are explored *infra*, but keep in mind the necessit of access has already been determined years ago even without them.

### III. ACCESS TO SATER'S PSR <u>IS</u> REQUIRED TO MEET THE ENDS OF JUSTICE BECAUSE THE SUPREME COURT, RESPONDING TO <u>SWORN DECLARATION</u> IN SUPPORT OF MOTIONS SERVED ON ALL PARITES <u>EXPRESSLY</u> ASKING TO PUBLICIZE PSR CONTENT, <u>PREVIOUSLY AND PRECLUSIVELY</u> FOUND A PUBLIC INTEREST IN SEEING SIGNIFICANT PSR CONTENT BY APPROVING <u>MAXIMUM</u> PUBLIC ACCESS *VIA* PUBLIC DISCLOSURE OF MR. OBERLANDER'S PETITION FOR CERTIORARI.

As the court may recall, at sidebar in the June 19, 2017 hearing, Mr. Wolf and others, including the court itself, perceived a problem, some perceived uncertainty whether the Supreme Court did knowingly grant a clear motion by Mr. Oberlander to be allowed to publicly reveal extensive PSR contact in a redacted cert petition. *It did*.

### A. TO BEGIN, THE PROBLEM WOULD NOT HAVE OCCURRED BUT FOR THE PANEL'S IMPEDANCE OF THE CERT PETITION PROCESS.

As explained in detail *infra*, in February 2010 a Second Circuit panel ordered that petition for Supreme Court review must be "denominated as filed under seal." But the Supreme Court doesn't keep secret cases and hidden dockets, and never has.

As a result, counsel was placed in a situation where (1) he was enjoined even from revealing information to file an appeal before the United States Supreme Court, unless the petition for certiorari were entirely under seal; while (2) by Supreme Court rules, one cannot file a petition for certiorari entirely under seal, there must also be a redacted version, and even that must be filed accompanied by a motion to allow it.

9

In sum, the panel's order prevented Mr. Oberlander's exercise of his statutory right to seek Supreme Court review, so was *ultra vires*, as only Congress can do that.

Nevertheless, to make a record, counsel did as ordered, on May 10, 2012 filing a cert petition with the court, and serving Mr. Sater's counsel, the EDNY, and the Solicitor General with it. Exh. A at ppg. 1-2 shows the cover and proof of service (by custom, service was made by the appellate printer, PrintingHouse Press Ltd. )

Counsel then received a call from Jeffrey Atkins, Supreme Court clerk for new cases, who accepted the filing with the direction that he would not take a wholly sealed petition, and would only take a partially sealed petition with a motion to allow it. Counsel was then *ordered* to submit a motion for leave to file under partial seal with a redacted version for filing publicly. Exh. A at pg. 3 shows this.

1.  **Counsel filed that motion, which *expressly* explained the panel's secrecy order, and asked that Court to vitiate it by allowing a redacted version to be made public with quotations from to-date "forbidden" material still supposedly under seal, *expressly including the significant parts of the PSR*.**

    *This motion, with an initial proposed redacted version*, was filed with that Court on June 1, 2012, and at the same time was served on, again, counsel for Mr. Sater, the EDNY, and the Solicitor General, as is reflected on the Supreme Court's docket. *See* "Motion to Order the Docketing and Public Availability of the Petition for Writ of Certiorari in Redacted Form as Provided Herewith," Exh. B. Neither the government nor Mr. Sater objected to the motion or proposed redacted petition.

    On June 25, 2012, the Supreme Court granted the motion.

**2.** **As the Solicitor General declined to participate, counsel worked directly with Atkins to ensure the redactions complied with the Court's order.**

Over the next two weeks, counsel worked with Mr. Atkns to ensure that the redactions had been done in conformance with the Court's order. In fact, one of the first things Mr. Atkins asked counsel to do, in May 2012 before counsel had submitted the first proposed redacted petition, was to invite the Solicitor General to participate in the redaction process, which counsel did by phone. On May 25, 2012, Nina Goodman, Esq., of the Solicitor General's office wrote, declining and leaving it to us to redact: "Mr. Lener, we received your inquiry about a redacted filing in the Supreme Court. Whatever you choose to do in this matter is between you and the Court."

Exh. A at ppg. 4-6 has this email, and emails with Mr. Atkins, showing that in advance of public filing the redacted petition for certiorari and the motion to make it public (the Court wanted a redacted version of that, too), were provided to the court for review, by email, so the Court could be satisfied that all was in compliance. They also memorialize counsel's conversation with Mr. Atkins that the Court had others review the redactions for compliance, too, before notifying us that all was good to go.

The redacted cert petition became publicly available in July, by the court's own act. Again, the lawyers for both the government and Sater were served with the motions and the redacted cert petition – and neither made any objection to its being filed or to the final redactions that were made (and were not). Exh. A. at ppg. 7-8.

Counsel alerts the court that the references throughout that petition to "JA-522" and the like do not, as Yale and this court thought, refer to a Joint Appendix at the Supreme Court there was none, only an appendix to the petition itself, referenced as "App-45" etc. The misunderstanding became clear on review of the transcript.

11

All JA references are to the same Joint Appendix in the hands of this court, including references to the PSR (counsel cannot check to be sure as he destroyed his PSR copies). *Thus, the court can verify the PSR says what Mr. Oberlander said it did.*

3.   **The court, and everyone at the sidebar, are percipient witnesses to Mr. Wolf's deceit, fraud, contempt, and obstruction.**

To meet the ends of justice in *this* proceeding, I, undersigned counsel, must report that Mr. Wolf lied to the court in the June 19, 2017 hearing. Besides my duty to my client to do so, it is my duty to the profession, N.Y. Rules of Prof. Cond. 8.3.

At sidebar Mr. Wolf said [Tr. 6.19.17, pp. 38-39] [Emph. add.]

For years and years and years Mr. Oberlander, through Mr. Lerner and otherwise, has been professing that the Supreme Court authorized them to publish portions of the PSR and other things. That's just a fallacy. There [isn't] any order on [its] docket that I've reviewed that, one, shows an application to do that. Or a subsequent order that says, sure go right ahead and file portions of the PSR ….Your Honor, what the docket indicates, I believe **this was made in advance just by Mr. Roe the appellant seeking certiorari, without papers filed from other sides or even notice to anyone else with a request to file redacted copies of their petition**, there is nothing that shows up as to what they were going to put in their cert petition…."

And all the Supreme Court says, file redacted. It indicates what it says on the docket, the identities of the parties and everything. The reason I'm saying this, is this has been raised over and over again, both in the Second Circuit and with Judge Cogan. **There is Supreme Court imprimatur matter that this is okay to publish anything from the PSR when there hasn't been…**

We can access to the docket. **My point is this, your Honor, it's been represented over and over…that somehow the Supreme Court was, one, told that there is PSR references; and two, authorized it in Court, which is something that is just false**.

12

As the court must recognize, this is not so. Some of what he says may be "merely" deceit (not that it matters, that would still violate his duty of candor to the court and constitute obstruction and criminal contempt), but what is in bold is fraud.

Nevermind the media read the transcript, counsel's daughter was in court and read it. *Counsel's daughter*. Mr. Wolf called me a felon and perjurer by claiming that, *under oath*, I perpetrated fraud in and on the United States Supreme Court, knowing perfectly well or at best recklessly indifferent to the fact that there is no order on the docket that says, "Go ahead and use the PSR," because no one would write such, instead it says "go ahead and redact as you asked," referring to a motion expressly, and repeatedly, advising that we sought to make public quotations in the petition that are in the PSR, as he is charged to know because, again, his client was served with it.

This level of fraud in a case of this significance to the country could have had no purpose but to try to cause the court to ignore the Supreme Court's binding ruling, *obtained on counsel's uncontested, sworn declaration in support of his motion there*, *which, because it was unopposed, may not be questioned by this court.* It is a defilement.

And with respect, your honor, it is not within your discretion to decide to discredit those sworn statements counsel made to the Supreme Court to induce that court's reliance. That is counsel's job, and for the record, (1) if anyone had any objection to them, they waived the right to bring such by failing to do so in 2012; and (2) counsel affirms by his signature hereto this brief, under penalty of perjury per 28 U.S.C. § 1746, that the statements of fact made in this brief concerning the referenced Supreme Court proceeding are true and correct, and the documents submitted are true and correct copies of what they are represented to be, and each of them, to his best knowledge.

13

### B. Putting Aside the Fact That the Supreme Court Made the Issue Moot as Maximum PSR Access Is Law of the Case, Access to the PSR <u>is</u> required to meet the ends of justice by Developments Occurring Since Its 2012 Ruling

As the court may recall, at sidebar in the June 19, 2017 hearing, Mr. Wolf and others, including the court itself, perceived a problem, some perceived uncertainty whether the Supreme Court did knowingly grant a clear motion by Mr. Oberlander to be allowed to publicly reveal extensive PSR contact in a redacted cert petition. *It did*. Therefore, counsel only briefly reviews the arguments in the 2012 Motion to the Supreme Court which that Court granted, voluntarily unopposed, once again reminding the Court that these arguments have been accepted by that Court as is binding here.

### 1. The arguments which the Supreme Court found compelling enough to order maximum PSR access to meet the ends of justice. *See* Exh. B.

The public has a presumptive common-law right of access to dockets, records, and proceedings which may be overcome only by a sufficient evidentiary showing of higher *countervailing* interest, and a presumptive First Amendment right of access to the subset which experience and logic show are subject to such right, which may be overcome only by a sufficient evidentiary showing of a higher *compelling* interest.

Here, it matters not which category the petition [with the PSR content] is deemed to fall within, as the public import of the issues in this case is insurmountable.

And this Court is obligated to another constituency besides the public: the concealment of an entire criminal case, especially pursuant to non-existent sealing orders, violates Congressionally mandated crime victims' rights. [And, as to the c

14

Nor does this end with notifying victims. In response to the press coverage this case is receiving, a member of New York's congressional delegation wrote in concern for what appear to be violations of [Oberlander's] and his clients' First Amendment rights, and requesting that he provide, in person and by documentation, all information on the matter as would not violate court orders.

Moreover, the sealing and prior restraint orders on Roe and his clients infringe on their rights of assembly and petition, not only through their private lawsuit(s), which have been frozen, but, by collaboration with organizations and individuals who would be concerned about the issues in this case, and who may well wish to submit to this Court amicus briefs in Oberlander's support. All these groups must obviously need and want to know all that went on here, especially in the PSR:

**Victims' organizations**. The word "mandatory" in the Mandatory Victims Restitution Act means it. Yet Doe was given only probation and a $25,000 fine. Why?

**Investment protection organizations**. Organizations committed to investor should be deeply concerned that federal courts would maintain the docket of a RJCO stock fraudfeasor secret for 14 years, emboldening him to defraud investors, as he has, by the concealment of his conviction, a *per se* material fact.

**Bar associations, civil rights, and free speech advocates**. Had the employee who gave Oberlander the documents showing Sater's secret criminal case given them instead to *The New York Times*, one suspects the lower courts would have immediately recognized no prior restraint could issue. ████████████

████████████████████████████

████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████

Apparently relying on the fact that Roe is an attorney, the district court, then the circuit court, said he had an obligation to not use the documents. Bar associations should be interested in arguing that attorneys' First Amendment rights are equal to that of the media and other citizens. And it would be interesting to hear their views on whether Oberlander, an officer of the court, was obligated to use this information in behalf of his clients, and whether- consistent with such duties - he had an obligation to report the judicial and prosecutorial misconduct to appropriate panels.

Bluntly, lower courts in this case have held that the First Amendment analysis this Court has applied to leaked "secret" documents that originated in the executive and legislative branches is different from that applied to such documents originating in the judicial branch. They have held that, though dissemination of the Pentagon Papers could not be gagged - notwithstanding that they concerned military secrets, and were arguably stolen – dissemination of the documents at issue here could be gagged, without First Amendment due process, regardless of content, simply because they originated in courts and had been sealed, with orders written in invisible ink.

**Judicial oversight organizations**. Such organizations may be concerned that there was no one protecting the public's right to know what transpired during Sater's sentencing, that because of his cooperation, he was allowed not to pay restitution and not to suffer a mandatory $80 million forfeiture order. Because all this was done in secret, there was no one in that courtroom looking out for the interests of the public or Sater's victims, though 18 U.S.C. § 3771 required the district judge to do so.

16

The information will cast members of the judiciary in a poor light, but it is core speech, and  Oberlander trusts this Court will hold that an attorney has the same right  to criticize a judge  as any public official. The gag orders imposed upon Roe prevent the discussion in public of what he believes, and what has been briefly shown in the petition for a writ of certiorari to be, the maladministration of justice.  It is also true that Oberlander has presented his arguments to the District Court and Circuit Court with  brutal  candor;  but  an attorney's  right to speak freely does not end at the courthouse steps. Nor may an attorney be punished for criticizing a judge, or "undermining" a judge's authority with  such  harsh  criticism,  particularly  where such criticism  is founded  in fact and in law, let alone not merely founded,  but true.

**Advocates of government transparency**. "Everything secret degenerates, even the administration of justice ...." The petition shows that some three decades ago the Second Circuit embarked on a path of secret criminal cases, a path which has degenerated to the point that an attorney, Oberlander, could be threatened with criminal contempt if he were to tel1 his Congressman, or anyone else, that a federal judge failed to impose upon a RJCO fraudfeasor the sentence mandated by Congress.

**The Media**. Oberlander has been contacted by members of the media and the public, However, he was unable to speak freely with them, and so the public remained ignorant of the fact that a convicted RJCO fraudfeasor continued to defraud investors, at least by his concealment.

17

2.      **The public has a critical need to know whether counsel or Mr. Wolf has defiled this court, because if Mr. Wolf has then the entirety of the closed proceedings in which he participated and material under redaction which he submitted are irreparably tainted and if not subject to disclosure and verification are, fairly and objectively seen as sufficiently probative of taint by *Caperton* standards, it creates structural Fifth Amendment error.**

In a way, this court and its prior proceedings have become its own problem. In the June 19, 2017, hearing, this court also expressed a concern that by allowing all or part of the PSR to be released because of the summaries of the PSR's content in the redacted cert petition it would "almost reward[] the bad behavior of Mr. Roe by releasing something he should not have released in the first place."

Setting aside, the fact that Roe's alleged motivation is absolutely irrelevant to the question of public access at issue here, he has not and did not commit any "bad behavior" in publishing summaries from the PSR in the redacted cert petition at the express permission of the United States Supreme Court. Such authorized statements could not – as a matter of law – have been in violation of any lower court order, express, implied, or otherwise, once the Supreme Court granted the motion and so allowed him to disclose that information from the PSR.

The Supreme Court has the absolute authority to control its own filing and docket, including what is publicly published there and what is not. Orders for sealing and or silence by a lower court can have no effect on the Supreme Court's power to vitiate any such order by ordering the person to disclose the information to it or to the public through it in a case on the its own docket.

To act on the idea that lower federal courts have such power over what can be said to, or is filed in, the United States Supreme Court, to decide to ignore what the

18

Supreme Court has done because a lower federal court doesn't like or trust the attorney who obtained it, is not just error, it is mutiny. Cf. *Abelman v. Booth* 62 U.S. 506 (1858) (Wisconsin Supreme Court ordered its court clerk to refuse to provide its appellate record ["writ of error"] to the United States Supreme Court).

But that, respectfully, is not the "bad behavior" issue threatening to run this proceeding off the rails, constitutionally.

If counsel has defrauded the court, that would be bad. But if Mr. Wolf has defrauded the court (and he has) it would be epically bad, of tectonic dimension.

What is the saying, something like, "The public does not expect perfection of its government institutions, but it is hard for it to accept what it cannot see." IF the public learns that Wolf attempted to defraud this court to stop it from according due obeisance to a Supreme Court decision. How would the educated man in the street view any decision coming out of this proceeding that could have come from argument or factual submission by Mr. Wolf ins sealed submissions or closed proceedings.

Your honor is respectfully reminded that (1) the court cannot know where Mr. Wolf is lying, only someone with encyclopedic command of everything can do that, or the public can if it is given the chance; and (2) *the issue is not whether the proceedings were tainted, but whether the public would believe it was too likely that were tainted.*

*Caperton v. A. T. Massey Coal Co.,* 556 U.S. 868 (2009) is not a holding limited to judicial bias, it's a holding on Fifth Amendment guarantees of a *proceeding* "straight and true," establishing as the test whether the disinterested observer, aware of the facts, would think that the probability that it went off the Fifth Amendment

rails and hit the "third rail" of structural error was high enough that he couldn't trust it.

**3.     The fact that the information is found in the redacted petition for certiorari does not negate the need to release the actual PSR; it enhances it.**

For one thing, this court lacks the authority to keep sealed what is public, let alone public for five years. *Gambale v. Deutsche Bank AG*, 377 F.ed 133 (CA2 2004).

Moreover, the Supreme Court granted leave to publish material from the PSR in the redacted cert petition based on the argument that the public had a right to know and a great interest in knowing that information. It necessarily follows that the public has a right to know – a *compelling interest* in knowing – whether the statements made in the redacted cert petition, and the motion and accompanying arguments in both, are in fact an accurate representation of the actual PSR because now those assertions implicate Sater's long-time business partner, Donald Trump, who has since become the President of the United States.

Further, because of the compelling public interest in these matters, it should be given to the public to decipher and know for themselves.

Your honor, remember once again, as it cannot be said enough, the issue is not whether Sater is a crook, ██████████████████████████ ████████, or this or that government or judicial official is culpable. For example, it's been said, "PSR's are hearsay. The public won't get it." We are a nation of self-government, do not need to be infantilized or paternalized, and are well aware, if only at a gut level, of the difference between testimony and hearsay (besides, the Pentagon Papers were hearsay, and counsel does not recall anyone making the argument that

they can be shut away and dissemination enjoined because the public might not know

that). ████████████████████████████████████

████████████████████████████████████

. The issue is, simply, whether the public shall have the right to see all that it

can so that it can make up its mind on those questions for itself. That is what we do

here. That is why we have openness. It's the process, not the result. The public must

see not what Mr. Oberlander put in a cert petition, ██████████████████████

████████████████████████████████████

████████████████████████████████████

And, though we tread lightly hear for obvious reasons, the public must see

whether counsel just made it up and perjured himself in his motion to make the cert

petition public, or instead, whether the summaries made in the redacted cert petition

are accurate ███████████████████████████████████

████████████████████████████████████

██████████ and the lower courts and the panel here thought it best to threaten Mr.

Oberlander, Mr. Kriss, Mr. Ejekam, counsels, and others with criminal prosecution

if they told anyone what they knew, even Congress.

4.    **Finally, the information learned about Sater and Trump since 2012, if
even necessary for consideration given the Supreme Court's ruling,
makes disclosure of every shred of information everywhere compelling
because of the implication of Trump's involvement in racketeering.**

**Human trafficking and child prostitution**. There is new information about

racketeering at Bayrock: The Turkish government has released transcriptions of wire-

taps of Tevfik Arif and others at his Bayrock-affiliated Rixos hotels. They show him

21

arranging the importation of underage prostitutes,and  being seized for transporting same to service his "business associates," and it is a more than fair implication that he was able to use his money and influence to buy himself out of it a conviction.

See https://theblacksea.eu/RES/uploads/files/Savarona%20prosecution%20docs_ocr.pdf at pg.5.

**Judge Schofield's recent orders confirming the Kriss complaints properly plead a case in racketeering against Sater and others**. In December 2016 and a few weeks ago, Judge Schofield denied motions to dismiss what is now the third amended version of Mr. Oberlander's original RICO complaint. See *Kriss v. Bayrock*, 10-CV-3959 (SDNY). Notwithstanding the amendments, the theory has not changed: (Of course, if proven factually) by operating Bayrock through a pattern of predicate crime, in particular the fraudulent concealments of his ownership in the firm and his conviction, Sater and those who participated in the operation with him are liable in civil and criminal RICO, and those who did not participate in the operation but were aware, even if generally, of what he was doing and agreed to it, went along, or facilitated it are liable in racketeering conspiracy, *even if they reside at 1600 Pennsylvania Avenue*. (It is worth noting that predicate crimes of financial fraud have ten-year statutes of limitations, as does RICO based upon them, and so indictment is still possible).

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████,

*but even more unthinkable would be the refusal to unseal the core material so the people can see for themselves what evidence there is (and is not, of course).*

22

**Sater's sentencing transcript is now public**. It dismayingly confirms that yes, the courts and the government knew perfectly well what he was up to, because he is transcribed as admitting that he took advantage of the secrecy of his conviction to perpetrate bank fraud, as in his own words he knew the banks wouldn't lend if they knew the truth, that "there was a criminal involved."

**Loretta Lynch told Senate Judiciary** that the reason Sater got away without restitution is something she would love to tell them, but it's "under seal."

There is more, much more, but time and space do not permit their inclusion. There is one final point, however, that bears mention yet does not fit in any of the headings above. At the June 19, 2017 hearing, your honor suggested that if there were crime victims who were not notified of that or other proceedings, the court was not sure why unsealing would be any remedy for that.

The court's attention is directed to *In re Simons*, 567 F.3d 800 (CA 6 2009), in which the circuit granted mandamus directing the district court judge below to take up the unsealing motion of a crime victim within 14 days because it was improper for a victim not to know details of a crime by the court's sealing the case for too long. This is not an argument that the CVRA entitles victims to access the PSR, rather an argument that their entitlement exists by their 20-year long deprivation of the truth.

\*\*\*\*\*

This document is entirely typeset in Equity font, 12 point text, 10 point footnotes, double-spaced at precisely 24 point.

June 24, 2017
New York, New York

23

/s/ Richard E. Lerner, Esq.
**The Law Office of Richard E. Lerner**
Tel. 917.584.4864

**REDACTED IN ACCORDANCE WITH THE
JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT**

No. 11 M 122



IN THE

# Supreme Court of the United States

——————— ►►◄◄ ———————

RICHARD ROE, JANE DOE, JOHN DOE II,

*Petitioners,*

*v.*

UNITED STATES OF AMERICA,

*Respondent,*

*v.*

JOHN DOE,

*Respondent.*

———————————

*United States Court of Appeals for the Second Circuit*
*Docket Nos. 10-2905-cr, 11-479-cr, 11-1408-cr,*
*11-1411-cr, 11-1666-cr, 11-2425-cr*

## Motion by Petitioner "Richard Roe"

**(1) To Order the Docketing and Public
Availability of the Petition for Writ of
Certiorari in Redacted Form as Provided
Herewith**

**(2) To Caption the Case With the True Name of
Richard Roe**

Richard E. Lerner
WILSON ELSER MOSKOWITZ EDELMAN
& DICKER LLP
*Counsel of Record for Petitioner
"Richard Roe"*
150 East 42nd Street
New York, New York 10017
212-915-5419

June 1, 2012
(Redacted on July 9, 2012)

1

**To:    The Honorable Justices of the Supreme Court of the United States**

I, Richard E. Lerner, an attorney admitted to practice before this Court, state under penalty of perjury, pursuant 28 U.S.C. §1746, that the following statements are true, based on my knowledge and my review of the files maintained in my representation of petitioner Richard Roe.[1]

**I.    Statement of Relief Requested and Introduction**

1.    Roe herewith submits a proposed redacted version of his petition for writ of certiorari to the Court of Appeals for the Second Circuit, respectfully requesting it be made publicly available by this Court. Additionally, Roe respectfully requests that the case be captioned in his true name.

2.    In sections II, III, and IV, Roe lists the redactions and explains why certain information has been redacted and other information has not. In section V, Roe requests the caption of the case be changed to his name. In section VI, in the context of the public right of access, Roe demonstrates that the public interest in this case is insurmountable, as there can be no compelling or countervailing interest mitigating against public availability of the redacted petition in light of the following:

3.    It would be extraordinary to seal any petition, especially where, as here, such sealing would be predicated upon nonexistent sealing orders of the district court. Without access to the petition, *amici* could not weigh in, though "[A]n *amicus curiae* brief that brings to the attention of the Court relevant matter not already brought to its attention by the parties may be of considerable help to the Court." Rule 37. And this is no ordinary petition. Doe's criminal case has been secret for 14 years. His past victims lost at least $40,000,000 to his first fraud; his current victims have lost some $500,000,000 to his second fraud – *viz.*, his concealment of his

---

[1] This motion is revised, per the June 25, 2012, order of this Court, requiring redaction from the petition for writ of certiorari and from this motion "any appended item containing a party's true name and any reference to such item...."

RICO conviction. Attorney Roe has been enjoined from telling Doe's victims and from vindicating the rights of his clients. He has been ordered to stand mute while Doe continues these frauds. Without public access to this petition, Doe's victims cannot know that their rights were violated, cannot intervene, and cannot submit *amici* briefs. But with access, *amici*, victims, and the public will learn that there are secret criminal trials conducted in United States courts and that this Court has been asked to outlaw them. This Court cannot decide this issue in secrecy. **When courts of record fail to act on the record, this Court of last resort must.**

## II.    By Order, Roe's Petition Was Filed as "Sealed"

4.    On February 14, 2011, the Second Circuit ordered that any appeals Roe filed in this Court be denominated "Sealed." JA 1285. Roe filed his petition, so denominated, on May 10, 2012. The Court accepted it on May 14, 2012 and directed him to file this motion and redacted petition.

## III.    The Information Redacted

5.    In the appendix, these items, actually or allegedly under seal below, were redacted:[2]

|      | | |
|------|--------------------------------------------------------------|-----------|
| 5.1. | Second Circuit order of January 28, 2011                     | App. 29a  |
| 5.2. | Second Circuit order of February 4, 2011                     | App. 30a  |
| 5.3. | Second Circuit order of February 8, 2011                     | App. 33a  |
| 5.4. | Second Circuit order of February 9, 2011                     | App. 35a  |
| 5.5. | Second Circuit order of February 10, 2011                    | App. 37a  |
| 5.6. | ███████████████████████████████████████                     | App. 118a |
| 5.7. | Scheduling order of March 23, 2011, District Court, EDNY     | App. 131a |

6.    In the petition itself, information that could only be known or inferred from the preceding redacted documents, or from the PSR, criminal complaint, information, cooperation, and proffer agreements which are the subject res of the underlying case, has been redacted.

---

[2] In accordance with this Court's June 25, 2012 order, we have redacted the reference to item 5.6. However, that item is referenced by date the June 29, 2011 decision of the Second Circuit, which is a matter of public record. Additionally, there are further items in the appendix which are redacted, but not listed here, as listing such items here would appear to contravene the requirement that any items contained in the appendix that identify any party by his true name be redacted.

## IV.    The Information not Redacted

7.    ***The orders appealed from are not sealed, and so were not redacted.*** Immediately after issuing their summary orders of February 14, 2011 and June 29, 2011, the Second Circuit posted them on its website, where they have been publicly available for a year.[3] Both were published, reported within days, and have been publicly available on Westlaw, Lexis, Leagle, and vLex for a year.[4] They are on blogs such as the Second Circuit Public Defender's. And the press has them.

8.    Because they are actually public, found even by Google search, and have been for so long, *a fortiori* given this Court's Rule 14(d)[5] requiring their indirect publication by citation in the petition, the orders cannot be considered sealed,[6] so were not redacted from the appendix. Since those orders and the information they contain are public, information in the petition which was derived therefrom was not redacted.

9.    ***Information in documents obtained publicly was not redacted.*** That Doe pled guilty to racketeering charges for defrauding investors of $40,000,000 is a matter of public

---

[3] See http://www.ca2.uscourts.gov/opinions.htm, then click "Search" in "Opinions and Summary Orders" and enter docket number 10-2905.

[4] For example, the February 14, 2011 order is at 2011 WL 494282 and 2011 U.S. App. LEXIS 2903. The June 29, 2011 order is at 2011 WL 2559016, and 2011 U.S. App. LEXIS 13335. The PACER public docket's links to those orders were recently disabled, but the Second Circuit reissued the June 29 order on December 12, 2011, in duplicate, as a mandate, and the link to that order is active, and has been for six months, so the June 29 order is in fact available on PACER.

[5] "A petition for a writ of certiorari shall contain...'**Citations of the official *and unofficial*** reports of the opinions and orders entered in the case by courts...'" [Emph. Add.]

[6] Once a document is released by a court to the public it may be freely disseminated. See *Florida Star v. BJF*, 491 U.S. 524 (1989); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975); *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97 (1979). Indeed, Second Circuit precedent, *Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004), prohibits sealing a document once it has been disseminated, especially by publication on Westlaw and Lexis:

> But however confidential it [a settlement amount] may have been beforehand, subsequent to publication it was confidential no longer. *It now resides on the highly accessible databases of Westlaw and Lexis and has apparently been disseminated prominently elsewhere.* We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again. The genie is out of the bottle ... we have not the means to put the genie back. [Footnotes omitted; Emph. Add.]

See also *SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, 261 F.Supp.2d 1002, 1008 (N.D.Ill.2003) (Posner, J., sitting by designation) (refusing to seal portions of an agreement containing confidential information already disclosed in the court's opinion.)

record, as the government issued a press release on ████████ so stating. App. 86-96. The

Second Circuit noted in its June 29 order that the press release is publicly available to Roe to

confirm Doe's conviction. That press release, available in ████████████████, is in the

appendix, and has not been redacted. *Id.*[7]

10. ***Information in documents not subject to sealing orders and obtained without
court process was not redacted***. The petition refers to a conversation Roe's client recorded

lawfully on which senior officers of Doe's real estate firm admit that Doe skimmed millions

from the firm as part of a money laundering and tax evasion scheme. That recording is not sealed

and was obtained without court process. Thus, though the PSR has information that Doe was

defrauding the government of taxes, such information is not exclusive to the PSR, so it has not

been redacted.

11. ***Information evidencing judicial or prosecutorial misconduct was not redacted.***
Information necessary to understand the petition and the argument that the PSR contains

information of public concern – *viz.* evidence of prosecutorial and judicial misconduct – has not

been redacted. For example, ████████████████████████████

████████ ██ ██████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████████

████████████████████████████

██████████████████████████████

████████████████████████████████

████████████████████████

---

[7] Per the June 25, 2012 order, the press release will be redacted from the petition.

12.     Neither the government nor Doe can have a cognizable interest requiring redaction of references to the February 10, 2011 *sua sponte* Second Circuit order enjoining Roe from telling anyone, expressly including Congress, of what he deems judicial and prosecutorial misconduct, reference to that order has not been redacted. Because the fact that a *United States court has for the first time in our history issued a hyper-injunction*[8] *criminalizing a citizen's reporting of official misconduct is of unprecedented constitutional gravity*, this has not been redacted.

13.     Never in American history, before this order, has a United States court threatened an American citizen with criminal prosecution for reporting to Congress – the sole constitutional check and balance over the courts – evidence of judicial misconduct, or anything else. There has apparently been only one other hyper-injunction in modern times,[9] and it was soundly condemned by Parliament when it came to light.[10]

**V.     Roe Requests that the Caption be Changed to His True Name.**

14.     By the Second Circuit's disclosure in its public June 29, 2011 decision that ███████



████████████████████████████████████████████, assigned to ███████████████, Roe's identity is now a public fact, ███████████████████. ██████████████████████ ███████ a ███ search of ████████████████████ finds ██████████████

---

[8] Orders that purport to gag one from even telling another that the gag order has been imposed have been the subject of a great deal of debate in the Parliament of the United Kingdom. Such orders are called "super-injunctions." Orders which purport to gag one from even reporting to Parliament that such an order has been issued have been called "hyper-injunctions." See "'Hyper-Injunction' Stops You Talking to MP," The Telegraph, March 21, 2011, http://www.telegraph.co.uk/news/uknews/law-and-order/8394566/Hyper-injunction-stops-you-talking-to-MP.html; "Got Secrets You Want to Keep? Get a Hyper-Injunction," The Guardian, http://www.guardian.co.uk/law/2011/mar/21/secrets-to-keep-hyper-injunction.

[9] That hyper-injunction involved a whistleblower's report that the water tanks of a passenger ship regularly traveling in American waters had been painted with toxic chemicals, which report resulted in the shipping company's obtaining a hyper-injunction prohibiting the whistleblower from telling anyone, **even Parliament**, of the case, the injunction, or the health risk. *See* references in fn. 5.

[10] No surprise, given that the last time an English judge enjoined a citizen, or rather a *subject*, from petitioning the legislature for redress, he and the Attorney General were impeached. Chief Judge North had issued an opinion approving Charles II's "Proclamation against Tumultuous Petitioning," assisting the Attorney General in drafting it. As a result, Parliament Resolved: "That the Evidence this day given to this house against sir Francis North, Chief-Justice of the Common-Please, is sufficient ground for this house to proceed upon an Impeachment against him for high Crimes and Misdemeanors." November 24, 1680. From Parliament's subsequent response to this, its enactment of the English Bill of Rights in 1683, we trace our constitutionally codified First Amendment right to petition.

█████. ████████████████ figured it out and reported this case on ████████████, identifying Roe by name. App. 139.

15.   A man's reputation is his most precious possession, yet Roe has been deprived of his name, by the Second Circuit's treatment of him as anonymous. This is repellent to him, as the Second Circuit's decision rebukes "Roe" for "flouting" the district court's "sealing" orders, even though:

16.   The district court acknowledged on the record that **no sealing order was ever issued in the John Doe case**. (JA166-167, 697). Apparently, he just told a clerk to seal the case, without conducting a hearing and making the requisite record findings, capable of appellate review, prior to sealing the docket. *See Press-Enterprise Co. v. Superior Court of Cal*, 478 U.S. 1 (1986), and, generally, the *Richmond*[11] line of cases.

17.   No sealing order could have bound Roe, who was not a party or privy to *U.S. v. Doe* when any "oral" or "implicit" sealing order might have been issued. *Chase National Bank v. City of Norwalk*, 291 U.S. 431 (1934), citing *Alemite Mfg Co. v. Staff*, 42 F.2d 832. No order operates *contra mundum*. So even if an order had said, "No one who comes into possession of documents filed in this court may speak of them," it would have been void as to Roe, *pro tanto brutum fulmen. A fortiori*, as a prior restraint, it would be unenforceable as to Roe for failure to comply with First Amendment due process requirements of an adversarial hearing. *Carroll v. President & Commissioners of Princess Anne*, 393 U.S. 175 (1968).

18.   Roe asks recaptioning, that he may prove the rightness of his cause in his true name.

## VI.   Maximum Public Access to the Petition is Compelled to Further The Ends of Justice and the Expressly Mandated Intent of Congress

19.   The public enjoys presumptive rights of access to judicial dockets, records, and proceedings. The petition for writ of certiorari is a record as to which there is such a presumptive

---

[11] *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980).

right of access. As such it should fall within the second of these two classes of documents (and in any event must fall within the first): [12]

20.  *A presumptive common-law right* of access to all dockets, records, and proceedings (with exceptions such as grand jury proceedings), which may be overcome only upon a sufficient evidentiary showing of a higher **countervailing** interest.

21.  *A presumptive First Amendment right* of access to that subset of the above which experience and logic show are subject to such a right, which may be overcome only upon a sufficient evidentiary showing of a higher **compelling** interest.

22.  Here, it matters not which category the petition is deemed to fall within, as the public import of the issues in this case is **insurmountable**, even before considering the lack of reviewable record findings below, and the lack of evidence of the existence of a countervailing, let alone compelling, interest that would outweigh the right of access. For example, no evidence was proffered, let alone subject to cross-examination, as to a risk to Doe's safety. (And it is hard to see how there could be any danger when his conviction and cooperation have been publicly known for a decade. See App. 87 at fn.2, and App. 102). The district court **said** there was risk, apparently fact-finding by judicial fiat, not evidence, and the Second Circuit found no error in that bald statement. This Court cannot validate such egregious repudiation of its *Richmond* cases by depriving the public of access.

23.  But this Court is obligated to another constituency besides the public: Concealment of an entire criminal case, especially pursuant to non-existent sealing orders, violates Congressionally mandated crime victims' rights, which did not even exist until after the Reagan-era *Richmond* cases.

---

[12] See *Press-Enterprise v. Superior Court*, 478 U.S. 1 (1986) (experience and logic pre-test to find First Amendment right of access); *Nixon v. Warner*, 435 U.S. 589 (1978) (common-law right of access); and the *Richmond* cases.

24.    For example, the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. §3771, effective in 2004, affords victims rights, to notice of, and to attend, public court proceedings involving the crime; to confer with the Government attorney; and importantly, to timely restitution as provided by law, to petition the district court to enforce those rights, and to mandamus the courts of appeals if necessary.

25.    In synergy with the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. §3663A, effective in 1996 – which requires the court award full restitution and requires victims be notified in advance of sentencing of proposed restitution and allowed to participate in its determination – these laws comprise a regime of rights rendered worthless in cases hidden from the public and the victims.

26.    Here, the government and district court took advantage of the concealment of Doe's case, secretly awarding an illegal sentence, failing to order restitution █████████████████████ █████████████████████████████████████████████████████████████ The district court's failure to follow mandatory sentencing law was illegal. *Ex Parte United States*, 242 U.S. 27 (1916). *Dolan v. U.S.*, 130 S.Ct. 2533 (2010), confirms that the mandate of the MVRA – *viz.*, that the court **shall** order restitution notwithstanding any other provision of law – means what it says.

27.    Petitioner most respectfully avers that the CVRA applies to this Court, and therefore that this Court has a statutory duty pursuant to 18 U.S.C. §3771 to ensure that Doe's victims are given notice of this proceeding. Hence, by virtue of 18 U.S.C. § 3771, there must be, at the very least, public docketing of the redacted petition. We submit, however, that this Court may find that it has a further statutory duty to ensure that Doe's victims are informed of this petition by the DOJ.[13]

---

[13] Compare 18 U.S.C. § 3771 (a) subsections (2) and (4). Under subsection (2), Doe's victims have a right to notice of *any* public court proceeding. Presumably, the instant petition for a writ of certiorari is a court proceeding. Under subsection (4), in contrast, Doe's victims had the right to be heard at any public proceeding in the "district court"

28.    Nor does this end with notifying victims. In response to the press coverage this case is receiving, a member of New York's congressional delegation wrote to Roe expressing concern for what appear to be violations of his and his clients' First Amendment rights, and requesting that Roe provide, by personal visit as well as documentation, all information on the matter as would not violate court orders. And given the recent experience of Professor (and former Federal District Judge) Paul Cassell, there seems little point in seeking "permission" from the Second Circuit to tell Congress the truth.[14] Professor Cassell was a co-author of the appeal brief and reply brief submitted in this matter to the Second Circuit – hence, has knowledge of the facts he wished to tell Congress about this case.[15]

29.    Moreover, the sealing and prior restraint orders on Roe and his clients infringe on their rights of assembly and petition, not only through their private lawsuit(s), which have been frozen, but by assembly, by collaboration with organizations and individuals who would be concerned about the issues in this case, and who may well wish to submit to this Court amicus briefs in Roe's support. For example:

30.    **Victims' rights organizations.** The word "mandatory" in the *Mandatory* Victims Restitution Act means just that. Yet Doe was given only probation, and a $25,000 fine. Why?

---

involving release, plea, sentencing or parole. We submit that under subsection (2), this Court may be statutorily required, pursuant to section (b) (1), to ensure that Doe's victims are notified of this proceeding. It states, "In any court proceeding involving an offense against a crime victim, the court *shall* ensure that the crime victim is afforded the rights described in subsection (a)." (Emph. Add.) Subsection (c) makes it the obligation of the DOJ to use its best efforts to notify Doe's victims. We submit that, in order to "ensure" that Doe's victims are informed of this proceeding, this Court may be required to direct the DOJ to notify Doe's victims of this proceeding.

[14] On April 26, 2012, Professor Cassell testified before Congress on a proposed Victims Rights Amendment. In advance of testifying, Professor Cassell submitted prepared remarks about the case at bar to the United States Attorney for the Eastern District of New York for comment. What he received in reply was a warning that there were sealing orders, that Professor Cassell should take care not to violate them, and that he should get pre-clearance of his remarks from Judge Cogan of the Eastern District of New York, to whom the Second Circuit had delegated authority in its February 14th order. Professor Cassell accordingly asked Judge Cogan if his proposed remarks would violate any orders. Judge Cogan replied that he did not believe he had the authority to issue an opinion on the matter. This was detailed by Professor Cassell in a letter to Congress. The letter is most readily available on the website of the University of Utah, School of Law, where Professor Cassell teaches victim rights law. See http://today.law.utah.edu/wp-content/uploads/2012/04/cassell-transmit-supplemental-letter1.pdf

[15] See *id.*

31.   **Investment protection organizations.** Organizations committed to protection of investors should be deeply concerned that federal courts would maintain the docket of a RICO stock fraudfeasor for 14 years, emboldening him, to defraud investors, as he has, by the concealment of his conviction, a *per se* material fact. Roe's RICO complaint shows that Doe committed hundreds of millions of dollars of this concealment fraud, with rippling insolvencies and bankruptcies in the wake, leaving possibly a half billion dollars of loss. Yet in none of the courts where these issues are being litigated is it even known that at the center of it all is a convicted RICO stock fraudfeasor.

32.   **Bar associations, civil rights, and free speech advocates.** Had the employee who gave Roe the documents showing Doe's secret criminal case given them instead to *The New York Times*, Roe suspects the lower courts would have immediately recognized no prior restrain could issue. ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████      ██████████

33.   Apparently relying on the fact that Roe is an attorney, the district court, then the circuit court, said he had an obligation to not use the documents. Bar associations should be interested in arguing that attorneys' First Amendment rights are equal to that of the media and other citizens.[16] And it would be interesting to hear their views on whether Roe, an officer of the court, was obligated to use this information on behalf of his clients, and whether -- consistent

---

[16] See *Citizens United v. FEC*, 558 U.S. 50 (2010). Roe acknowledges the special case where the **extra-judicial** speech of an attorney to a party in an ongoing **criminal** jury trial might influence the jury pool. *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991). However, in this case, Roe was not counsel of record for any party to *U.S. v. Doe* action, nor was there any possibility that his or his clients' speech could have interfered with Doe's case, as he had pled guilty and been sentenced long before Roe learned of his secret case and illegal sentence. In any event, prohibiting Roe from suing on account of the fraud in concealing Doe's conviction is prohibiting **judicial speech**.

with his duties to his clients – he had an obligation to report the judicial and prosecutorial conduct to appropriate ethics panels.

34.   Bluntly, the lower courts in this case have held that the First Amendment analysis this Court has applied to leaked "secret" documents that originated in the executive and legislative branches should be different from the analysis applied to leaked "secret" documents that originated in the judicial branch. They have held that, though the Pentagon Papers could not be gagged – notwithstanding that they concerned military secrets, and were arguably stolen – the documents at issue here **could** be gagged, without First Amendment due process, regardless of their content, simply because they originated in the courts and had been sealed, in this case with orders written in invisible ink.[17]

35.   **Judicial oversight organizations.** Such organizations may be concerned that there was no one protecting the public's right to know what transpired during Doe's sentencing, that because of his cooperation, Doe was allowed to be sentenced under a pseudonym, ensuring he would have a virtually clean criminal record, and was allowed not to pay restitution. Because all this was done in secret, there was no one in that courtroom looking out for the interests of the public or Doe's victims, though 18 U.S.C. § 3771(a) (2) required the district judge to do so.

---

[17] The information concerned will cast members of the judiciary in a poor light, but it is core speech, and Roe trusts this Court will hold that an attorney has the same right to criticize a judge before whom he is not appearing as any public official. In *Grosjean v. American Press*, 297 U.S. 233 (1936), this Court held that "[f]or more than a century prior to the adoption of the [First Amendment] – and, indeed, for many years thereafter – history discloses a persistent effort on the part of the British government to prevent or abridge the free expression of any opinion which seemed to criticize or exhibit in an unfavorable light, however truly, *the agencies and operations of the government*." 297 U.S. at 245 (Emph. Add.). "Judge Cooley has laid down the test to be applied – 'The evils to be prevented were not the censorship of the press merely, but any action of the government by means of which it might prevent such free and general discussion of public matters as seems absolutely essential to prepare the people for an intelligent exercise of their rights as citizens.' 2 Cooley's Constitutional Limitations, 8th ed., p. 886." 297 U.S. 249-250.

The gag orders imposed upon Roe prevent the discussion in public of what he believes, and what has been briefly shown in the petition for a writ of certiorari to be, the maladministration of justice. It is also true that Roe has presented his arguments to the District Court and Circuit Court with brutal candor; but an attorney's right to speak freely does not end at the courthouse steps. Nor may an attorney be punished for criticizing a judge, or "undermining" a judge's authority with such harsh criticism, particularly where such criticism is founded in fact and in law.

36.   **Advocates of government transparency.** "Everything secret degenerates, even the administration of justice ...." Lord Acton. The petition shows that some three decades ago the Second Circuit embarked on this path of secret criminal cases, a path which has degenerated to the point that an attorney, Roe, would be threatened with charges of criminal contempt if he were to tell his Congressman, or anyone else, that a federal judge failed to impose upon a RICO fraudfeasor the sentence mandated by Congress.[18]

37.   **The Media.** Roe has been contacted by members of the media and the public, who have deduced his true identity, based upon the information contained in the Second Circuit's June 29, 2011 decision.[19] However, Roe is unable to speak freely with them, and thus the public remains ignorant of the fact that a convicted RICO fraudfeasor has continued to defraud investors, at least by his concealment. Based upon the information contained in the June 29, 2011 decision, and other publicly available information, *The Miami Herald* and others have moved to unseal John Doe's entire docket. Their motion was given a separate Eastern District docket number, 12-CR-150, the captioned, "In the Matter of the Motion to Unseal Docket No. 98-1101." The Miami Herald then moved before E.D.N.Y. Chief Judge Carol Amon to unseal Doe's case, using Doe's real name, which it had deduced from public information. That motion was scheduled to be heard on April 20, 2012, but has been adjourned *sine die*. Clearly, this is a matter of great public concern. ███████████████ also published an article about the case on ██████████████, entitled ██████████████████████████████████████████████ The

---

[18] *Ex Parte United States*, 242 U.S. 27 (1916), held it unlawful, the usurpation of the powers of the executive branch and the legislative branch, for a judge to not impose the sentence mandated by duly enacted legislation.

[19] ████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████

article identified Richard Roe by his true name and stated that ███████████ had

determined Doe's identity from public documents but was withholding it for the time being.

38.    In short, everyone knows what went on here, and who Doe is, and that this has been

kept in such secrecy for so long is shameful. The secrecy must end, we submit, with the public

docketing of the redacted petition.

## Conclusion

WHEREFORE, it is respectfully requested that the Court publicly docket the redacted

petition, and change the caption of the case to identify "Richard Roe" by his true name.

Dated:    New York, New York
          June 1, 2012

          [Redacted and amended to include
          footnotes 1, 2, and 7 on this 9th day of
          June, 2012]

                                        Respectfully submitted,

                                        WILSON, ELSER, MOSKOWITZ,
                                          EDELMAN & DICKER LLP

                                        By: _____
                                             Richard E. Lerner
                                        150 East 42nd Street
                                        New York, New York 10017
                                        (212) 915-5419



**Prepared by PrintingHouse Press, Ltd. 10 East 39th Street, New York, NY 10016**

**Tel No: (212) 719-0990 Fax No: (212) 398-9253**

STATE OF NEW YORK )

COUNTY OF NEW YORK ) SS

Dave Jackson, Being duly sworn, deposes and says that deponent is not party to the action, and is over 18 years of age.

That on 5/10/2012 deponent caused to be served 3 copy(s) of the within

**Petition for a Writ of Certiorari**

upon the attorneys at the address below, and by the following method:

| **By Overnight Delivery** | **By Overnight Delivery** | **By Overnight Delivery** |
|---|---|---|
| **Office of the Solicitor General** | **Assistant U.S. Attorney Todd** | **Michael Beys** |
| **950 Pennsylvania Avenue, NW** | **Kaminsky** | **Beys, Stein & Mobargha LLP** |
| **Washington, DC 20530** | **271 Cadman Plaza East** | **The Chrysler Building** |
| **Phone: 202-514-2203** | **Brooklyn, NY 11201** | **405 Lexington Avenue, 7th Floor** |
| | **Phone: 718-254-7000** | **New York, NY 10174** |
| | | **Phone: 212-387-8200** |

**By Email**

**"Jane Doe" and "John Doe II," c/o "Richard Roe" via email, with consent of same.**

<table>
<tr>
<td>

**Sworn to me this**

Thursday, May 10, 2012

KATHLEEN BATTIATO
Notary Public, State of New York
No. 01BA6219964
Qualified in Queens County
Commission Expires 4/05/2014

</td>
<td>

**Case Name:** USA v. John Doe

**Docket/Case No:** 12-112

**Index:** 10A797

</td>
</tr>
</table>

**Frederick M. Oberlander**

| | |
|---|---|
| **From:** | Lerner, Richard E. <Richard.Lerner@wilsonelser.com> |
| **Sent:** | Monday, May 14, 2012 2:05 PM |
| **To:** | 'fred55@aol.com' |
| **Cc:** | Middleton, Coleen Friel; Hirsch, Irving |
| **Subject:** | Redacted version of the petition |

Dear Fred,

I have spoken with Mr. Jeff Atkins at the U.S. Supreme Court re the redactions to the petition, which Atkins has now had an opportunity to review.  First, he says that the petition is in acceptable form, and is deemed accepted (though not yet docketed). Second, he advises that we should provide him with a motion annexing the proposed redacted petition, stating:

1)   Why the original petition was filed under seal.

2)   The reasons for redacting any items in the appendix. We are to "blackbar" any portion of the petition that would be "inappropriate" to reveal, in view of the redactions to the appendix.

3)   The petition will not be deemed to have been publicly docketed until the U.S. Supreme Court rules on the motion to accept and publicly docket the redacted petition. Thus, the 30 days for amicus petitioners to join in will not begin to run until the motion has been decided.

4)   With respect to the February 14, 2011 summary order, and the June 29, 2012 summary order, inasmuch as they are publicly available on the Court of Appeals' website (although not accessible through the docket) we should just explain it in the petition. Inasmuch as it is publicly available (on the Second Circuit website, on Westlaw, and Lexis), we don't have to redact those two orders. We will just have to show that they are indeed publicly available.

I will prepare the motion, and forward  a draft to you.

This communication was not intended or written to be used, and it cannot be used by any taxpayer, for the purpose of avoiding tax penalties. (The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governing tax practice.)
************************************************************

CONFIDENTIALITY NOTICE: This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman & Dicker LLP, please see our website at www.wilsonelser.com or refer to any of our offices.
Thank you

**From:** Lerner, Richard E. <Richard.Lerner@wilsonelser.com>
**To:** 'fred55@aol.com' <fred55@aol.com>
**Subject:** FW: inquiry about redacted cert. petition
**Date:** Fri, May 25, 2012 11:50 am

See below response from DOJ

**From:** Goodman, Nina [mailto:Nina.Goodman@usdoj.gov]
**Sent:** Friday, May 25, 2012 11:49 AM
**To:** Lerner, Richard E.
**Subject:** inquiry about redacted cert. petition

Mr. Lerner,  We received your inquiry about a redacted filing in the Supreme Court.  Whatever you choose to submit in this matter is between you and the Court.  The government is not reviewing and has not approved anything you may file.  You are obviously required to comply with any court orders that are in place. Nina Goodman, Criminal Division, DOJ

```
This communication was not intended or written to be used, and it
cannot be used by any taxpayer, for the purpose of avoiding tax
penalties. (The foregoing legend has been affixed pursuant to U.S.
Treasury Regulations governing tax practice.)
**************************************************************


CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
```

## Frederick M. Oberlander

| | |
|---|---|
| **From:** | Lerner, Richard E. <Richard.Lerner@wilsonelser.com> |
| **Sent:** | Wednesday, June 6, 2012 3:48 PM |
| **To:** | 'fred55@aol.com' |
| **Subject:** | FW: 10A797, USA v. John Doe, Redacted Petition and Motion |
| **Attachments:** | image001.gif; 10A797_USA v. John Doe_Redacted Petition.pdf; 10A797_USA v. John Doe_Notice of Motion.pdf; image001.gif; 10A797_USA v. John Doe_Redacted Petition.pdf; 10A797_USA v. John Doe_Notice of Motion.pdf |

FYI

**From:** Soroya Brantley [mailto:sbrantley@phpny.com]
**Sent:** Monday, June 04, 2012 3:56 PM
**To:** jatkins@supremecourt.gov
**Cc:** Lerner, Richard E.
**Subject:** 10A797, USA v. John Doe, Redacted Petition and Motion

Hello Mr. Atkins,

Attached please find electronic copies of the Redacted Petition and the Motion To Order the Docketing and Public Availability of the Petition for Writ of Certiorari in Redacted Form as Provided Herewith and (2) To Caption the Case With the True Name of Richard Roe.

Please do not hesitate to contact me if you experience any difficulties with these pdfs.

Thank you
Soroya



**Soroya Brantley**
*Senior Paralegal*
10 East 39th Street, 7th Floor, New York, N.Y. 10016
**Tel:** (212) 719-0990 main    **Direct:** (212) 779-1570
**Fax:** (212) 624-9986          sbrantley@phpny.com
**www.phpny.com**

```
This communication was not intended or written to be used, and it
cannot be used by any taxpayer, for the purpose of avoiding tax
penalties. (The foregoing legend has been affixed pursuant to U.S.
Treasury Regulations governing tax practice.)
*************************************************************

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
```

## Frederick M. Oberlander

**From:** Lerner, Richard E. <Richard.Lerner@wilsonelser.com>
**Sent:** Monday, June 25, 2012 12:42 PM
**To:** 'fred55@aol.com'

Just spoke with Atkins.

He says to err on the side of caution when doing the redactions, and leave out stuff that would make it easy to figure out who Doe and Roe are.

I asked whether Lauria and Klotsman's names should be redacted, and he said no, but that if it would make it easy to identify Doe, it may be the wiser course. (In other words, he ain't so sure himself).

Finally, he said I can send him the proposed redactions before we run up another printing bill.

Richard E. Lerner
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
212-915-5419 (Direct)
212-490-3000 (Main)
212-490-3038 (Fax)
richard.lerner@wilsonelser.com

This communication was not intended or written to be used, and it
cannot be used by any taxpayer, for the purpose of avoiding tax
penalties. (The foregoing legend has been affixed pursuant to U.S.
Treasury Regulations governing tax practice.)
************************************************************

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer to
any of our offices.
Thank you

**Prepared by PrintingHouse Press, Ltd. 10 East 39th Street, New York, NY 10016**

**Tel No: (212) 719-0990 Fax No: (212) 398-9253**

STATE OF NEW YORK            )

COUNTY OF NEW YORK        )  SS

Dave Jackson, Being duly sworn, deposes and says that deponent is not party to the action, and is over 18 years of age.

That on 6/1/2012 deponent caused to be served 1 copy(s) of the within

<u>**Notice of Motion (1) To Order the Docketing and Public Availability of the Petition for Writ of Certiorari in Redacted Form as Provided Herewith and (2) To Caption the Case With the True Name of Richard Roe**</u>

upon the attorneys at the address below, and by the following method:

**<u>By Overnight Delivery</u>**

**Office of the Solicitor General**
**950 Pennsylvania Avenue, NW**
**Washington, DC 20530**
**Phone: 202-514-2203**

**<u>By Overnight Delivery</u>**

**Assistant U.S. Attorney Todd Kaminsky**
**271 Cadman Plaza East**
**Brooklyn, NY 11201**
**Phone: 718-254-7000**

**<u>By Overnight Delivery</u>**

**Michael Beys**
**Beys, Stein & Mobargha LLP**
**The Chrysler Building**
**405 Lexington Avenue, 7th Floor**
**New York, NY 10174**
**Phone: 212-387-8200**

**<u>By Email</u>**

**"Jane Doe" and "John Doe II," c/o "Richard Roe" via email, with consent of same.**

**Sworn to me this**

Friday, June 01, 2012

ALLISON R. WADE
Notary Public, State of New York
No. 01WA6191434
Qualified in New York County
Commission Expires 8/11/2016

**Case Name:** USA v. John Doe

**Docket/Case No:** 12-112

**Index:** 10A797

**Prepared by PrintingHouse Press, Ltd. 10 East 39th Street, New York, NY 10016**

**Tel No: (212) 719-0990 Fax No: (212) 398-9253**

STATE OF NEW YORK          )

COUNTY OF NEW YORK       )  SS

Dave Jackson, Being duly sworn, deposes and says that deponent is not party to the action, and is over 18 years of age.

That on 7/11/2012 deponent caused to be served 1 copy(s) of the within

### Notice of Motion (1) To Order the Docketing and Public Availability of the Petition for Writ of Certiorari in Redacted Form as Provided Herewith and (2) To Caption the Case With the True Name of Richard Roe

upon the attorneys at the address below, and by the following method:

| By Overnight Delivery | By Overnight Delivery | By Overnight Delivery |
|---|---|---|
| **Office of the Solicitor General** | **Assistant U.S. Attorney Todd Kaminsky** | **Michael Beys** |
| **950 Pennsylvania Avenue, NW** | **271 Cadman Plaza East** | **Beys, Stein & Mobargha LLP** |
| **Washington, DC 20530** | **Brooklyn, NY 11201** | **The Chrysler Building** |
| **Phone: 202-514-2203** | **Phone: 718-254-7000** | **405 Lexington Avenue, 7th Floor** |
| | | **New York, NY 10174** |
| | | **Phone: 212-387-8200** |

**By Email**

**"Jane Doe" and "John Doe II," c/o "Richard Roe" via email, with consent of same.**

|  |  |
|---|---|
| **Sworn to me this** | **Case Name:** USA v. John Doe |
| Wednesday, July 11, 2012 | |
| ALLISON R. WADE<br>Notary Public, State of New York<br>No. 01WA6191434<br>Qualified in New York County<br>Commission Expires 8/11/2016 | **Docket/Case No:** 12-112 |
| | **Index:** 10A797 |